LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
By:     Bernard V. Kleinman, Esq.
        108 Village Square
        Suite 313
        Somers, NY 10589-2305
        Tel. 914.644.6660
        Fax 914.694.1647
        Email: *attrnylwyr@yahoo.com*
        Attorney for Plaintiffss

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
======================================== :
                                         :
**JUSTIN LANASA, TSR, LLC, and**         :
**DUNGEON HOBBY SHOP MUSEUM, LLC,**      :     **Case No. 22-cv-5686-KAM-VMS**
                   **Plaintiffss,**      :
                                         :
        — *versus* —                     :     **PLAINTIFFS' RESPONSES**
                                         :     **TO INTERROGATORIES &**
**ERIK STIENE, and LOIS STIENE, aka RACHEL** :  **DEMANDS FOR PRODUCTION**
**STIENE,**                              :     F.R.Civ.P. Rules 33, 34
           **Jointly and Severally,**    :
                   **Defendants.**       :
======================================== :

TO:
        Daniel Schneider, Esq.
        Robt. Lower, Esq.
        Attorneys for Defendants
        Farber, Schneider, Ferrari, LLP
        261 Madison Avenue
        26th Floor
        New York, NY10016

    Plaintiffs by and through the undersigned counsel, hereby responds to Defendants' (the

"Defendants") First Set of Interrogatories ("Interrogatories") and Demands for Production in

accordance with the numbered Responses and Objections below ("Responses").

    The Responses herein reflect the knowledge of the Plaintiffs as of the date of the Responses,

and Plaintiffs' Responses involve an ongoing investigation into the Defendants' Interrogatories.

Plaintiffs' responses are made subject to each of the General Objections,

Comments and Qualifications listed below, and such other objections as may be stated in the individual responses. Plaintiffs reserves his right to amend or supplement these Responses pursuant to Federal Rule 26(e)(1) as becomes necessary and appropriate.

## GENERAL OBJECTIONS TO INTERROGATORIES & DEMANDS FOR PRODUCTION

Plaintiffs make the following general objections (the "General Objections") to Defendants' Interrogatories and Demands for Production (including without limitation any definitions and instructions included therein) and each of which is hereby incorporated into each particular response set forth herein, as if set forth therein:

1. Plaintiffs object to each and every Interrogatory and Demands for Production, to the extent that it exceeds or attempts to exceed what is permissible discovery under the Federal Rules of Civil Procedure, the local rules for the Southern District of New York, the Federal Rules of Evidence, and any other applicable law, rule or regulation.

2. Plaintiffs object to each and every Interrogatory and Demands for Production that requests information that is protected by privilege, exemption, or immunity recognized in the Federal Rules of Civil Procedure, the local rules for the Eastern District of New York, the Federal Rules of Evidence, the Rules of the Assigned Article III Judge, and the Rules of the assigned U.S> Magistrate Judge. and any other applicable law, rule or regulation or common law, including but not limited to the attorney-client communication privilege, the attorney-work product exemption or any general investigative privilege.

3. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it is overbroad and improper and fails to specify particular types and categories of information being sought.

5. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it is unduly burdensome.

6. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it calls for a narrative response that is more properly characterized as a deposition by written questions, and therefore is improperly elicited by Interrogatory.

7. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it is so vague that Plaintiffs, in good faith, is unable to ascertain what information is requested.

8. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it seeks information that may be ascertained from the business records of Defendants, and the burden of ascertaining such information is substantially the same, or greater, for Plaintiffs than it is for Defendants.

9. Plaintiffs object to each Interrogatory and Demands for Production to the extent that it is harassing or invades Plaintiffs' personal, constitutional and/or property rights.

10. Plaintiffs objects to each Interrogatory and Demands for Production to the extent that it seeks the disclosure of confidential personal, medical and/or business information or documents concerning Plaintiffs, the disclosure of which would violate the privacy of Plaintiffs unless an appropriate order of this Court protecting the confidentiality of such information or documents is in place.

11. Plaintiffs object to each Interrogatory and Demands for Production that requests information of a confidential financial nature. Any such financial information which is otherwise

non-privileged and relevant, or reasonably calculated to lead to the discovery of admissible evidence, and for which Defendants show a non-priority need, which outweighs Plaintiffs' privacy interests will be produced subject to the execution of a mutually acceptable confidentiality agreement.

12. Plaintiffs' responses to the Interrogatories are made without waiving (and expressly reserving) Plaintiffs' rights (a) to object on any ground to the use of the information provided in the responses in any proceeding in this action or any other action, (b) to object on any ground to other information that involves or relates to the subject matter of the Interrogatories, and (c) to revise, correct, supplement or clarify any of the responses set forth herein at a later time.

13. Plaintiffs' search for information is ongoing. Plaintiffs reserve the right to rely on facts, documents or other evidence which may develop or come to their attention at a later time. Responses to these Interrogatories are based upon information known to Plaintiffs at this time. The comments herein are set forth without prejudice to Plaintiffs' rights to supplement or amend any response at any time prior to trial.

14. Plaintiffs object to these Interrogatories and Demands for Production to the degree that they are duplicative and cumulative of other Interrogatories or other more appropriate discovery devices.

15. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature in the absence of a Protective Order from the Court.

16. Plaintiff objects to the demand for documents "within your possession, custody, or control" to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Plaintiffs further object to this instruction as overbroad and unduly burdensome to the extent it seeks (a) documents in the possession, custody and control of the

named Defendants, and were previously demanded by Plaintiffs in their Document Demands, or (b) have been previously provided to the Defendants.

17. Plaintiffs further object to any Interrogatory or Demand for Production that precedes the dates cited for the Defendants' defamatory behavior. See Interrogatory No. 5; Demand for Production Nos. 6, 7, 12; in the absence of any proof of relevancy and materiality.

## PLAINTIFFS' RESPONSES TO INITIAL INTERROGATORIES

1.

**ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.**

2.

**ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.**

**Notwithstanding the above, Plaintiff LANASA has no criminal history other than an incident that happened in 1989 while on leave from the Army. The charges were ultimately dismissed on the basis of self-defense. See attached Fingerprint Report from the FBI, dated Sep. 30, 2021.**

3.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

Included in this is the bankruptcy filing for *Matter of TSR, LLC.*, 21-1577 (Bankr. Ct. E.D.N.C.). See attached Notice of Chapter 7 Bankruptcy, litigation costs in the matter of *TSR, LLC v. Wizards of the Coast*, 21-cv-1705 (W.D. Wash.), and litigation costs in the current litigation. See also Documents produce below,

4.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

This information has been provided previously in the Rule 26(a) list of potential witnesses.

5.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the

scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

Plaintiffs further object to this Interrogatory as it requests information prior to the dates set forth in the Amended Complaint.  And, further Objects as this Interrogatory requests information regarding "Dave Johnson"; not a Plaintiff in this action.

6.
ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above.  Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.  Plaintiffs further object to this Interrogatory as it contains no time limitations at all and, is therefore, unnecessarily overbroad.

Plaintiff has not destroyed or otherwise hidden or failed to preserve any documents or records relevant to this case in any relevant and material period of time.

7. i thru vii
ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above.  Plaintiffs further object to the extent this Interrogatory is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

**PLAINTIFFS' RESPONSES TO INITIAL DEMANDS FOR PRODUCTION**

1.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

2.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

3.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

In addition, thereto, such documents and records are in the possession, custody and control of the named Defendants, and, despite having made a Demand for their production, none has been forthcoming to date.

4.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

Plaintiffs further object tot his Demand as it contains no time frame, and is therefore overbroad and unduly burdensome.

5.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

Plaintiffs further object to this Demand as it seeks documents not related to this litigation, such as personal financial information, and other sources of income unrelated to this litigation.

Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature, or otherwise privileged, in the absence of a Protective Order from the Court.

6.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague,

overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

7.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

8.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

See Amended Complaint at ¶ 22: Jan. 8, 2022, Mar. 17, 2022, Dec. 17, 2022, Nov. 27, 2022; ¶ 92.

9.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the

scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

See Response to No. 8 above.

10.

    **ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.**

11.

    **ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.**

12.

    **ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Further, this Demand contains a**

footnote that is unclear and confusing, and hence renders it further not possible to answer.

13.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature, or otherwise privileged, in the absence of a Protective Order from the Court.

See attached.

14.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature, or otherwise privileged, in the absence of a Protective Order from the Court.

15.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

See Amended Complaint at ¶ 22: Jan. 8, 2022.

16.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature, or otherwise privileged, in the absence of a Protective Order from the Court.

17.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

18.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

19.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature in the absence of a Protective Order from the Court.

20.

ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege.

See Amended Complaint at ¶ 44.

21.

**ANSWER: OBJECTION. Plaintiffs incorporate by reference the General Objections stated above. Plaintiffs further object to the extent this Demand for Production is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant evidence. Plaintiffs object as the subject interrogatory demands information which is outside the scope of interrogatories permitted by Local Civil Rule 33.3 and all communications with counsel are protected by attorney-client privilege. Plaintiffs further object to the disclosure of confidential financial, medical, and other information of a proprietary or personal nature, or otherwise privileged, in the absence of a Protective Order from the Court.**

**This information has been previously provided as part of Plaintiffs' initial disclosure under Rule 26.**

Dated:  16 June 2023
        Somers, NY

                                  Respectfully submitted,

                                  */s/ Bernard V. Kleinman*
                                  Bernard V. Kleinman
                                  Attorney for Plaintiffs

Pursuant to 28 U.S.C. § 1746, 1 have read the foregoing and know the contents thereof to my own knowledge to be true, except as to the matters therein asserted upon information and belief, and, as to those matters, I believe them to be true. I verify under the penalty of perjury that the foregoing is true and correct.

Dated: July 28, 2023

JUSTIBN LANASA

<u>CERTIFICATE OF SERVICE</u>

I am Bernard V. Kleinman, Esq., attorney of record for the Plaintiffs, herein.  I do affirm that on the 16th of June 2023 I did serve the within Answers to Defendants' Interrogatories & Demands for Production upon the below named parties by email as set forth below,

Daniel Schneider, Esq.
Robt. Lower, Esq.
Attorneys for Defendants
Farber, Schneider, Ferrari, LLP
261 Madison Avenue
26th Floor
New York, NY10016

And, by email to *rlower@fsfllp.com* and *dschneider@fsfllp.com*.

Dated: June 16, 2023
        Somers, NY                                    */s/ Bernard V. Kleinman*
                                                      Bernard V. Kleinman, Esq.

JUSTIN WILLIAM LANASA
ATTN: JUSTIN LANASA
533 HIDDEN VALLEY DR
WILMINGTON, NC 28409

54431715-00417

[INTERROGATORY 2]

1-787a (Rev. 08-10-2016)



**U.S. Department of Justice**

Federal Bureau of Investigation
Criminal Justice Information Services Division
Clarksburg, WV 26306

JUSTIN WILLIAM LANASA
ATTN: JUSTIN LANASA                                    Date: 09-30-2021
533 HIDDEN VALLEY DR
WILMINGTON, NC 28409

    The Criminal Justice Information Services (CJIS) Division of the
Federal Bureau of Investigation (FBI) has completed the following
fingerprint submission:

**Subject Name**

JUSTIN WILLIAM LANASA

**Search Completed Result**        09-30-2021 E2021273000000202980

**A SEARCH OF THE FINGERPRINTS PROVIDED BY
THIS INDIVIDUAL HAS REVEALED PRIOR ARREST
DATA AT THE FBI.**

Date of Birth:           11/06/1970

Social Security number:    █████████

    The result of the above response is only effective for the date
the submission was originally completed. For more updated information,
please submit new fingerprints of the Subject.

    In order to protect Personally Identifiable Information, as of
August 17, 2009, FBI policy has changed to no longer return the
fingerprint cards. This form will serve as the FBI's official
response.

    This Identity History Summary (IdHS) is provided pursuant to 28
CFR 16.30-16.34 solely for you to conduct a personal review and/or
obtain a change, correction, or updating of your record. **This IdHS is
not provided for the purpose of licensing or employment or any other
purpose enumerated in 28 CFR 20.33.**

    Any questions may be addressed to the Customer Service Group at
304-625-5590.  You may also visit the website at www.fbi.gov/checks
for further instructions.

Scott A. Rago
Section Chief
Biometric Services Section
Criminal Justice Information
      Services Division

[INTERROGATORY 2]

DC000001Z                                    NCN E2021273000000202980




DC000001Z
DO 556-73 REQ
FBI-CJIS-WV
BIOMETRIC TECHNOLOGY CTR
1000 CUSTER HOLLOW RD
CLARKSBURG,WV 26306


[INTERROGATORY 2]

DC000001Z                                    NCN E2021273000000202980

BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY
SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.
                     - FBI IDENTIFICATION RECORD -

WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE
DIRECTLY WITH THE AGENCY THAT FURNISHED THE DATA TO THE FBI.

NAME                              FBI UCN        DATE REQUESTED
LANASA,JUSTIN WILLIAM             629270KA0      2021/09/30

SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR
M    W     1970/11/06  510     200     BRO   BLK

BIRTH PLACE
PENNSYLVANIA

PATTERN CLASS                     CITIZENSHIP
LS LS LS LS LS LS LS LS LS LS     UNITED STATES


1-ARRESTED OR RECEIVED 1989/04/19
   AGENCY-POLICE DEPARTMENT YORK (PA0670200)
     AGENCY CASE-10808

     CHARGE 1-SIMPLE ASSAULT
     CHARGE 2-TERRORISTIC THREATS

   COURT- ()
     CHARGE-TERRORISTIC THREATS
     05-31-89 DISMISSED-VICTIM IN ARMY-
     CHARGE-SIMPLE ASSAULT
     05-31-89 DISMISSED -VICTIM IN ARMY-

RECORD UPDATED 2021/09/30




ALL ENTRIES CONTAINED IN THIS FBI RECORD ARE BASED ON
FINGERPRINT COMPARISONS AND PERTAIN TO THE SAME INDIVIDUAL.

THE USE OF THIS RECORD IS REGULATED BY LAW.  IT IS PROVIDED FOR OFFICIAL
USE ONLY AND MAY BE USED ONLY FOR THE PURPOSE REQUESTED.

[INTERROGATORY 2]

DC000001Z
TCN WVFBIJM0Z-20210930194921-EDO-0000-89057
AGENCY CASE D8452221261

THE FBI IDENTIFIED YOUR TEN-PRINT SUBMISSION WHICH
CONTAINED THE FOLLOWING DESCRIPTORS:

NAME LANASA,JUSTIN WILLIAM

| SEX | RACE | BIRTH DATE | HEIGHT | WEIGHT | EYES | HAIR |
|-----|------|------------|--------|--------|------|------|
| M | W | 1970/11/06 | 000 | UNK | UNK | UNK |

STATE ID       BIRTH PLACE
NULL           UNITED STATES

CITIZENSHIP
UNITED STATES

| OTHER BIRTH DATES | SCARS-MARKS-TATTOOS | SOCIAL SECURITY | MISC NUMBERS |
|-------------------|---------------------|-----------------|--------------|
| NONE | NONE | ███████ | NONE |

ALIAS NAME(S)
NONE

END OF COVER SHEET

[INTERROGATORY 2]

Debtor  **TSR, LLC**

Name

EIN **85–3179777**

Case number: **23–01577–5–DMW**

Date case filed for chapter **7  6/8/23**

## Official Form 309C (For Corporations or Partnerships)

**Due to the public health crisis related to COVID19, the meeting of creditors will be conducted virtually as set forth in paragraph 7 below.**

# Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline

12/15

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered. This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

Parties may opt to receive notices from the court via email rather than U.S. Mail. Register at https://bankruptcynotices.uscourts.gov.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| 1. Debtor's full name | TSR, LLC | |
| 2. All other names used in the last 8 years | dba TSR Hobbies | |
| 3. Address | 208 South Front Street, Unit 3 Wilmington, NC 28401 | |
| 4. Debtor's attorney Name and address | Algernon L. Butler III Butler & Butler, L.L.P. P. O. BOX 38 Wilmington, NC 28402 | Contact phone 910 762–1908 |
| 5. Bankruptcy trustee Name and address | John C Bircher III John C. Bircher III, Trustee 209 Pollock Street New Bern, NC 28560 | Contact phone 252–514–2828 |
| 6. Bankruptcy clerk's office Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 300 Fayetteville Street, 4th Floor P.O. Box 791 Raleigh, NC 27602 | Office Hours: 8:30 am – 4:30 pm Contact phone 919–856–4752 Date: 6/9/23 |
| 7. Meeting of creditors The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | **July 24, 2023 at 09:30 AM** The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location: **Appear by Video – Meeting Information,, http://www.nceba.uscourts.gov/zoom341s** Please bring a government issued picture ID with you to the meeting of creditors. This ID is required for entry into the building. |

[INTERROGATORY No. 3]

| | |
|---|---|
| **8. Proof of claim**<br><br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.<br><br>If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. |
| **9. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |

[INTERROGATORY No. 3]

State of **Wisconsin**

# LICENSING AGREEMENT

This License Agreement (this "Agreement") is made as of the __30__ day of __July_____,
20__21__ (the "Effective Date") by and among/between:

Owner(s): _____**Den Beauvais**_____, (collectively, "Owner") and

User(s): _____**Justin LaNasa, TSR LLC**_____, (collectively, "User").

The Parties agree as follows:

**1. License.** Owner hereby grants to User (Check one) ☐ an exclusive ☐ a non-exclusive license to use
the following items of intellectual property (the "Licensed IP"):

   (A) Name/Title: **Demon Fighting Party**____
       Description: **Demon fighting warrior wizard bolting demon in ch**
   (B) Name/Title: _____
       Description: _____
   (C) Name/Title: _____
       Description: _____
   (D) Name/Title: _____
       Description: _____

solely for the limited purposes of **Monster Manuscript III and all advertising of the MM3**____.
User is authorized to use the Licensed IP (Check one) ☐ in the following regions: _____
_____ ☑ worldwide (the
"Territory").

Nothing herein obligates User to exercise the rights granted in this Agreement.

**2. Consideration.** As consideration for the license granted and described in this Agreement, User shall
pay to Owner the following fees and/or royalties:

| Type of Payment | Payment Due Date | Payment Amount |
|---|---|---|
| **PayPal** | 07/30/2021 | $ 2,500.00 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Additional Provisions: _____
_____
_____

Payment shall be made within ____**30**____ days of the due date. If any payment is not made within
__**10**_____ days after the due date, Owner may charge: (Check one)

☐ Interest of _____% per month charged.
☐ A late fee of $_____ for each month past due.
☑ Do not specify.

In the event any payment is collected at law or through an attorney-at-law, or under advice therefrom, or through a collection agency, User agrees to pay all costs of collection, including, without limitation, all court costs and reasonable attorney's fees.

**3. Right to Sublicense.** User has no right to grant sublicenses to any third party unless Owner provides its approval in writing. Any approved sublicense is subordinate to, and must conform to the terms and conditions of this Agreement, and will not include the right to grant further sublicenses.

**4. Affiliates.** (Check one)

☐ Sublicenses may <u>NOT</u> be granted to Affiliates of User without the express written permission of Owner.

☑ Sublicenses may be granted to Affiliates of User without the express written permission of Owner.

Any sublicense to an Affiliate must conform to the terms and conditions of this Agreement, and will not include the right to grant further sublicenses. "Affiliate" shall mean an entity controlled by, under common control with, or controlling User, where control is denoted as having fifty percent (50%) or more of the voting power (or equivalent) of the applicable legal entity.

**5. Copies.** User shall not make copies of the Licensed IP, except as expressly approved by Owner. For any authorized copy made of the Licensed IP, User must accurately reproduce the Licensed IP with the proper notices as directed by Owner from time to time.

**6. Intellectual Property Notice and Markings.** In no event may User remove any copyright or intellectual property notice, proprietary legend, trademark or service mark from any materials. Owner may require an appropriate legal notice or legend, as required by law or established by Owner, be placed on all products, packaging and promotional materials.

**7. Quality Control.** (Check one)

☐ User agrees that any use of the trademarks included in the Licensed IP must comply with all quality control standards and usage guidelines as may be reasonably established by Owner, and must generally conform with good trademark usage. Owner may reasonably request that User deliver representative



samples of any products or materials containing the Licensed IP to ensure all quality control standards and usage guidelines are being maintained and adhered to.

☑ Not applicable.

**8. Ownership of Licensed IP.** User agrees that, subject to the rights and licenses granted herein, Owner is, and will remain, the sole and exclusive owner of all right, title, and interest, throughout the world, to all Licensed IP and any copies of the Licensed IP.

**9. Confidential Information.** "Confidential Information" shall include any confidential and proprietary information developed or acquired by Owner including, but not limited to, technical and non-technical data, formulas, patterns, source and object codes, compilations, devices, methods, techniques, drawings, processes, trade secrets, copyrights, know-how, ideas, concepts, customer lists, pricing structure, sales information, business records and plans, and other intellectual property related to the Licensed IP and/or Owner. User agrees to hold any Confidential Information of Owner obtained in the transactions contemplated by this Agreement in the strictest confidence, and to not permit unauthorized access to or unauthorized use, disclosure, publication or dissemination of Confidential Information, except in conformity with this Agreement. User will comply with all laws and regulations that apply to the use, transmission, storage, disclosure or destruction of Confidential Information. User shall ensure that its employees, agents, representatives, and contractors are advised of the Confidential Information and are precluded from taking any action prohibited under this Agreement. Ownership of the Confidential Information shall remain solely with the Owner.

**10. Exceptions to Confidential Information.** Confidential information shall not include information that (1) is or becomes publicly known and available through no fault of User; (2) is or was lawfully obtained from a third party that has the right to make such a disclosure; (3) is disclosed with the Owner's prior written permission and approval; (4) is independently developed by User without the use and benefit of any of the Confidential Information; or (5) is required to be disclosed by operation of law.

**11. Survival of Confidential Information.** The obligation of confidentiality will: (Check one)

☐ Extend for a period of _____ years after the termination of this Agreement.

☑ Survive termination of this Agreement.

**12. User's Diligence.** User will cooperate to diligently protect the Licensed IP. User agrees to promptly notify Owner in writing of any unauthorized use, infringement, misappropriation, dilution, or other violation or infringement of the Licensed IP of which User becomes aware.

**13. Legal Action.** Owner will maintain sole control and discretion over the prosecution and maintenance with respect to all rights, including all intellectual property rights to the Licensed IP. Owner will have the primary right, but not the obligation, to bring and control any litigation, enforcement action, proceeding, or other legal action (collectively, the "Action") against any unauthorized use, infringement, misappropriation, dilution or other violation of the Licensed IP. User agrees to cooperate with Owner in any Action that Owner may undertake to protect the Licensed IP, and upon Owner 's request, User will execute, file, and



deliver all documents and proof necessary for that purpose, including being named as a party to the Action as required by law. Owner will be entitled to retain the entirety of any award arising from any Action. User may participate and be represented in any Action by its own counsel at its own expense. User will have no claim of any kind against Owner based on, or arising out of Owner 's handling of, or decisions concerning, any Action, settlement or compromise.

**14. Mutual Representations and Warranties.** Each party represents and warrants that: (a) it has the power and authority to enter into this Agreement, and the execution, delivery, and performance of this Agreement and the transactions and other documents contemplated have been authorized by the parties; and (b) this Agreement has been executed and delivered by each party, and constitutes a legal, valid, and binding obligation of the party, fully enforceable against the party in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium, and similar laws of general applicability relating to or affecting creditors' rights, and general equity principles.

**15. Owner's Representations and Warranties.** Owner represents and warrants that: (a) Owner owns and/or controls the rights granted to User in this Agreement and Owner has the right to grant such rights and to enter into this Agreement; (b) to the best of its knowledge the Licensed IP does not infringe upon or violate (i) any copyright, patent, trademark, or other proprietary right of a third party or (ii) any applicable law, regulation, or non-proprietary right of a third party; and (c) Owner has no knowledge of any claim which, if sustained, would be contrary to Owner's warranties, representations, and obligations contained in this Agreement.

**16. No Warranties.** User acknowledges that: (a) Owner is providing Licensed IP to User on an "as is" basis without warranty of any kind; (b) Owner has not prepared or modified the Licensed IP to meet any specific requirements or specifications of the User; (c) Owner makes no representations or warranties as to value, use, sale or other exploitation of the Licensed IP by the Owner or any third party.

**17. Laws and Regulations.** User represents and warrants that User will comply, and ensure its Affiliates comply, with all local, state, federal and international laws and regulations relating to the development, manufacture, use, sale, importation and exportation of Licensed IP.

**18. Indemnification by Owner.** Owner will under no circumstances, be obligated to indemnify, defend, or hold User, its Affiliates, or respective representatives, officers, directors, stockholders, employees or agents harmless from any liability, claims, demands, causes of action, judgments, damages, or expenses (including reasonable attorneys' and experts' fees and costs) arising out of or as a result of User's or its sub-licensees' use of the Licensed IP under this Agreement.

**19. Indemnification by User.** User must indemnify, defend, and hold Owner, its Affiliates, and its respective representatives, officers, directors, stockholders, employees, and agents harmless from all liability, claims, demands, causes of action, judgments, damages, and expenses (including reasonable attorneys' and experts' fee and costs) arising out of or as a result from User's or its sub-licensees' use of the Licensed IP other than any third party claims covered by this Agreement. User will not be obligated to defend or hold harmless Owner in the event that any claims, demands, causes of action, judgments, or expenses arose out of willful misconduct, gross negligence, or bad faith by Owner.



**20. Indemnification Procedure.** Promptly after receipt by Owner of notice of any indemnification claim, Owner must give User written notice describing the claim in reasonable detail, along with copies of any correspondence, court documents, or other writings stating the claim. User will be responsible for the defense or settlement of the claim, at its own expense and by counsel of its own selection and Owner will have the right (at its own expense) to participate in the defense of the claim. Owner must reasonably cooperate with User and its counsel in the defense and settlement of the claim. User cannot enter into any settlement with respect to any claim without the prior written consent of Owner, which consent will not be unreasonably withheld. If User declines to assume the defense of the claim, Owner may assume such defense and settle the claim as it deems appropriate, provided that does not enter into any settlement with respect to the claim without the prior written consent of User, which consent will not be unreasonably withheld.

**21. Limitations of Liability.** EXCEPT FOR ANY REMEDIES THAT CANNOT BE EXCLUDED OR LIMITED BY LAW, NEITHER PARTY, NOR ANY AFFILIATE, WILL BE LIABLE UNDER THIS AGREEMENT TO THE OTHER PARTY, ANY AFFILIATE OR OTHER THIRD PERSON FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, RELIANCE, OR PUNITIVE DAMAGES OR LOST OR IMPUTED PROFITS, LOST DATA OR COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES. THIS LIMITATION OF LIABILITY MAY NOT BE VALID IN SOME STATES. USER MAY HAVE RIGHTS THAT CANNOT BE WAIVED UNDER CONSUMER PROTECTION AND OTHER LAWS. OWNER DOES NOT SEEK TO LIMIT USER'S WARRANTY OR REMEDIES TO ANY EXTENT NOT PERMITTED BY LAW.

**22. Term.** This Agreement will commence on the Effective Date and will continue in full force and effect for an initial period of _____**25**_____ year(s). This Agreement will: (Check one)

☐ NOT automatically renew.
☑ Automatically be renewed for periods of _____**25**_____ year(s) each, unless either party gives notice of non-renewal to the other party at least _____**30**_____ days prior to the end of any _____**25**_____ year term. The notice will terminate this Agreement upon expiration of the then current term.

**23. Termination.** Either party may terminate this Agreement immediately upon delivery of written notice to the other party specifying clearly the grounds for termination if the other party commits a material breach of its obligations under this Agreement and fails to cure the breach within _____**90**_____ days after written notice of the breach is received by the breaching party. For the avoidance of doubt, termination will be without prejudice to any liability incurred prior to the effective date of termination.

**24. Assignment.** This Agreement may not be assigned by User without Owner's prior written consent. Owner may assign this Agreement, in whole or in part, to any Affiliate or successor. The rights and obligations under this Agreement will be binding upon the parties and their successors. The use of the Licensed IP, however, shall inure solely to the benefit of Owner and its respective successors and permitted assigns. Any attempted assignment or delegation in contravention of these provisions will be void and ineffective.

**25. Severability.** If any provision of this Agreement is held invalid, illegal or unenforceable by a court of competent jurisdiction, the remainder of the Agreement will be valid and enforceable and the parties will



[DOCUMENT DEMAND 1]

negotiate in good faith a substitute, valid and enforceable provision which most nearly puts into effect the intent of the parties.

**26. No Waiver**. This Agreement may not be altered, modified, or amended in any way except in writing signed by both parties. The failure of a party to enforce any provision of the Agreement will not be construed to be a waiver of the right of such party to thereafter enforce that provision or any other provision or right.

**27. Entire Agreement.** This Agreement and the attachments hereto represent and constitute the entire agreement between the parties, and supersede and merge all prior negotiations, agreements, and understandings, oral or written, with respect to any and all matters between the parties.

**28. Governing Law.** The parties hereby agree that this Agreement will be governed by, and constructed and enforced in accordance with the laws of the State of ___**Wisconsin**___, without reference to rules governing choice of laws.

**29. Disputes.** Any dispute arising from this Agreement shall be resolved through: (Check one)

☐ Court litigation. Disputes shall be resolved in the courts of the State of **Wisconsin**_____.
(Check if applicable)
    ☐ If either Party brings legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover from the other Party its expenses (including reasonable attorneys' fees and costs) incurred in connection with the action and any appeal.

☐ Binding arbitration. Binding arbitration shall be conducted in accordance with the rules of the American Arbitration Association.

☐ Mediation.

☑ Mediation, then binding arbitration. If the dispute cannot be resolved through mediation, then the dispute will be resolved through binding arbitration conducted in accordance with the rules of the American Arbitration Association.

**30. Notices.** All notices, demands or other communications to be given under this Agreement by either party to the other may be effected either by personal delivery in writing or by U.S. mail, registered or certified, postage prepaid with return receipt requested. Notices delivered personally will be deemed communicated as of actual receipt. Mailed notices will be deemed communicated as of two (2) days after mailing.

**31. Amendments.** Subject to any express limitations set out therein, the License and Consideration Sections in this Agreement may be amended or modified by Owner, consistent with the processes established by Owner (a) to reflect the addition and/or removal of an item of intellectual property; (b) for legal or reasonable commercial reasons, to delete countries where the licensed IP can be used, and User will be notified of each such deletion accordingly; (c) and to amend the amount of fees, but no more



frequently than _____**25 years**_____ [Period of time]. Unless otherwise agreed, amendments will take effect upon being communicated in writing to User.

**IN WITNESS WHEREOF,** the parties have entered into this Agreement as of the Effective Date.

_____
**Owner** Signature

_____
**Owner** Full Name

_____
**Owner** Signature

_____
**Owner** Full Name

_____
**Owner** Signature

_____
**Owner** Full Name

_____
**User** Signature

_____
**User** Full Name

_____
**User** Signature

_____
**User** Full Name

_____
**User** Signature

_____
**User** Full Name

██████████ ██ ██ █ ██ ██ ███ █



**Den Beauvais <den.beauvais@hotmail.com>**

Tue, Jul 27, 2021, 10:56 PM

to me

Hi Justin,

Exactly, selling (TSR) 1st publication rights naturally includes the initial printing on the product "mm3 Monster Manuscript III" and any promotions or advertising of that book. Just to add if TSR should want to create additional products such as Posters, T-Shirts, etc...basically extra merchandise for sale we can always negotiate a reasonable additional licensing fee relative to the retail value.

The only other (obvious) thing I feel I need to stipulate is having a cover credit inside : cover art by Den Beauvais
Also, that my signature is not be altered or covered up...must be visible as is.  If you should need to relocate the cover signature I could
digitally alter that for you or it runs by me for my approval.  Sound fair?

Again, my PayPal account is this current email address - den.beauvais@hotmail.com

I think that's pretty straight forward. Hope that works for you.

Den

denbeauvais.com

den@denbeauvais.com
denbeauvais@gmail.com

[DOCUMENT DEMAND 1]

**Den Beauvais <den.beauvais@hotmail.com>**

Fri, Jul 30, 2021, 9:40 AM

to me

Justin,

It's come to my attention all the controversy surrounding "TSR" right now and with that I'm afraid I will decline the offer to publish my art on MM3.

Refunding your payment, sorry. Without going in to all the details I'm sure you are aware of...I simply can't get caught up in any legal or moral issues concerning the legitimacy of the title "TSR" at this time.

Den

denbeauvais.com

den@denbeauvais.com
denbeauvais@gmail.com

[DOCUMENT DEMAND 1]

**Horticultural Hall <u>via</u> <u>gmail.com</u>**

9:31 PM
(29
minutes
ago)

to me

**Beth Gallagher**
Executive Director
<u>HorticulturalHallLG@gmail.com</u>
<u>262-248-4382</u> office
<u>262-745-8115</u> cell

---------- Forwarded message ---------
From: **Charlie Hall** <<u>charlie@polygon.com</u>>
Date: Tue, Nov 22, 2022 at 6:43 PM
Subject: Re: Reporter inquiry
To: <<u>director@horticulturalhall.com</u>>

Correct. I'd like to speak with you about the Hall and its policies. Folks are wondering why the Hall is hosting a group of alleged transphobic white supremacists. A Federal injunction is due any day now, and our conversation would become part of a follow-up story: <u>https://www.polygon.com/tabletop-games/23349686/dnd-wizards-of-the-coast-vs-nutsr-tsr-justin-lanasa-racist-transphobic-star-frontiers</u>

On Tue, Nov 22, 2022 at 5:45 PM Horticultural Hall <<u>director@horticulturalhall.com</u>> wrote:
 Charlie,

 If it is about the March D & D event, I really don't have any information.  We just rent the building out to events, weddings, showers, etc. and do not have anything to do with the actual event.  They use their own caterers, etc.  They just rent our building/tables/chairs, etc. and we are not there during the actual events.

 I would suggest you contact the event organizers directly.

 **Beth Gallagher**
 Executive Director
 <u>HorticulturalHallLG@gmail.com</u>
 <u>262-248-4382</u> office
 <u>262-745-8115</u> cell

 On Tue, Nov 22, 2022 at 4:54 PM Charlie Hall <<u>charlie@polygon.com</u>> wrote:

[DOCUMENT DEMAND 1]

It's an event that you already have scheduled in March. Yeah, gimme a ring tomorrow. Looking forward to chatting.

On Tue, Nov 22, 2022 at 4:20 PM Horticultural Hall <director@horticulturalhall.com> wrote:
> Charlie,
>
> What is the date of the event you are referring to or what is the couple's name?
>
> I can give you a call possibly tomorrow or Monday, when I'm back.
>
>
> **Beth Gallagher**
> Executive Director
> HorticulturalHallLG@gmail.com
> 262-248-4382 office
> 262-745-8115 cell
>
>
> On Tue, Nov 22, 2022 at 1:28 PM Charlie Hall <charlie@polygon.com> wrote:
>> Afternoon Beth! I left a message for you today. I'm hoping to speak with you about an upcoming event at your facility. Please call me at your earliest convenience. 630.253.3649
>>
>> Regards,
>>
>> Charlie Hall
>>
>> --
>> **Charlie Hall • Senior Editor, Tabletop**
>> Twitter



A Vox Media Network.
—
Follow Polygon on Twitter • Facebook
—
Vox Media and Group Nine are now one company – meet the leader in modern media.
—

**The latest:** <u>Polygon's rest-of-2022 preview</u> — The fall season has just about arrived, so here's our guide to the games, movies, and TV heading your way before the end of the year

--

**Charlie Hall • Senior Editor, Tabletop**
<u>Twitter</u>



A Vox Media Network.
—
Follow Polygon on Twitter  •  <u>Facebook</u>
—
Vox Media and Group Nine are now one company – <u>meet the leader in modern media</u>.
—
**The latest:** <u>Polygon's rest-of-2022 preview</u> — The fall season has just about arrived, so here's our guide to the games, movies, and TV heading your way before the end of the year

--

**Charlie Hall • Senior Editor, Tabletop**
<u>Twitter</u>



A Vox Media Network.
—
Follow Polygon on Twitter  •  <u>Facebook</u>
—
Vox Media and Group Nine are now one company – <u>meet the leader in modern media</u>.
—
**The latest:** <u>Polygon's rest-of-2022 preview</u> — The fall season has just about arrived, so here's our guide to the games, movies, and TV heading your way before the end of the year

[DOCUMENT DEMAND 1]

# Fwd: Problems with the finances on a planned event

Inbox



**Horticultural Hall <u>via</u> <u>gmail.com</u>**
9:31 PM (32 minutes ago)

to me

**Beth Gallagher**
Executive Director
<u>HorticulturalHallLG@gmail.com</u>
<u>262-248-4382</u> office
<u>262-745-8115</u> cell

--------- Forwarded message ---------
From: **Thomas Verreault** <<u>jedion357@gmail.com</u>>
Date: Fri, Jul 29, 2022 at 12:55 PM
Subject: Problems with the finances on a planned event
To: <<u>director@horticulturalhall.com</u>>

I imagine that you are dealing with an inundated email box and I hope it has not been too much of an inconvenience.

I'm writing because there is a problem with a planned event by Nu TSR and Justin Lanasa in that he will be incurring over 3k in expenses for his 3-day event and charging $20/per person to attend and the hall has a limited occupancy of 160 I believe. He is running this at a deficit. Which I suppose is his right to do it that way if he likes.

However, he has not demonstrated good business practices in the past with his board game Dungeon Crawl where he sold pre-orders, promised they were shipping, and then proceeded to sell them out of his storefront and at vendor booths at conventions and street fairs but has failed to ship any of his pre-orders. The game is now sold out and none of the people who placed pre-orders have received their games and it's been 6 months. I suspect he has no intention of honoring those pre-orders but is pocketing the money.

You have to ask yourself what will such a person, with such scruples, do when his event falls short in raising money to cover the event cost?

[DOCUMENT DEMAND 1]

All the accusations of Nazi stuff aside, Justin has planned this event as a poke in the eye at Luke Gygax & Gary Con. Gary Con is the same weekend and Luke made the number 1 position on the hate list that he composed and that was leaked by a TSR insider. It would seem that Justin is motivated by revenge and hate and has not carefully thought out his event. I would not expect him to fulfill his basic financial obligation to the hall. Something for you to consider as no doubt many are shouting about the Nazi, homophobic, and anti-trans stance of Nu TSR, the financial risk alone is possibly enough to cancel the event and not bother with all the ugliness that has been courted by this company. If nothing else I would demand payment upfront to protect the hall financially.

Sincerely Tom Verreault
Formerly recruited game designer and now Youtube blogger covering the NuTSR dumpster fire.

https://www.youtube.com/channel/UCCVdTjFT6_osGeQWw8Lhusg

--



**Horticultural Hall <u>via</u> gmail.com**                                                          9:32 PM
                                                                                                      (34
                                                                                                   minutes
                                                                                                      ago)

to me

**Beth Gallagher**
Executive Director
HorticulturalHallLG@gmail.com
262-248-4382 office
262-745-8115 cell

---------- Forwarded message ---------
From: **Steampunkette** <steampunkette@gmail.com>
Date: Fri, Jul 29, 2022 at 11:56 AM
Subject: FFA Gaming Event March 24-26, 2023
To: <Director@horticulturalhall.com>

I apologize for intruding in your day, however I feel compelled to inform you that a group of Nazi Sympathizers, and I do not use that term lightly, have booked the Horticultural Hall under the guise of a gaming event. I shall first point you to their official advertisement on Tabletop Events, and then better explain myself.

https://tabletop.events/conventions/ffa-gaming-event

"Sponsors & Vendors Will be kept Confidential until the day of the Event. To keep Retaliations down" can be found in the middle of the advertisement. Retaliations for what, you might ask? Well.

George David Johnson (Who commonly goes by Dave, Dave Johnson, or DaveUSFilms online) is the current Lead Writer and Designer of TSR's "Star Frontiers: New Genesis".

He is also a deeply bigoted person who has previously, and over the course of many years, posted simply ridiculous quantities of hatred toward women, racial and ethnic minorities, and the LGBTQIA+ community. Shortly after April 22nd of this year, he deleted all of the posts and shuttered his social media accounts after people looked into his background when they learned he would be working at the new TSR.

A large number of the posts can be found at the following website. I should warn you that in addition to harsh and bigoted language, he routinely posted Nazi imagery and symbols, and suggested that a violent Nazi uprising would or perhaps 'should' occur once enough "White People" were angry.

https://www.nohateingaming.com/

Justin Lanasa and his compatriots at TSR have done their best to deny, deflect, and create elaborate conspiracy theories to excuse this behavior. Up to and including the idea that Wizards of the Coast (WotC) have paid people to harass and create lies about TSR. Dave Johnson, himself, has largely gone into hiding over the matter in the hopes of the issue dying down... And yet.

Dave Johnson publishes Alarms and Journeys, a poor misunderstanding and misrepresentation of the prestigious Alarums and Excursions magazine of old. In issue 13 of his magazine he included material to be used in the Star Frontiers New Genesis story background.

In the Alarms and Journeys Article, he invents a race of aliens who are tall, blond blue eyed, and perfected humanoids with slender and muscular builds and great beauty. He calls these humanoids the "Nordics". And it is they who save humanity from our greatest folly: Cybernetics. Cybernetics, of course, oft depicted in media as being equivalent to high-functional prosthetics for people with degenerative diseases, missing limbs, and the like.

Truly, I say "Invents" but the "Nordic Aliens" are actually a long running neonazi and white supremacist conspiracy theory about Aryan Aliens who will bring peace and prosperity to Earth by wiping out everyone who isn't 'pure'.

Here is a Southern Poverty Law Center article on this racist belief that started in the 1950s.

https://www.splcenter.org/hatewatch/2018/01/02/close-encounters-racist-kind

Months later, a leaked manuscript of the Alpha Playtest of Star Frontiers New Genesis confirmed the Nordics and the timeline that Dave Johnson outlined in his article. And also added in a new race of particularly strong people whose maximum Intelligence value on a scale of 3 to 18 is 9.

Brace yourself.

These large dark-skinned brutes (Often so black as to appear almost purple) are known as the "Negroes".

Beautiful, powerful, highly intelligent, technologically advanced Blonde Haired and Blue Eyed white people. And brutish, ignorant, and often slave-labor for their more advanced cousins, the Negroes. Yes, the Nordics and the Negroes are from the same planet, and the Negroes are the slaves of the Nordics.

You can watch a Video of a member of the gaming community scrolling through the document to show the offending material, here:

https://www.youtube.com/watch?v=fD9evesvAos

Note both that the document was Written by and Edited by both Dave Johnson and Justin Lanasa. Which means Justin Lanasa read this horrible and racist material and approved of it, rather than removing it, during the editing phase.

Further highlights from those who have paused the video frame by frame to learn as much about the game as possible from this peek:

1) Attractiveness is an abstract dice roll attribute however it is modified to be lower based on whether you have a "Large nose and Small eyes". Clear reference to antisemetic artwork and tropes.
2) The statement that "Races" are often good at some things and worse at others "just like in real life" With the addendum that "Some races are superior to others"
3) All obese characters automatically get asthma.
4) There are no Transgender characters in the Universe. Though Dave did write a note that maybe they should make a "Trans Race" which makes little enough sense, but then suggested they also be robots...

5) Heterosexuality is not only default, but explicitly outlined in some flaws and characteristics that imply homosexuality does not exist within the setting that includes Earth.

Shortly thereafter, the TSR Employee who leaked the Star Frontiers New Genesis alpha playtest posted a video response to Lanasa claiming it was fake. In the video the Leaker goes to the Google Documents folder TSR uses and highlights various items, including the Alpha Playtest to confirm it is there. He also opens a slide for a power point presentation created by Justin Lanasa which puts both the Nordics and the Negroes front and center.

You can watch the video, here: https://www.youtube.com/watch?v=t7ug2RvKe3c

The TSR you are working with is not the Tactical Systems Rules that Gary Gygax created in the 70s. It is a work of fraud and intellectual property theft in order to attempt to leverage a civil suit settlement from Wizards of the Coast who own the IP for Star Frontiers. Lanasa merely sniped the Trademark for the names "TSR" and "Star Frontiers". They're also illegally using old TSR artwork as part of their company image and materials. This is why they are in a legal battle with WotC, who owns the Star Frontiers IP as well as the use rights to those images.

In the process they have, and will continue to, defame everything great about the old TSR by usurping that institution's title and legacy while pushing hate-filled rhetoric and courting controversy for no purpose other to enflame and enrage the very community they routinely claim to be fighting for.

You can see some such bigoted material on their official business Facebook page, here:

https://www.facebook.com/TSRHobbies/

If you scroll back to earlier this month, in fact, you'll see Lanasa praise "Nasty Naughty Nazi Ninja Nudnik Elves" as a good candidate "Reboot" for a TTRPG. The attached image involves, of course, elves dressed in Nazi Fetish clothing. An "Explanation" of why they posted an image of a parent "Protecting his children" from a rainbow. And my personal favorite, the "Anti-Woke Unclaimer".

https://www.facebook.com/TSRHobbies/photos/a.110288111328906/196928642664852/

In which they claim to not be biased, sexist, racist, or otherwise... yet will intentionally shoehorn in such material to games with the express intent of offending people who would obviously be offended by that material.

Forgive my crudeness, but if a man has sex with a donkey as a joke, he's still had sex with a donkey at the end of the day. If they claim to promote these racist, sexist, overall

bigoted ideas out of a desire to offend people, there's little enough difference between them and someone who promotes these bigoted ideas to a brutal end.

The ideas are promoted, in either case, and we trundle onward toward that brutal end. And considering society's current trundling over LGBT and Women's Rights... well.

I have long held a special place in my heart for the Horticultural Hall due to it's past in providing a place for people to gather during the earliest days of my hobby, and now profession as I am a TTRPG writer.

Seeing this Nazi, and the people who defend him and outright approve of him putting clear Nazi Propaganda into their games, occupy the Horticultural Hall will break my heart. And the heart of countless other gamers. Yes. They make claims of neutrality. They make claims of grand conspiracy against them. But these claims are hollow, as shown by which side they stand on, routinely. As shown by the fact that they added the word "Retaliate" to their official advertisement on Tabletop Events.

Because they know why someone might retaliate against Nazi Propaganda being presented as wholesome TTRPG content. They know someone might show their sponsors all of this information. That those sponsors might not wish to support this new TSR if they knew what it's values were.

Please stand up for what is right. Please cancel their reservation and make a public statement refuting their disgusting and dangerous ideology, before the Horticultural Hall gains a terrible black mark in the hearts of gamers everywhere.

Cordially, and with great hope,
Rachel Williamson

Justin W. LaNasa
CEO TSR-Hobbies
"Let the steps I take toward my destiny be bold ones – for I know I am bold enough to walk this path."

Attachments area
Preview YouTube video Let's Look at an Example of Races from Star Frontiers: New Genesis - Oh My!



Preview YouTube video A more clear and simple video





Star Frontier New Genesis Racist | NuTSR Caught In Lies | Justin Lanasa The Walls Are Closing In

Cindershadow
1.84K subscribers
Join    Subscribe
👍 31    👎    ➦ Share    ≡+ Save    ...

www.youtube.com/watch?v=ibqG4AlcyNk



# Honorable Discharge

from the Armed Forces of the United States of America

*This is to certify that*

JUSTIN WILLIAM LANASA, ███████████  PV1, USAR

*was Honorably Discharged from the*

# United States Army

*on the* 28TH *day of* SEPTEMBER 1992 *This certificate is awarded as a testimonial of Honest and Faithful Service*

E. L. ROBERTSON, JR.
LTC, GS

[DOCUMENT DEMAND 10]

# Honorable Discharge



from the Armed Forces of the United States of America

*This is to certify that*

**JUSTIN LANASA**
**SEAMAN, U. S. COAST GUARD RESERVE**

*was Honorably Discharged from the*

# United States Coast Guard

*on the* **20 TH** *day of* **DECEMBER 1997** *This certificate is awarded*

*as a testimonial of Honest and Faithful Service*

**L. W. DUNN**
**CHIEF WARRANT OFFICER, U. S. COAST GUARD**

**CHIEF, PERSONNEL SUPPORT BRANCH**
**USCG INTEGRATED SUPPORT COMMAND**
**PORTSMOUTH, VIRGINIA**

DD FORM 256 CG (REV. 5-60)

GPO 945-061

[DOCUMENT DEMAND 10]



[DOCUMENT DEMAND 10]



**2:40**

.ıl LTE 🔋

‹       Geek Nation Tours's post       •••

When Geek Nation Tours first started exploring the possibilities of a tour to the birthplace of D&D, we met many wonderful people and since then have developed amazing friendships along the way. It became apparent however, that some we met were directing hatred towards others – particularly towards the queer community. Our hope through these troubles was to bring people together, to create harmony and camaraderie, share our path of learning and discovery and perhaps to even help bring understanding. Sadly, the attacks have continued and thus GNT no longer feels that those hopes for unity are possible and that we must take a stance against those expressing exclusion, hate or bigotry.

 Comment as Dungeo...   

I            Yea            Ok

[DOCUMENT DEMAND 13]



[DOCUMENT DEMAND 13]