**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JUSTIN LANASA, TSR, LLC and DUNGEON HOBBY SHOP MUSEUM, LLC, | : Case No.: 1:22-cv-05686(KAM)(VMS) |
| | : |
| Plaintiffs, | : |
| | : |
| -versus- | : |
| | : ORAL ARGUMENT REQUESTED |
| ERIK STIENE, and LOIS STIENE, aka RACHEL STIENE, | : |
| | : |
| Jointly and Severally, | : |
| | : |
| Defendants. | : |
| | : |

---

BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

Farber Schneider Ferrari LLP
By: Daniel J. Schneider
    Robert B. Lower
EDNY Bar: DS7366
Attorneys for Defendant(s)
261 Madison Ave, 26th Floor
New York, New York 10016
(212) 972-7040
dschneider@fsfllp.com
rlower@fsfllp.com

Of Counsel:
    Daniel J. Schneider
    Robert B. Lower

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………… iii

PRELIMINARY STATEMENT………………………………………………………………… 1

FACTUAL AND PROCEDURAL BACKGROUND……………………………………… 3

LEGAL STANDARDS…………………………………………………………………….. 5

      A.        DISMISSAL PURSUANT TO FED. R. CIV P. 12(b)(1) …………………… 5

      B.        DISMISSAL PURSUANT TO FED. R. CIV P. 12(b)(6) …………………… 5

ARGUMENTS………………………………………………………………………… 6

POINT I: AS A PRELIMINARY MATTER, THIS CASE DOES NOT COMPLY WITH 28 U.S.C. § 1332(a) AND THEREFORE, DISMISSAL IS REQUIRED…………………………..6

POINT II: THE CASE MUST BE DISMISSED AS AGAINST RACHEL STIENE *OR "STIENE"* TO THE EXTENT IT WAS EVER COMMENCED FOR VIOLATION OF FED. R. CIV. P. 4*(c)* …………………………………………………..8

POINT III: THIS ACTION IS AN IMPROPER SLAPP LAWSUIT THAT MUST BE DISMISSED, WITH COSTS AND FEES AWARDED TO DEFENDANTS…………………... 9

POINT IV: SINCE LANASA IS A PUBLIC FIGURE, REGARDLESS UNDER ANTI-SLAPP OR CONVENTIONAL SCRUTINY, PLAINTIFFS' DEFAMATION CLAIMS FAIL TO SURVIVE A MOTION TO DISMISS SINCE PLAINTIFFS FAIL TO PLAUSIBLY PLEAD ACTUAL MALICE…………………………………………………………...13

      A. LANASA IS REQUIRED TO PLAUSIBLY PLEAD ACTUAL MALICE…………..13

      B. LANASA FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANT PUBLISHED WITH ACTUAL MALICE……………………………………………16

POINT V: AS A MATTER OF LAW, THE STATEMENTS CLAIMED BY PLAINTIFFS' TO BE DEFAMATORY DO NOT HAVE A DEFAMATORY MEANING…………………...18

POINT VI: ACCUSATIONS OF DOXING AND CRIMINALITY AND ALL OTHER STATEMENTS ARE NOT ACTIONABLE AND TRUTH IS A COMPLETE DEFENSE TO ALL REPRESENTATIONS OF FACT…………………………………………………...23

POINT VII: PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS…………………………………………...26

POINT VIII: PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMA FACIE TORTIOUS CONDUCT……………………………………………………………... 28

POINT IX: THE SAC SHOULD BE DISMISSED WITH PREJUDICE……………………29

CONCLUSION…………………………………………………………………………..30

## TABLE OF AUTHORITIES

CASES

*149 Mercer Owner LLC v. 151 Mercer Retail LLC*, 72 N.Y.S.3d 517 (Sup. Ct., N.Y. Cty. 2017)............11

*Anderson v. Rocky Mountain News,* 1988 U.S. App. LEXIS 19304, at *6-7 (l0th Cir. July 7, 1988) ........17

*AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P.*, 115 A.D.3d 402, 403 (1st Dept. 2014) ....................28

*Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373, 379 (1995) ................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009) .................................................................................6, 16

*Avgush v Town of Yorktown*, 303 A.D.2d 340 (2d Dept 2003) ........................................................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...............................................................6, 16

*Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) ....................................10, 13, 15, 17, 23

*Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), aff'd, 807 F.3d 541, 545 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015)……………………………………………10, 14, 16, 17

*Black v. Ganieva*, 2023 U.S. App. LEXIS 5087, *5 (2d. Cir. 2023) .........................................29

*Boeheim,* 24 N.Y.3d at 269 ..........................................................................................................22

*Brancaleone v. Mesagna*, 290 A.D.2d 467, 468 (2d Dept. 2002) ...................................................26

*Brian v. Richardson,* 87 N.Y.2d 46, 50-51 (1995)...........................................................19, 20, 21, 23, 28

*Brimelow v. NY. Times Co.,* 2021 U.S. App. LEXIS 31672, at *10 (2d Cir. Oct. 21, 2021) ...................18

*Buon v. Spindler*, 65 F.4th 64, 74 (2d Cir. 2023)……………………………………………………9

*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 N.Y.2d 314, 333 (1983) ...........................28

*Cabello-Rondon v. Dow Jones & Co.,* 720 F. App'x 87, 89 (2d Cir. 2018).................................................17

*CACI Premier Tech. v. Rhodes,* 536 F.3d 280, 293 (4th Cir. 2008) ...........................................................15

*Cain v. Atelier Esthetique Inst. of Esthetics Inc.,* 733 Fed. Appx. 8, 11 (2d Cir. 2018)..............................26

*Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022)...................................................................9

*Casper v. Lew Lieberbaum & Co.,* 97 Civ. 3016 (JGK), 1998 U.S. Dist. LEXIS 4063, at *24-25 (S.D.N.Y. Mar. 31, 1998) .........................................................................................................26

*Celie v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir. 2000) ................................................14

*Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir. 1993) ..................................21

*Chau v. Lewis,* 771 F.3d 118, 127 (2d Cir. 2014) ............................................ 21, 28

*Church of Scientology Int'l v. Behar,* 238 F.3d 168, 174 (2d Cir. 2001) ....................12

*Cohen v. Postal Holdings, LLC,* 873 F.3d 394, 399 (2d Cir. 2017) ....................................8

*Coleman v. Grand,* 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) ..........................................9, 11

*Collins v. Willcox Inc.,* 158 Misc. 2d 54, 57 (Sup. Ct. N.Y.Cty. 1992) ..........................27

*Contemporary Mission v. NY. Times Co.,* 665 F. Supp. 248, 270 (S.D.N.Y. 1987)
    aff'd 42 F.2d 612 (2d Cir. 1988)....................................................................17

*Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021)
    ...........................................................................................12, 13

*Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 U.S. App. LEXIS 9086, No. 21-cv-2068, *3 (2d Cir.
    Apr. 5, 2022)..............................................................................23

*Davis v. Boeheim,* 24 N.Y.3d 262,269-70 (2014) ..........................................22

*Dawkins v. Carmack*, 2023 U.S. Dist. LEXIS 35313, 23-cv-1469(PMH), *1-2 (S.D.N.Y., March 2,
    2023) .........................................................................................7

*Dazzo v. Meyers*, 83 A.D.2d 14, 22 (2d Dept. 1981)..........................................19

*De Lench v. Archie*, 406 F. Supp. 3d 154, 160 (Dist. MA 2019) ..........................16

*Del Vecchio v. Nelson*, 300 A.D.2d 277, 278 (2d Dept. 2002) ....................................29

*Deripaska v. Associated Press,* 282 F. Supp. 3d 133, 138 (D.D.C. 2016) (same) ....................14

*DiSanto v. Forsyth*, 258 A.D.2d 497, 498 (2d Dept. 1999) ..........................................29

*Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985) ..........................................28

*Friedman v. Bloomberg L.P.*, 884 F.3d 83, 96 (2d Cir. 2017)....................................21, 28

*Garland v. Vermilyea*, 88 A.D.2d 1044, 1045, 452 N.Y.S.2d 265, 266 (3d Dept. 1982) ..........29

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342-44 (1974)..........................................13

*Goldin v. Engineers Country Club, 54 A.D.3d 658, 659 (2d Dept. 2008)*..........................27, 29

*Goldman v. Reddington*, No. 18-cv-3662, at *4 (E.D.N.Y. Apr. 21, 2021) ....................11

*Gray v. St. Martin's Press, Inc.,* 221 F.3d 243, 251 (1st Cir. 2000)................................................15

*Greenberg v. Spitzer,* 155 A.D.3d 27, 45 (2nd Dept. 2017)......................................................19

*Greer v. Fox Corp.,* 2022 U.S. Dist. LEXIS 161617, 20-cv-5484(LTS)(SDA), *20 (S.D.N.Y. Sept. 7, 2022) ........................................................................................................... 20, 22, 29

*Greer,* 2022 U.S. Dist. LEXIS 161617, 20-cv-5484(LTS)(SDA) ....................................................28

*Gross v. NY. Times Co.,* 82 N.Y.2d 146, 155 (1993) ......................................................... 21, 23, 28

*Harris v. Am. Accounting Ass'n,* 2021 U.S. Dist. LEXIS 226517, 20-cv-1057(MAD)(ATB), *37 (N.D.N.Y. Nov. 24, 2022) .......................................................................................................13

*Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 691 n.37 (1989) ...........................17

*Hatfill v. N.Y. Times Co.,* 532 F.3d 312, 322 (4th Cir. 2008) ........................................................15

*Highland Capital Mgt., L.P. v. Dow Jones & Co., Inc.,* 178 A.D.3d 572, 116 N.Y.S.3d 18, 19 (1st Dep't 2019) .....................................................................................................................................23

*Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) .................................................................6

*Hussey v. N.Y. State Dep't of Law*, 933 F. Supp. 2d 399, 414 (E.D.N.Y. 2013) ............................... 19, 20

*In re Frito-Lay N. Am., Inc.,* 2013 U.S. Dist. LEXIS 123824, 12-md-2413(RRM)(RLM), *14 (E.D.N.Y., Aug. 29, 2013)......................................................................................................15

*James v. DeGrandis*, 138 F.Supp.2d 402 (W.D.N.Y. 2001) .........................................................27

*James v. Gannett Co.,* 40 N.Y.2d 415, 419 (1976) ......................................................................19

*Jankovic v. Int'l Crisis Grp.,* 822 F.3d 576 (D.C. Cir. 2016)........................................................15

*John Wiley & Sons, Inc. v. Glass,* 2010 U.S. Dist. LEXIS 44986, 10-cv-598(PKC) at *8 (S.D.N.Y. May 6, 2010) ...............................................................................................................................7

*Kesner v. Jones*, 2023 U.S. App. LEXIS 15255, *5 (2d Cir. 2023)………………………………..10, 13

*Kinsey,* 991 F.3d at 177...............................................................................................................19

*Klein v. Metropolitan Child Servs., Inc.,* 100 A.D.3d 708, 710 (2d Dept. 2012).................................... 26, 27

*La Duke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dept. 1998)........................................27

*La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020) .......................................................................9, 13

*Landor-St. Gelais v Albany Int'l Corp.,* 307 A.D.2d 671 (3d Dept 2003) .....................................28

*Latifi v. Gonzales*, 430 F.3d 103, 106 n.1 (2d Cir. 2005)............................................................15

*Lerman v. Flynt Distrib. Co.,* 745 F.2d 123 (2d Cir. 1984)...........................................................14

*Levin v. McPhee,* 119 F.3d 189, 197 (2d Cir. 1977) ....................................................................22

*Liberman v. Gelstein,* 80 N.Y.2d 429, 434–35 (1992) ..........................................................26, 29

*Lohrenz v. Donnelly,* 350 F.3d 1272, 1286 (D.C. Cir. 2003)......................................................17

*Lynch v McQueen,* 309 A.D.2d 790 (2d Dept. 2003).................................................................28

*Maitland v. Lunn,* 2017 U.S. Dist. LEXIS 40467, 14-cv-5938 (JS)(AKT), *1 (E.D.N.Y. Mar. 21, 2017)
..............................................................................................................................................7

*Mahoney v. Adirondack Publ. Co.,* 71 N.Y.2d 31, 39 (1987).....................................................14

*Manas v. VMS Assoc., LLC,* 53 A.D.3d 451, 454 (1st Dept. 2008)...........................................19

*Mayfield v. NASCAR,* 674 F.3d 369, 378 (4th Cir. 2012) .........................................................16

*McClure v. Am. Family Mut. Ins. Co.,* 223 F.3d 845, 853 (8th Cir. 2000)................................22

*McIntosh v. Covenant House,* 248 F.R.D. 160, 161 (S.D.N.Y. 2008)………………………………9

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19-20 (1990).......................................................22

*New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964) .................................................13

*Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996)..............20

*Nurriddin v. Bolden,* 818 F.3d 751, 756 (D.C. Cir. 2016) ...........................................................6

*Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 284 (1974)..........................................22

*Palin v. New York Times Co.,* 940 F.3d 804, 814 (2d Cir. 2019) ...............................................18

*Palin v. NY. Times Co.,* 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) ....................................9, 12, 14

*Printers II, Inc. v. Professionals Pub., Inc.,* 784 F.2d 141, 146 (2d Cir. 1986) .........................26

*Pure, Inc.,* 450 F.3d at 1137 .......................................................................................................15

*Reed v. Marvin Lumber & Cedar Co., LLC,* 2022 U.S. Dist. LEXIS 208198, 22-cv-9701, *5 (S.D.N.Y., Nov. 16, 2022)..........................................................................................................................7

*Rene v. Citibank NA,* 32 F.Supp. 2d 539, 542 (E.D.N.Y. 1999) .................................................5

*Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 379-81 (1977) ........................21, 28

*Rinaldi,* 42 N.Y.2d at 379-81 (1977) ...................................................................................22, 29

*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, 2009 U.S. Dist. LEXIS 26301, 07-cv-5441 (DGT)(RML), *8 (E.D.N.Y. Mar. 27, 2009)..................................................................................................27

*Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 214 (W.D.N.Y. 2013)......................................27

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) ............................16

*Schwartz* v. *Am. College of Emergency Physicians,* 215 F.3d 1140, 1145 (10th Cir. 2000) ............15

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 814, n. 5 (2d Cir. 2014) ..........................7

*St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) ................................................................... 13, 18

*Stepanov v. Dow Jones & Co., Inc.,* 120 A.D.3d 28, 37 (1st Dep't 2014) ......................................21

*Stern v. Cosby*, 645 F. Supp. 2d 258, 284 (S.D.N.Y. 2009 .............................................................17

*Tannerite Sports, LLC. v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017)……………..…20

*Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ....................................7

*TSR LLC v. Wizards of the Coast LLC,* 21-cv-1705(SKV) (W.D. Wash Sept. 8, 2022)........................24

*Vaughn v. Giovanni Xu*, 2022 N.Y. Misc. LEXIS 7820, *8 (Sup. Ct. N.Y.Cty. 2022) ..........................13

*Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020).......................................7

*Weldy*, 985 F.2d at 62..................................................................................................................26

*Wolf St. Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 32 (4th Dept. 1985).........................29

*World Wide Ass'n of Specialty Programs* v. *Pure, Inc.,* 450 F.3d 1132, 1137 (10th Cir. 2006) ....................15

## STATUTES

28 U.S.C. § 1331 ............................................................................................................................4

28 U.S.C. § 1332 ....................................................................................................................passim

CPLR 3016(a)…………………………………………………………………………………..19

CPLR 3211(g) ...............................................................................................................................8

CRL § 70-a ...................................................................................................................... 2, 9, 10, 12

CRL § 76-a .............................................................................................................................passim

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1, 5, 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 5, 9, 19

**OTHER AUTHORITIES**

New York State Assembly Memorandum in Support of A. 4299, Bill Jacket at 8 ...............................12

Restatement § 571 ...............................................................................................................................26

Defendant Erik Stiene ("Erik") and another purported defendant, apparently claimed to be Rachel Stiene ("Rachel") (collectively, "Defendants"), though no one named Rachel Stiene has ever been summoned in this case, e.g. ECF 7 and 23, respectfully submit this brief in support of his/their motion to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the New York anti-SLAPP statute, N.Y. Civ. Rights L. §§ 70-a and 76-a, and for associated legal fees and costs.

## PRELIMINARY STATEMENT

Plaintiffs Justin Lanasa ("Lanasa") and Dungeon Hobby Shop Museum, LLC ("Dungeon Hobby") ("Plaintiffs") seek money damages and other forms of relief against Defendants for publishing statements regarding Plaintiffs which should be dismissed as discussed below.

As the Court warned on January 6, 2023, that the original complaint, ECF 1, was likely dismissible, it generously provided Plaintiffs with an opportunity to focus the allegations in a first opportunity to amend the complaint ("FAC") and allege actual actionable content. Instead of heeding the Court's well substantiated advice, on January 23, 2023, Plaintiffs continued in their allegations of patently unactionable conduct, but doubled down by filing the FAC, adding a party, Lois Stiene ("Lois"), who is Erik's mother who makes no statements at all. ECF 20. Moreover, the FAC continued the failure to adequately allege the damages threshold in the diversity statute.

Following months of Defendants showing conclusive proof that: (a) Lois is not an appropriate party; and (b) that Plaintiff has a criminal conviction on his record, Plaintiff's counsel, on November 26, 2023, filed a letter application, construed to be pursuant to Fed. R. Civ. P. 15(a)(2), to make a second amendment to his Complaint "removing [Lois Stiene's] name as a Defendant" and "Striking the assertion that [Plaintiff] has no criminal convictions." ECF 55. On January 9, 2024, the Court granted that application in a narrow manner limited to the removal of allegations and letting Plaintiffs

1

fulfill "[their] intention to remove Lois Stiene as a defendant and to remove representations that Plaintiff LaNasa has no criminal convictions." See Docket Order for January 9, 2024.

Plaintiff filed the SAC on January 16, 2024 which removed any reference to the word Lois and removed allegations about Plaintiff LaNasa's criminal past, but improperly attempted to add Rachel as a party. ECF 62, 62-1.  This is in direct contravention to the Court's order which held that "the Court's grant of leave to amend is so narrow and only allows Plaintiffs to remove allegations." See Docket Order for January 9, 2024.  As discussed below, this should not be permitted.  Furthermore, upon a comparison of the redlined version of the SAC and the final submitted, they do not match, with the final version adding words and a party where removal was only permitted. ECF 62, 62-1 at e.g. ¶¶ 6 and 7 (additions of the word "Rachel" or the defined term "R. Stiene" where they are different in the redlined version).  Sneaking additions in, as Plaintiffs have, should not be countenanced.

Like many defamation plaintiffs before them, in an unsuccessful attempt to mask the deficiencies in their Complaint and frame them as one or more claims upon which relief could be granted, Plaintiffs editorialize and misrepresent online content that raise and report long-debated questions of public concern over Lanasa's inappropriate conduct. The statements alleged by Lanasa are not reasonably capable of defamatory meaning, protected as opinion, are true, constitute vulgar words, insults and/or are otherwise not actionable.

What is more, as a matter of both New York statutory and federal constitutional law, Lanasa was required to plausibly plead that Defendants published statements with "actual malice," *i.e.*, with knowledge that the challenged statements were false. As myriad other courts have held in analogous situations, and as is apparent from SAC itself, Lanasa has not and cannot satisfy this requirement. Finally, this lawsuit should be deemed an impermissible one based upon the amended New York anti-SLAPP provisions set forth in N.Y. Civil Rights Law ("CRL") §§ 70-a and 76-a and, as a result, upon dismissal, attorneys fees and costs should be awarded to Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Erik is an online content producer that produces and releases content titled "Tenkar's Tavern" including video, podcasts, and blogs for consumption by the public on one or more platforms, including YouTube.  The content is focused on Old School Renaissance ("OSR") gaming, the Swords and Wizardry Role Playing Game ("RPG") and Dungeons and Dragons.  As evidenced by the links in the SAC, ECF 62 at, *e.g.*, ¶ 22, this content is available to the public on YouTube for free and is subject to comment, message board and participation by members of the public.

Lois is Erik's mother and has nothing to do with this case. Non-party, Rachel, is Erik's wife and sometimes sits in on Tenkar's Tavern and engages in dialogue with Erik during the course of the webcast. Lanasa is another member of this community that has engaged in a feud with Erik online and on the various forums.  As a result, Erik has used his platform to respond to Lanasa including in the videos that have been linked in the SAC. ECF 62 at, *e.g.*, ¶ 22.  There is no dispute that he has done so on a public forum.

As a result of these statements, on or about September 22, 2022, Plaintiffs commenced this action against Erik only alleging in his original complaint (the "First Complaint") two counts of defamation and one count of intentional infliction of emotional distress ("IIED"). ECF 1.  Erik timely sought to dismiss the first complaint and the Court held a conference on the matter January 6, 2023. This Court permitted Plaintiffs to amend their patently deficient complaint in order to permit the remediation of multiple judicially observed dismissal-worthy shortcomings.

However, a cursory review of the SAC confirms Plaintiffs consciously ignored and/or failed to heed this Court's clear and simple directives that (a) the damages were not sufficiently justified to pass muster with 28 U.S.C. § 1332(a); (b) that Plaintiffs should seek to focus, not expand the materials they asserted were actionable; (c) that several of the asserted statements on their face were not defamatory; and (d) that only removals and not additions were permitted.

3

Despite the unambiguous nature of the Court's January 9, 2024 order, Plaintiff attempted to improperly sneak in allegations that added Rachel as a party. Specifically, the redlined version purports only to remove words. ECF 62-1 at e.g. ¶6 (Removes the word "Lois" and the letter "L" to read, "Defendant STIENE [hereinafter referred to as "Stiene"] is a private individual…". This leaves an ambiguous, unsummoned defendant without a first name. Shockingly, without redlines, the version submitted by Plaintiffs as the official SAC, in the same paragraph does not match, adding words reading, "Defendant RACHEL STIENE [hereinafter referred to as "R. Stiene"] is a private individual…" ECF 62 at ¶ 6. Plaintiffs quite literally attempted to demonstrate only subtractions in the redlined version, per the order, while hiding affirmative additions in the version without redlines.

In addition to this trickery, it is quite impossible for Plaintiffs to simply substitute Lois for Rachel because Rachel has never been summoned in this case. Only Erik and Lois have been served with a summons. ECF 7 and 23. Accordingly, this rouse should be rejected and the second defendant should be stricken from the caption and/or the case should be dismissed as against any second individual.

The Court, previously, on January 6, 2023, identified two factual allegations, from January 9, 2022 and March 17, 2022 (*e.g.*, that Plaintiff Dungeon Hobby "wasn't a not for profit") in Plaintiffs' then-operative complaint, ECF 1 at ¶ 17, pp. 8-9, as examples of non-defamatory conduct that should have been stricken. Instead, Plaintiffs have alleged the same allegations in the FAC and SAC, ECF 20 and 62 at ¶ 22, and elected to *add* various additional dismissal-worthy grounds that are incapable of remediation to the FAC, which remained in the SAC Plaintiffs have brazenly ignored the Court's directive that they need to be "more selective" and have continue in this by adding allegations here.

The futile nature of Plaintiffs' amendments is typified by Plaintiffs' continued attempt to sue STIENE or R. STEIN. In the event that they were referring to Plaintiff's wife, ECF 62 at ¶ 7, these allegations ask this Court to create a novel vicarious liability theory by virtue of the fact that Erik's

wife occasionally appears in the background of her husband's YouTube videos.  A cursory review of the *de minimis* volume of remarks imputed to Erik's wife (Rachel), reflects that they were not uttered by Rachel and fall short of actionable conduct. So much so that this constitutes an attempt to continue in a suit against Erik's wife in vexatious, harassing, and meritless manner so as to be sanctionable.

That being said, none of the statements are actionable against any defendant.  As will be discussed in further detail below, they are either non-defamatory insult, verifiably true, accusation, objectively opinion and/or impermissibly taken completely out of context.

Based upon the fact that none of the statements are actionable, none of the conduct alleged rises to the level of IIED or *prima facie* tort and no special damages are alleged, this motion is necessary. Thus, Defendants sought and received permission from the Court to move to dismiss.

## LEGAL STANDARDS

### A.    *Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)*

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that this Court does not have subject matter jurisdiction over Defendants. "Federal subject matter jurisdiction exists only when a 'federal question' is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds $75,000." *Rene v. Citibank NA*, 32 F.Supp. 2d 539, 542 (E.D.N.Y. 1999). "In considering motions to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Id.* "Where jurisdiction is lacking, the district court must dismiss the Complaint without regard to the merits of the lawsuit." *Id.*

### B.    *Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)*

Defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff failed to state a claim.  "To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6),

a Plaintiff]…must plead factual allegations that…state a claim to relief that is plausible on its face." *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019). While a Complaint need not contain detailed factual allegations…plaintiff[] must plead factual allegations that "raise a right to relief above the speculative level." *Id.* (internal citations and quotation marks omitted). This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "So long as a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Hu*, 927 F.3d at 97 (internal citations and quotation marks omitted).

While well-plead facts are accepted as true on a motion to dismiss, the Court is not compelled to accept legal conclusions, such as Plaintiffs' mischaracterization and material embellishment of Erik's statements. *Iqbal, 556* U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Nurriddin v. Bolden,* 818 F.3d 751, 756 (D.C. Cir. 2016) (courts should not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint").

Under this well settled construct, in the four corners of Plaintiffs' pleading, no plausible claim has been asserted as against Defendants. As a result, dismissal is required.

## ARGUMENTS

## I.   POINT I: AS A PRELIMINARY MATTER, THIS CASE DOES NOT COMPLY WITH 28 U.S.C. § 1332(a) AND THEREFORE, DISMISSAL IS REQUIRED

As this case is alleged to have been brought via diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and fails to plausibly allege a $75,000 amount in controversy, the Court lacks subject matter

jurisdiction and the case must be dismissed. "[28 U.S.C. § 1332(a)] establishes that diversity jurisdiction exists over civil actions between citizens of different States, where the matter in controversy exceeds the sum or value of $75,000." *Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 814, n. 5 (2d Cir. 2014). Moreover, "[t]he amount in controversy is determined at the time the action is commenced." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).

Where, as here, "Plaintiff [alleges] damages in a sum which exceeds the sum or value established by 28 USC § 1332(a) exclusive of interests and costs" and is lacking in additional details to support this assertion, [it constitutes a] conclusory reference to 28 U.S.C. § 1332(a) [and] fails to adequately establish that the amount in controversy exceeds $75,000." *Dawkins v. Carmack*, 2023 U.S. Dist. LEXIS 35313, 23-cv-1469(PMH), *1-2 (S.D.N.Y., March 2, 2023); *Reed v. Marvin Lumber & Cedar Co., LLC*, 2022 U.S. Dist. LEXIS 208198, 22-cv-9701, *5 (S.D.N.Y., Nov. 16, 2022)(supporting information is required to show the jurisdictional threshold by a preponderance of the evidence); *John Wiley & Sons, Inc. v. Glass*, 2010 U.S. Dist. LEXIS 44986, 10-cv-598(PKC) at *8 (S.D.N.Y. May 6, 2010)(conclusory statements insufficient); *Maitland v. Lunn*, No. 14-CV-5938(JS)(AKT), 2017 U.S. Dist. LEXIS 40467, at 1 (E.D.N.Y. Mar. 21, 2017) (same).

Here, despite the Court's caution in this regard,[1] the amount in controversy allegations in the SAC remain vague, conclusory and threadbare. In the "jurisdiction and venue" section, Plaintiffs invoke diversity jurisdiction by merely alleging "Jurisdiction is proper pursuant to federal diversity jurisdiction and the amount of damages is in excess of the jurisdictional amount laid out therein, viz.,

---

[1] During the Jan. 6, 2023 conference regarding this motion, the Court characterized the unsubstantiated amount in controversy allegations that remain unchanged in the SAC as "vague and conclusory."

28 U.S.C. § 1332." ECF 62 at ¶ 14.  This is the precise language this Court, on January 6, 2023, has already correctly characterized insufficient. *See Dawkins, supra*.

Plaintiffs further allegations of damages include the conclusory statement that they "have suffered damages in the form of litigation and trial expenses, and loss of income, and damages set forth herein." ECF 62 at ¶ 36. Such vague allegations are insufficient. *See Maitland v. Lunn*, 2017 U.S. Dist. LEXIS 40467, 14-cv-5938 (JS)(AKT), *1 (E.D.N.Y. Mar. 21, 2017).  Moreover, there is no allegation of any actual damages set forth anywhere in the SAC. It therefore constitutes "[An] allegation in the absence of any supporting information" warranting dismissal. *Reed, supra*.

Further references to damages of this kind now appear in the separate claims for relief that purport to add a price tag of $1,000,000 in entirely conclusory fashion. ECF 62 at ¶¶ 55-56, 65-67, 81-82, 86-88, and 93-94.  There is nothing specific enough to adequately allege the jurisdictional threshold. As a result, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332 and therefore, the SAC must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

While all claims should be dismissible for non-compliance with 28 U.S.C. § 1332, to the extent necessary, dismissal is also compulsory under 28 U.S.C. § 1367(a). "[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."[2]  Upon a dismissal under Fed. R. Civ. P. 12(b)(1), original jurisdiction must be vitiated and therefore, supplemental jurisdiction cannot be exercised.  For this reason, dismissal is required.

## II.     POINT II: THE CASE MUST BE DISMISSED AS AGAINST RACHEL STIENE OR "STIENE" TO THE EXTENT IT WAS EVER COMMENCED FOR VIOLATION OF FED. R. CIV. P. 4(c)

Rachel and/or "Stiene" were never served with a summons and that jurisdictional defect requires dismissal. ECF 7 and 23 (only Erik and Lois received a summons). "Jurisdiction attaches

---

[2] *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017); *see also* 28 U.S.C. § 1367(a) (supplemental jurisdiction is only available where the Court has original jurisdiction).

upon the service of a summons as well as a pleading." *McIntosh v. Covenant House*, 248 F.R.D. 160, 161 (S.D.N.Y. 2008); *see also Buon v. Spindler*, 65 F.4th 64, 74 (2d Cir. 2023)("the requirements for service of process are governed by Rule 4, which includes a requirement that "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1)."). "[S]ervice of process [is] defective where a plaintiff serves a complaint without a summons…" *Buon*, 65 F.4th at 74. Since Rachel has never been served with a summons, Plaintiffs' surreptitious attempt to apply the complaint to her is ineffective and the case must be dismissed as against her.

III.     **POINT III: THIS ACTION IS AN IMPROPER SLAPP LAWSUIT THAT MUST BE DISMISSED, WITH COSTS AND FEES AWARDED TO DEFENDANTS**

        Plaintiffs' case is an illegal SLAPP lawsuit warranting dismissal with an award of costs and attorneys' fees to Defendants.  Plaintiffs commenced this action as a form of retaliation against Erik (and Rachel), engaging in public petition and participation, hosting multiple online forums on which Defendants interact with the public. Moreover, it has been commenced and/or continued without a substantial basis in fact or law and/or was commenced and/or continued to intimidate or punish Defendants by attempting to inhibit their free speech.  Therefore, the case must be dismissed.

        Defendants do acknowledge that under New York State law, Defendants would be entitled to enforce a heightened pleading standard in such cases codified under CPLR 3211(g), that they may not invoke here as CPLR 3211(g) has been deemed to be procedural. *See, e.g., La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020); *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022).  That being said, New York's anti-SLAPP statutes as a whole are substantive and are entitled to application and enforcement in the District Court. *See Palin v. NY. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (a "federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision").[3]

---

[3] *See also Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) ("§ 76-a is 'manifestly substantive,' governing the merits of libel claims and increasing defendants' speech protections").

Therefore, even under the conventional standard in Fed. R. Civ. P. 12(b)(6), dismissal at this stage is required. The U.S. Court of Appeals has now clarified that a showing of actual malice, by clear and convincing evidence, is required under CRL § 76-a in the Second Circuit. See *Kesner v. Jones*, 2023 U.S. App. LEXIS 15255, *5 (2d Cir. 2023).[4] This is the standard because "there is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012), *quoting Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (1995). With insufficient allegations of malice, discussed below, Plaintiffs fail to state a claim.

CRL § 70-a states in relevant part:

1. A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:
   (a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law;
   (b) other compensatory damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights…
2. The right to bring an action under this section can be waived only if it is waived specifically.

CRL § 76-a states in relevant part:

1. For purposes of this section:
   (a) An "action involving public petition and participation" is a claim based upon:
      (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or

---

[4] *See also Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015).

    (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

   (b) "Claim" includes any lawsuit, cause of action, cross-claim, counterclaim, or other judicial pleading or filing requesting relief.

   (c) "Communication" shall mean any statement, claim, allegation in a proceeding, decision, protest, writing, argument, contention or other expression.

   (d) "Public interest" shall be construed broadly, and shall mean any subject other than a purely private matter.

2. In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

This action must also be dismissed—with an award of costs and fees—as an improper "SLAPP" lawsuit aimed at silencing and intimidating Defendants from speaking out publicly about Plaintiffs' bullying and conduct designed to chill others from speaking against them. New York's anti-SLAPP statute outlaws this type of conduct—without substantial basis or "commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." *See* CRL§ 70-a(1)(b). These standards are construed "broadly," *see* CRL § 76-a, "to prevent well-heeled [litigants] from using the threat of personal damages and litigation costs…as a means of harassing, intimidating or…punishing individuals, unincorporated associations…and others who have involved themselves in public affairs by opposing them." *149 Mercer Owner LLC v. 151 Mercer Retail LLC*, 72 N.Y.S.3d 517 (Sup. Ct., N.Y. Cty. 2017). Seeking fees and costs based upon this statute is permissible here and "shall" be awarded.[5]

All of claims in this case arise out of and "involv[e] public petition and participation." CRL § 76-a. Specifically, Plaintiffs, here, (frivolously) sued Defendants for comments made on a public forum that fall within the broad definition of public interest. They are also not actionable because they are

---

[5] *See* CRL § 70-a(1)(a); *Goldman v. Reddington*, No. 18-cv-3662, at *4 (E.D.N.Y. Apr. 21, 2021)(report and recommendation adopted sub nom).

opinions and factual allegations that are not verifiably false, and/or properly plead allegations that any Defendant made an assertion with malice—they knew it to be false or had reckless disregard for truth.

Under CRL §§ 76-a(1), forums on YouTube, Patreon, Facebook, Discord, and other online communication platforms are "communication[s] in a place open to the public or a public forum in connection with an issue of public interest." Under CRL §§ 76-a(1)(d) "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter." This includes subject specific webcasts published to a general audience and on websites that are open to the public.[6]

Erik's broadcasts cannot constitute "purely private matters" as the public interacts in these shows and this specific community is interested in hearing about Lanasa's conduct, and as conceded in the SAC, the statements were made on multiple forums that are "open to the public." ECF 62 at, *e.g.*, ¶¶ 20 and 22. Notably, there is not a single allegation of pure privacy in the SAC. ECF 62, *passim*.

Accordingly, all are impermissible SLAPP claims that are *precisely* of the sort New York law prohibits.  Defendants should not remain in fear of lawsuits brought by the person who wronged them.  Clearly, Plaintiffs brought this action to intimidate and punish Defendants for letting people know about Lanasa's inappropriate and newsworthy behavior and to chill others from doing the same. Moreover, public interest is invoked since this is a small community and this topic has generated public interaction as evidenced by the links in the complaint. ECF 62 at ¶ 22. Thus, not only is dismissal of the first two claims required, but further remedies must be imposed "to protect citizens who participate in public affairs against lawsuits brought in retaliation against their participation."[7] Therefore, the Court must impose, as mandated by statute, an award of Defendants' costs, expenses, and attorneys' fees incurred in defending against it. CRL §§ 70-a and 76-a.

---

[6] *See, e.g., Coleman,* 523 F. Supp. 3d at 259 (email and letter describing allegedly abusive romantic relationship and circulated among industry contacts was sent "in connection with an issue of public interest"); *Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am.,* 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (same, for statements about allegations against plaintiff on news websites "open to the public").
[7] New York State Assembly Memorandum in Support of A. 4299, Bill Jacket at 8.

As the portions of New York's anti-SLAPP law that compel the award of attorneys' fees are substantive rather than procedural,[8] and they are mandatory, not permissive (like the predecessor law), CRL §§ 70-a(1)(a), and accordingly, fees are not only available in federal court but must be awarded to Defendants in this case. *See Harris v. Am. Accounting Ass'n*, 2021 U.S. Dist. LEXIS 226517, 20-cv-1057(MAD)(ATB), *37 (N.D.N.Y. Nov. 24, 2022), as awarded in 2022 U.S. Dist. LEXIS 92507 (N.D.N.Y. May 24, 2022); *cf. Ctr. for Med. Progress*, 551 F. Supp. 3d at 333 (unlike here, attorneys' fees ordered to be addressed in separate proceeding for absence of briefing).

**IV.   POINT IV: SINCE LANASA IS A PUBLIC FIGURE, REGARDLESS WHETHER UNDER ANTI-SLAPP OR CONVENTIONAL SCRUTINY, PLAINTIFFS' DEFAMATION CLAIMS FAIL TO SURVIVE A MOTION TO DISMISS SINCE PLAINTIFFS FAIL TO PLAUSIBLY PLEAD ACTUAL MALICE**

The Complaint should be dismissed for the separate and independent reason that Plaintiffs were required to but failed to allege facts that, if proven, could plausibly establish Defendants made statements with "actual malice" fault, *i.e.*, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Reckless disregard in this context means proceeding to publish despite having serious doubts about the truth of the publication.[9] As a public figure, "actual malice" fault, an essential element of Plaintiffs' claim under the First Amendment and as discussed above, there is particular value in assessing the sufficiency of defamation claims at the pleading stage. *See Biro v. Condé Nast*, 883 F. Supp. 2d at 457.

**A.   *Lanasa is Required to Plausibly Plead Actual Malice***

The title and language of New York's anti-SLAPP statute, and now the Second Circuit, *Kesner*, 2023 U.S. App. LEXIS 15255, *5, makes clear that plaintiffs suing for defamation on speech "involving public petition and participation" must plead and prove actual malice. N.Y. Civ. Rights L.

---

[8] *See Palin*, 510 F. Supp. 3d at 26; but *cf. La Liberte*, 966 F. 3d 79
[9] *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001), citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

§ 76-a (titled "Actions involving public petition and participation; when actual malice to be proven.").[10] The statutory language requires in such a case, that the speech "was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue." CRL § 76-a (2). The statutory language requires actual malice.

In a conventional defamation analysis, where, as here, a public figure is the plaintiff, actual malice must be similarly plead and proven. *See Mahoney v. Adirondack Publ. Co.*, 71 N.Y.2d 31, 39 (1987) (public figure plaintiffs must prove, by clear and convincing evidence, that the defamatory statements were published with actual malice); *Palin v. NY. Times Co.,*510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (New York law "requires public figures ... to prove actual malice by clear and convincing evidence"). Lanasa also bears this burden under the First Amendment because he is a "public figure."[11]

A defamation plaintiff's status as a public figure "is a question of law for the court," *Celie v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir. 2000), and is regularly resolved on preliminary motion on the basis of the pleadings and records subject to judicial notice.[12]  Here, Lanasa effectively concedes in his Complaint that he is a public figure required to plead actual malice. ECF 62 at ¶¶ 28, 29, 41-45, 71 (attempting, unsuccessfully, to plead actual malice), but even if he were to argue to the contrary, his public figure status is plainly established.

In making a public figure determination, a court considers whether a plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to said subject; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media. *Lerman v. Flynt Distrib. Co.,* 745 F.2d 123 (2d Cir. 1984).

---

[10] *See Vaughn v. Giovanni Xu*, 2022 N.Y. Misc. LEXIS 7820, *8 (Sup. Ct. N.Y.Cty. 2022).
[11] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342-44 (1974).
[12] *Biro*, 963 F. Supp. 2d at 269-71 (deciding public figure status on pre-discovery motion); *Deripaska v. Associated Press,* 282 F. Supp. 3d 133, 138 (D.D.C. 2016) (same).

Lanasa is a long-standing fixture in public debates as evidenced by his several runs for office[13] over numerous years—2011: Mayor of Wilmington, North Carolina; 2014: North Carolina State Senate District 9; 2020: North Carolina's House District 20.[14] His other injections into public controversy include forcing female employees to wrestle one another in bikinis in order to obtain promotion and publication of patently racist materials.[15] These public controversies were created by the intentional conduct and notoriety of Plaintiffs' inappropriate conduct.[16]

Moreover, Lanasa has affirmatively injected himself into the public controversies with which he is widely associated. He regularly takes advantage of the platform his prominence affords him, ensuring his views are represented in the ongoing public debate by giving media interviews and publishing opinion pieces.[17] *Schwartz* v. *Am. College of Emergency Physicians,* 215 F.3d 1140, 1145 (10th Cir. 2000) (doctor voluntarily injected himself into public controversy by writing editorials on issue relating to his practice).[18] In these ways, Lanasa has elevated himself to prominence in connection with public life and he has even been a public presence in the online gaming community.[19]

By voluntarily placing himself at the center of this on-going public debate, Lanasa is a public figure for purposes of this litigation. Accordingly, under both New York state law and the First

---

[13] As the Court may take judicial notice of election results, *see Latifi v. Gonzales,* 430 F.3d 103, 106 n.1 (2d Cir. 2005); *In re Frito-Lay N. Am., Inc.,* 2013 U.S. Dist. LEXIS 123824, 12-md-2413(RRM)(RLM), *14 (E.D.N.Y., Aug. 29, 2013), it may take judicial notice of Lanasa's run for office.

[14] News articles linked in text above.

[15] *Grits wrestling video sparks feud between NC candidates,* https://www.newsobserver.com/news/state/north-carolina/article240600416.html; *see infra* at 24 nn.43-44 (regarding Plaintiffs' abhorrent racist content); *see also CACI Premier Tech. v. Rhodes,* 536 F.3d 280, 293 (4th Cir. 2008) (public controversy existed concerning treatment of individuals by private company).

[16] *World Wide Ass'n of Specialty Programs* v. *Pure, Inc.,* 450 F.3d 1132, 1137 (10th Cir. 2006) (plaintiff helped drive attention to issue underpinning public controversy).

[17] WHQR, *Justin LaNasa: The Full Interview* by Michelle Bliss, https://www.whqr.org/politics/2011-10-20/justin-lanasa-the-full-interview (one of several media interviews).

[18] Lanasa alleges Defendants are trying to "to make the named Plaintiffs into some kind of public persona" ECF 62 ¶ 42. However, Plaintiffs' artificially narrow view of the public controversies they have created is without support. *Jankovic v. Int'l Crisis Grp.,* 822 F.3d 576 (D.C. Cir. 2016) (rejecting narrow controversy argued by plaintiff and looking instead to news coverage).

[19] *Hatfill v. N.Y. Times Co.,* 532 F.3d 312, 322 (4th Cir. 2008) (plaintiff known as expert in his sphere); *Gray v. St. Martin's Press, Inc.,* 221 F.3d 243, 251 (1st Cir. 2000) (same); *Pure, Inc.,* 450 F.3d at 1137 (plaintiff worked to remain at forefront of cultural conversation).

Amendment, to recover damages, Lanasa must show, by clear and convincing evidence, that Defendant published the Article knowing it was false or recklessly disregarding its apparent falsity.

## B. *Lanasa Fails To Plausibly Allege That Defendant Published With Actual Malice*

As actual malice is a necessary element of Plaintiffs' defamation claims, "pleading actual-malice buzzwords is simply not enough to nudge a case into discovery." *Biro*, 963 F. Supp. 2d at 279-280. *Biro* cited to the Fourth Circuit which held that, when pleading actual malice, "This kind of conclusory allegation—a mere recitation of the legal standard…is entirely insufficient [and]…is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."[20]  The Second Circuit has adopted this standard following both *Mayfield* and *Schatz, supra*.[21]

Here, Lanasa in his Complaint makes a few scattershot attempts to allege actual malice, ECF 62 at ¶¶ 28, 29, 41-45, 71, none of which nudge[s]" the claims "across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 680.  More precisely, Lanasa simply regurgitates the legal standard, ECF 62 at, *e.g.*, ¶¶ 41-45 and fails to plead any *facts* that, taken as true, could establish, by any standard, that the defendants published the allegedly defamatory content while believing it was false or while entertaining serious doubts as to its truth.

To the contrary, one of the most egregious allegations, regarding the criminal history of LaNasa, had to be withdrawn because of conclusive proof that it was true. ECF 20 and 62-1 at ¶¶ 22, 28, 40, 47, 59; ECF 59. Instead of showing any malice whatsoever, Plaintiffs, by their conduct, are demonstrating that instead of a disregard for the truth, Defendants were actually publishing the truth.

In addition, any allegation that Lanasa alleges that Defendants knew that the statements were false and acted with actual malice because Plaintiffs sent a cease-and-desist letter and Defendants

---

[20] *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012); *see also De Lench v. Archie*, 406 F. Supp. 3d 154, 160 (Dist. MA 2019)("A complaint that simply recites actual-malice buzzwords is insufficient to overcome a motion to dismiss because these are merely legal conclusions, which must be backed by well-pled facts"), *quoting Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012).
[21] *See Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015).

refused to engage in response, cannot save Plaintiffs' defamation claims. ECF 62, *passim*. Even denials by the subject of a report, "however vehement," cannot establish actual malice precisely because they "are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."[22] Moreover, any claim that Defendants' online response of his perspective to Plaintiffs' cease-and-desist letter in his online forum constitutes evidence of actual malice is incorrect. "[R]eporting perspectives at odds with the publisher's own, tends to rebut a claim of malice, not to establish one."[23]

Any claim by Plaintiffs, ECF 62, *passim*, that Defendants relied on uncorroborated unnamed confidential sources, constituted actual malice (*e.g.*, by failing to establish the credibility of those sources), is, as a matter of law, incorrect and cannot save Plaintiffs' complaint. Even if accepted as true, these conclusory allegations do not allege facts that Defendants published their content with knowledge of falsity or with a high degree of awareness of probable falsity. "The law is clear [that Defendants] ha[ve] no independent duty to investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy of the story." *Stern v. Cosby*, 645 F. Supp. 2d 258, 284 (S.D.N.Y. 2009). Moreover, "reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice." *Cabello-Rondon v. Dow Jones & Co.,* 720 F. App'x 87, 89 (2d Cir. 2018) (citing *Biro,* 807 F.3d at 546). Thus, absence of corroboration or investigation does not lead to a finding of adequately pled malice.

Finally, any claim that commentary on Lanasa's political leanings does not make a claim for malice as Plaintiffs have plead no *facts* to support the notion that Defendants were biased and that bias

---

[22] *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 691 n.37 (1989); *see Anderson v. Rocky Mountain News,* 1988 U.S. App. LEXIS 19304, at *6-7 (l0th Cir. July 7, 1988) ("mere rejection of plaintiff's version of events, standing alone" is insufficient to show actual malice).

[23] *Lohrenz v. Donnelly,* 350 F.3d 1272, 1286 (D.C. Cir. 2003) (internal marks omitted); *see also Contemporary Mission v. NY. Times Co.,* 665 F. Supp. 248, 270 (S.D.N.Y. 1987) (no actual malice where the defendant "made an attempt to report plaintiffs' side of the story"), *aff'd,* 842 F.2d 612 (2d Cir. 1988).

caused them to knowingly publish falsehoods. *Palin* v. *New York Times Co.,* 940 F.3d 804, 814 (2d Cir. 2019) (affirming general political bias or opposition does not constitute evidence of actual malice). Palin's complaint in that case survived early dismissal because the court found she had pleaded facts that, if proven, showed a specific "personal connection" by the author of the challenged statements to certain underlying events, which "animat[ed] his hostility" toward her. *Id.*

Because of those unique facts, the court at the pleading stage credited Palin's allegation that that author "in particular was more likely than the average editor-in-chief to know" that the original publication contained a factual error.[24]  There is no allegation that political leanings and/or any special knowledge show a likelihood of malice and therefore, the defamation claims must fail.

In sum, none of Plaintiffs' allegations would, even if proven, plausibly establish that Defendant knowingly published false and defamatory statements about Lanasa, nor, given the existing public record about Lanasa and his actions, were such statements "so inherently improbable that only a reckless man would have put them in circulation." *St. Amant,* 390 U.S. at 732.  Indeed, even with the third bite at the apple Lanasa is taking with this action, he has again failed to carry his burden to allege a plausible claim of actual malice.  That failure constitutes an independently sufficient basis for dismissal of the Complaint with prejudice.

## V.     POINT V: AS A MATTER OF LAW, THE STATEMENTS CLAIMED BY PLAINTIFFS' TO BE DEFAMATORY  DO NOT HAVE A DEFAMATORY MEANING

Even at the pleading stage, dismissal of the Complaint is required because the content posted by Defendants does not reasonably convey the defamatory meaning Plaintiffs allege and, even if such a meaning were reasonably implied by Defendants' statements, it would constitute non-actionable opinion based on disclosed facts.

---

[24] *Id.*; *see also Brimelow v. NY. Times Co.,* 2021 U.S. App. LEXIS 31672, at *10 (2d Cir. Oct. 21, 2021) (affirming dismissal of complaint that "alleged ill will toward [plaintiffs] harbored by" the defendant "provide[d] no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements regarding plaintiffs").

Defamatory meaning is a threshold question of law for the Court to address in the first instance.[25]  To determine whether a statement is capable of a defamatory meaning, this Court must apply the plain meaning of the statements, reading the challenged publication as a whole and taking into account the context in which the statements were made.[26]  Where a defamatory meaning is not discernible from a reasonable and natural reading of the publication in context, dismissal is required.[27]

None of Defendants' content can be imputed with defamatory meaning. ECF 62 at ¶ 22.  As a starting point, purportedly defamatory statements must actually be set forth in the SAC.  New York law requires that the specific words of the defamation be set forth in order for them to be actionable.[28]

First, all claims need to be summarily dismissed as against the second defendant, "Stiene" or "Rachel Stiene" depending on which document is read. ECF 62; 62-1.  If Erik's wife were the party, dismissal of the defamation claims is required since none of the allegations were actually uttered by a female declarant and thus there is not sufficient specificity to charge a female with defamation on these allegations. CPLR 3016(a); *Hussey, supra*. Plaintiffs allege that a female participated in a few statements in the SAC.  ECF 62 at ¶¶ 22, p. 6, l. 22; 22, p. 8, l. 26-30; 22, p. 9, l. 25-36; 92.

The claimed statement made in ¶ 92 was made by Erik.  This can be confirmed by following the link, which should be considered by the Court without converting this case to a motion for

---

[25] *James v. Gannett Co.,* 40 N.Y.2d 415, 419 (1976) ("it is for the court to decide whether the words are susceptible of the meaning ascribed to them"); *Greenberg v. Spitzer,* 155 A.D.3d 27, 45 (2nd Dept. 2017) ("[t]he issue of whether particular words are defamatory presents a legal issue to be resolved by the court" (citations omitted)). New York law governs this action. Under choice-of-law rules, the law of the state with the "more significant relationship to the case" applies. *Kinsey,* 991 F.3d at 177. In multistate defamation cases, where an allegedly defamatory publication is distributed beyond the jurisdiction where the plaintiff resides, courts consider "'where [the] plaintiff suffered the greatest injury; where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply.'" *Id.* These factors favor application of New York law. Defendants are domiciled in New York. The content was published in New York and "emanated" from New York. And, as courts have recognized, "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.* at 178. As Plaintiffs brought this action in New York, there is no comparably significant connection to any other jurisdiction. *Id.* (factors favored application of New York libel law rather than law where plaintiff lived or worked).
[26] *Brian v. Richardson,* 87 N.Y.2d 46, 50-51 (1995); *James,* 40 N.Y.2d at 419-20.
[27] *James,* 40 N.Y.2d at 420.
[28] CPLR 3016(a); *see also Hussey v. N.Y. State Dep't of Law,* 933 F. Supp. 2d 399, 414 (E.D.N.Y. 2013); *Manas v. VMS Assoc., LLC,* 53 A.D.3d 451, 454 (1st Dept. 2008); *Dazzo v. Meyers,* 83 A.D.2d 14, 22 (2d Dept. 1981).

summary judgment.[29]  The content of the links qualifies as documents incorporated by reference into the SAC.  When reviewing this link, Rachel's only contribution is to say that neither she nor Erik would publicize such information.  In failing to provide the whole context, Plaintiffs suggested Erik did or was going to disclose personal information when the actual clip is conclusive of the opposite. Therefore, this is not actionable against Erik or anyone else for any purpose.[30]

The statements claimed from November 27, 2022, ECF 62 at p. 9, l. 27-36, do not outline the specific words of any of Erik, and/or anyone else, other than "time to get a bottle of Jack" and therefore, they are not actionable.  *Hussey, supra.*  The link demonstrates that the single blurb is said by Erik, not Rachel, and therefore it is not actionable against her.  It is not actionable against Erik since it does not make a statement of fact required for defamation.[31]  Moreover, there is insufficient context and there is no indication that Erik is suggesting alcoholism of anyone.

A review of the timestamp from December 17, 2022, ECF 62 at p. 9, l. 23-26, there is no discernable statement that tracks these allegations.  As no specific words are referenced, this is not an actionable claim as against Erik, or even Rachel.  *Hussey, supra.*

The statement, "[Erik's] wife just told you that she would grow a c*ck so [Lanasa] could eat that c*ck", *id.* at ¶ 22, p. 8, l. 29-30, is clearly not a statement made by Rachel.  A review of that link confirms that it was made by Erik.  For this reason, the claim against Rachel must be dismissed. Moreover, it is not a statement of fact required for a defamation claim. It is insult and not actionable.[32]

Similarly, "they are scraping the bottom of the privy, okay, you can't get more shit than this shit…" *id.* at ¶ 22, p. 8, l. 38-39, is not remotely factual as a matter of law and is, at best, opinion and

---

[29] *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").
[30] *See Brian,* 87 N.Y.2d at 50-51.
[31] Falsity of the statement is a necessary element of defamation. *See Tannerite Sports, LLC. v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017).
[32] *See Greer v. Fox Corp.*, 2022 U.S. Dist. LEXIS 161617, 20-cv-5484(LTS)(SDA), *20 (S.D.N.Y. Sept. 7, 2022).

insult, which is not actionable. The same is true with respect to, "[Lanasa], aka ignorant c*nt, aka Justin I f*ck ignorant c*cks; we know this is Justin." *Id.* at ¶ 22, p. 8, l.  6-7.  It is not a misrepresentation.

The final statement invoking the non-Erik defendant, the claim from January 8, 2022, calling Lanasa "inadvertently honest," ECF 62 at ¶ 22, p. 6, l. 23-24 is stated by Erik and therefore is not actionable against Rachel.  It is also not actionable against Erik as it is not defamatory when taken in with the context of the entire YouTube video.  It is simply an insult statement that is not actionable.[33] Moreover, Plaintiffs' cherry-picked sound-bites are insufficient to claim defamation because the entire recording needs to be considered. *See Brian,* 87 N.Y.2d at 50-51. Finally, an "accusation [that] is merely a personal surmise built upon those facts…[is] not actionable."[34]

None of the rest of the specific comments in the SAC are actionable. ECF 62 at ¶ 22. "Rhetorical hyperbole", "vulgar name calling," and "generalized insults," *e.g.*, references to a Nazi in Lanasa's company and being "kicked out of the military for lack of leadership potential," are, at most, hyperbole—certainly not a litmus in the military—and thus, not actionable as defamatory.[35]

Even if his claimed implications could be credited, where a libel plaintiff's claim rests on implications, rather than actual defamatory falsehoods allegedly stated within a publication, a heightened standard applies to that claim. Specifically, the "'language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.'"[36] Plaintiffs do not even allege such an endorsement.

In addition to the fact that Rachel has never been summoned, ECF 7 and 23, and that her continued existence constitutes an addition to the SAC in violation of the Court's January 9, 2024

---

[33] *See Chau v. Lewis,* 771 F.3d 118, 127 (2d Cir. 2014) ("Not all (or even most) maligning remarks can be considered defamatory."); *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 379-81 (1977) (citations omitted) (false statement is defamatory only if it exposes plaintiff to disgrace or "induce[s] an evil opinion").

[34] *Gross v. NY. Times Co.,* 82 N.Y.2d 146, 155 (1993)

[35] *See Friedman v. Bloomberg L.P.,* 884 F.3d 83, 96 (2d Cir. 2017); *Greer,* 2022 U.S. Dist. LEXIS 161617, 20-cv-5484(LTS)(SDA), *20.

[36] *Stepanov v. Dow Jones & Co., Inc.,* 120 A.D.3d 28, 37 (1st Dep't 2014) (quoting *Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir. 1993)).

order, as there is no statement imputable to Rachel, Plaintiffs' SAC is not actionable as against her and must be dismissed. As none of the statements are actionable, the SAC must similarly be dismissed as against Erik. Moreover, there are no statements directed at the LLC plaintiffs and therefore, they cannot maintain these defamation claims as against any of these Defendants.

Moreover, many of the above and the remaining statements identified by Plaintiffs are, as a matter of law, opinion and not actionable. Under both federal and New York law, "[o]pinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions." *Rinaldi,* 42 N.Y.2d at 380-81. Because the First Amendment allows only provably false statements to be potentially actionable as defamation, subjective characterizations and opinions cannot give rise to a valid claim.[37] When a statement is not "capable of being proven true or false" and/or lacks "a precise meaning which is readily understood," *Davis v. Boeheim,* 24 N.Y.3d 262, 269-70 (2014), it is classic opinion. Trash-talk characterizations such as Lanasa being "inadvertently honest, I don't think that was [his] intention," and "the new artist got paid for it, but Greg Bell did not," and "wasn't a not for profit, was for profit," ECF 62 at ¶ 22, p. 6, l. 22- p. 7, l. 12, are precisely the kind of indefinite and imprecise words which lack context, that courts have deemed protected opinion.[38]

In addition to pure opinion, when the factual basis for a conclusion is apparent to consumers of content (or, as is the case here, the basis for raising allegedly defamatory questions is apparent), those statements/questions are protected as opinions based on disclosed fact.[39] For example, Erik's statement is cited, that Lanasa "does not like homos and their type; will not work with folks that

---

[37] *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19-20 (1990) (a statement "must be provable as false before there can be liability under state defamation law.").

[38] *Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 284 (1974) ("words like 'traitor' cannot be construed as representations of fact"); *McClure v. Am. Family Mut. Ins. Co.,* 223 F.3d 845, 853 (8th Cir. 2000) (statements that plaintiffs "had engaged in 'disloyal and disruptive activity'" and were "'acting against the best interests'" of the public were non-actionable opinion).

[39] *Levin v. McPhee,* 119 F.3d 189, 197 (2d Cir. 1977) (statements maybe actionable if they imply speaker's opinion is based on knowledge of facts not disclosed to the reader but "if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"); *Boeheim,* 24 N.Y.3d at 269 (same).

support them" and "[Lanasa] thinks he's some kind of warrior for the old ways; you know racism, gay

bashing, women in the kitchen." ECF 62 at ¶ 22, p. 7, l. 20-21. In addition to being unactionable insult,

*Greer*, *supra*, these are prime examples where these are conclusions based upon freely available facts,

*see* note 45 below, and therefore constitute opinion as a matter of law.

As one federal judge summarized the principle: "If the Constitution protects an author's right

to draw an explicit conclusion from fully disclosed facts, then an unstated inference that may arise in

a reader's mind after reading such facts is also protected as an implicit expression of the author's

opinion."[40]  For these same reasons, the challenged portions of the content do not reasonably convey

to readers an actionably defamatory statement or implication.

## VI.    POINT VI: ACCUSATIONS OF DOXING AND CRIMINALITY AND ALL OTHER STATEMENTS ARE NOT ACTIONABLE AND TRUTH IS A COMPLETE DEFENSE TO ALL REPRESENTATIONS OF FACT.

"New York courts have extended the 'fair and true' reporting privilege to...publications of all

kinds, including tweets."[41]

> Courts must examine the challenged statements "with a view toward (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication . . . [or] the surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 153 (cleaned up); *see Brian v. Richardson*, 87 N.Y.2d 46, 51, 660 N.E.2d 1126, 637 N.Y.S.2d 347 (1995).

*Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-cv, 2022 U.S. App. LEXIS 9086, at *6 (2d Cir.

Apr. 5, 2022).

Here, the first two *Daleiden* factors alone confirm the statements upon which the SAC is based

are incapable of surviving a motion to dismiss.  In sum, the statements Plaintiffs take issue with are

---

[40] *Biro,* 883 F. Supp. 2d at 468; *see also Gross,* 82 N.Y.2d at 155 ("accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear ... the accusation is merely a personal surmise built upon those facts").
[41] *Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 U.S. App. LEXIS 9086, No. 21-cv-2068, *3 (2d Cir. Apr. 5, 2022), citing *Highland Capital Mgt., L.P. v. Dow Jones & Co., Inc.*, 178 A.D.3d 572, 116 N.Y.S.3d 18, 19 (1st Dep't 2019).

boilerplate internet trash talk that would cause courts to grind to a halt if they actually constituted actionable conduct.

Despite the Court on January 6, 2023 informing Plaintiffs' counsel that the January 8, January 9, February 18, and March 17, 2022 statements referenced in the original complaint did not appear to be defamatory (to the extent they can even be understood or connected to any Plaintiff), specifically advising Plaintiffs to be "more selective," and informing Plaintiffs' counsel that calling an unspecified individual a name like "jackass" is not defamatory, not a single of those allegations, with the exception of those relating to Lanasa's criminal conviction, was removed from the SAC. Worse the FAC, then the SAC added additional statements that are obviously not actionable, *e.g.*, an apparent assertion by Stiene "that Plaintiff has used anonymous emails" ECF 62 at ¶ 22.

The SAC once again directs the Court to watch hours of YouTube videos and search for anything resembling (nonexistent) actionable statements.  The remarks that are actually mentioned in the SAC are not actionable.  Specifically, for the same reasons set forth above, all of these lack sufficient context to even be adequately interpreted and, in any event, are not defamatory.

With respect to the statements which are not mentioned above, they too are not actionable. With respect to the various claims with respect to Lanasa's biases, *e.g.*, "does not like homos and their type" and "thinks he's some kind of warrior for the old ways; you know racism, gay bashing, women in the kitchen,"[42] These are not actionable based upon context, insult, truth, opinion and comments with factual basis based upon Lanasa's published manuscript.  The same is true with respect to that Lanasa "included a Nazi in the company."  To the extent "the company" even refers to a Plaintiff, we

---

[42] Plaintiffs' own manuscript reminds readers that there can be "no trans races" no less than four times. TSR, LLC's "STAR FRONTIERS – NEW GENESIS CORE RULES" manuscript at 52, 57, 61, 68 of 229.  See also id. at 41 ("female[s] can increase their score artificially with the use of cosmetics. Put on some eyeliner!"), 52 ("GENDER: Male / Female ONLY in the galaxy there are no trans races"), and 65 (describing it as a game in which characters "will kill any of their kind who claim to not be the two normal races"). *See, e.g., ECF 32 pp. 58-60 of TSR LLC v. Wizards of the Coast LLC,* 21-cv-1705(SKV) (W.D. Wash Sept. 8, 2022).

note by way of example that Dave Johnson, who is professionally connected to Lanasa and/or TSR LLC, is, with Lanasa, a named author and editor of Plaintiffs' racist 229-page manuscript repeatedly cited herein.  Although nothing further than the manuscript quotes included herein, which we expect to remain uncontested, are needed to establish Mr. Johnson's reprehensible white supremacist and pro-Nazi disposition and/or close connection to Plaintiffs as a matter of law, out of an abundance of caution, we note the truly remarkable volume of publicly available coverage of Mr. Johnson's vile conduct.[43]  Therefore, such comments are rooted in factual background such that it is, as a matter of law, at least opinion.

It is also true with respect to the statement, Plaintiff "f*cked over your prior business partners to get the TSR trademark." This is opinion and/or mere discussion of events covered by various journalists,[44] not a misstatement of fact and is not actionable.

The following are not statements of fact are not actionable: that Lanasa was "kicked out of the military for lack of leadership potential"; "jackass comes to my house; I hope they like lead"; claims that Lanasa is "Trying to dox My Wife Rachel;" a vague passing reference to Lanasa's unspecified "criminal conduct," claiming it was "hurtful" and constitutes defamation per se; allegation that Erik "describe[ed] Plaintiff TSR's customers in a defamatory…manner" (a non sequitur with no cognizable nexus to any Party in this case). ECF 62 at ¶¶ 22, 28, 47, 59. They do not relate to a party in this case, all fall in the category of insult, opinion or content that is otherwise not actionable.

With respect to the sufficiency of defamation *per se*, based upon criminal conduct, it is dismissible because it is true. Plaintiffs removed some allegations with respect to this topic, *id.* at ¶¶

---

[43] https://cohost.org/people-vs-tsr/post/697260-absolute-space-at (*cohost! - "Absolute Space - at nuTSR game by the known Nazi*); https://www.geeknative.com/142136/drivethrurpg-suspends-game-designer-linked-to-the-nazi-filth/ (*DriveThruRPG suspends game designer linked to the Nazi filth*); https://www.therpgsite.com/pen-paper-roleplaying-games-rpgs-discussion/more-trouble-for-nu-tsr-now-with-more-nazis!/ (*New troubles for nu-TSR, now with more nazis! – TheRPGSite*); https://www.nohateingaming.com/ (*No Hate in Gaming: Home*, archiving copies of material posted by Mr. Johnson, including swastikas and reprehensible language we are not even comfortable quoting).
[44] *See, e.g.,   Has   the   CEO,   Justin   LaNasa,   Of   TSR   LLC   Committed   Fraud?* https://www.youtube.com/watch?v=5_9N5j9bWAQ

22, 40, 59,[45] but left others. *Id.* at ¶¶ 28, 47.  Lanasa seems to concede that he is a convicted criminal. "[T]ruth provides a complete defense to defamation claims."[46]  The purported accuracy of the SAC is verified by Lanasa's own, for a third time,  sworn and notarized statement (ECF 62 at p. 34), and in contrast to his own concessions, allegations regarding criminal conduct remain in the SAC (ECF 62 at ¶¶ 28, 49). Plaintiffs' abandonment of certain allegations should constitute an abandonment of those that remain since Lanasa now acknowledges his past conviction. However, the remaining allegations, verified by Plaintiffs are dismissible with prejudice on the ground of truth.

## VII.   POINT VII: PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

It is black letter law that a claim for intentional infliction of emotional distress arising out of the same conduct as for a defamation claim is duplicative and cannot survive.[47]  In this case, there can be no doubt that the same conduct is alleged as the foundation for Plaintiffs' IIED and defamation claims, and accordingly, Plaintiffs' IIED claim must be dismissed as duplicative.

Substantively, it is also subject to dismissal. "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress."[48]  "The subject conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Furthermore, conclusory assertions are insufficient to set forth a cause of action sounding in the intentional infliction of emotional distress." *Id.* at 711.

---

[45] ¶ 59 of the redline version reflects that criminal conduct remains, but it was removed in the clean version. ECF 62 and 62-1 at ¶ 59. This constitutes another difference between the redline and clean.
[46] *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 Fed. Appx. 8, 11 (2d Cir. 2018); *Printers II, Inc. v. Professionals Pub., Inc.*, 784 F.2d 141, 146 (2d Cir. 1986).
[47] *See Brancaleone v. Mesagna*, 290 A.D.2d 467, 468 (2d Dept. 2002).
[48] *Klein v. Metropolitan Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dept. 2012).

In *Klein*, the Court dismissed the case because "the cause of action alleging intentional infliction of emotional distress states little more than the conclusion that "[plaintiff] suffered extreme and grievous mental distress [as a result of] the extreme and outrageous behavior of the defendants." *Id.* Plaintiffs' complaint should be dismissed for the same reason.  The complaint contains only a conclusory claim that emotional distress was suffered. ECF 62 at ¶ 58. Moreover, fact-free claims that the conduct complained of was extreme or outrageous is entirely conclusory (*see, e.g.,* ECF 62 at ¶ 57) and cannot form the basis of this claim.[49]

In addition, in connection with the various isolated incidents alleging knowledge of Plaintiffs address and a posting of Lanasa's wife's public online thumbnail, ECF 62 at ¶¶ 55-56, "such conduct [is] not so outrageous in character, and so extreme in degree as to qualify as intentional infliction of emotional distress." *Klein*, 100 A.D.3d at 711. Repeated and continuous course of conduct, not single instances, is what could allow the conduct to rise to the level of outrageous. *See, e.g., Collins v. Willcox Inc.*, 158 Misc. 2d 54, 57 (Sup. Ct. N.Y.Cty. 1992).  For this reason as well, this claim must be dismissed.

"Defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim."[50]  "Similarly, false accusations of criminal conduct generally do not rise to the level of extreme and outrageous conduct that is necessary to support an IIED claim."[51]  On its face, the claims alleged to support an IIED claim are insufficient and this claim must be dismissed.

---

[49] *See Klein*, 100 A.D.3d at 711; *Goldin*, *54 A.D.3d at 659; see also* ECF 62 ¶ 70, allegations regarding the video Lanasa cites as evidence Erik "posted . . . images of [Lanasa's] wife and minor child" to "threaten" Lanasa, which notably omits any mention of the fact that the only image shown was Plaintiff Lanasa's wife's own public profile picture, which is displayed by default on her public posts directed to Erik, as well as Erik's public responses to such posts.  This example typifies the misleading and frivolous nature of Plaintiffs' claims.

[50] *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 214 (W.D.N.Y. 2013), citing *James v. DeGrandis*, 138 F.Supp.2d 402 (W.D.N.Y. 2001).

[51] *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 214 (W.D.N.Y. 2013), citing *La Duke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dept. 1998), a case in which plaintiff-nurse was terminated after co-workers accused plaintiff of euthanizing a patient, concluding, "even assuming the truth of the allegation that the employees intentionally relayed false information to the hospital, the conduct was not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Id.; see also Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, 2009 U.S. Dist. LEXIS 26301, 07-cv-5441 (DGT)(RML), *8 (E.D.N.Y. Mar. 27, 2009) (Employer falsely informing police that Plaintiff had stolen laptop computers was not sufficiently outrageous to support an IIED claim).

**VIII.    POINT VIII: PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMA FACIE TORTIOUS CONDUCT**

Prima facie tort (the actual name of Plaintiffs' fourth claim) is an amorphous claim which is difficult to prove because it is not intended to be "a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985). Rather, it "affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful." *Id.* at 142.

The requisite elements for a cause of action sounding in prima facie tort are (1) the intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise legal."[52] "The plaintiff [must] allege that disinterested malevolence was the sole motivation for the conduct of which [he or she] complain[s]."[53] Plaintiff has failed to sufficiently allege that disinterested malevolence was the sole motivation for Defendants' content. ECF 62 at ¶¶ 83-94.  In fact, it is not alleged at all, ECF 62, *passim*,  and thus, this claim must fail. Indeed, examples raised by Plaintiffs—links incorporated by reference to the SAC—when looked at in context, were merely insults that are not actionable, accusations based upon facts that are not actionable and a declaration that neither Erik nor Rachel would publicize Lanasa's address.[54] None show the malevolence necessary for this claim and therefore it must be dismissed.  Notably, the SAC, for no known reason, other than harassment and doxing, purports to publish the home addresses of both Erik and Lois, *i.e.*, conduct that is clearly more concerning than Plaintiffs have alleged.

Additionally, "A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." *Freihofer*, 65 N.Y.2d at 143. "Special

---

[52] *AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P.*, 115 A.D.3d 402, 403 (1st Dept. 2014).

[53] *Id.*; *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 N.Y.2d 314, 333 (1983); *Lynch v McQueen*, 309 A.D.2d 790 (2d Dept. 2003); *Landor-St. Gelais v Albany Int'l Corp.*, 307 A.D.2d 671 (3d Dept 2003); *Argush v Town of Yorktown*, 303 A.D.2d 340 (2d Dept 2003).

[54] *See Chau*, 771 F.3d at 127; *Rinaldi*, 42 N.Y.2d at 379-81 (1977); *Brian*, 87 N.Y.2d at 50-51; *Gross.*, 82 N.Y.2d at 155; *Friedman.*, 884 F.3d at 96; *Greer*, 2022 U.S. Dist. LEXIS 161617, 20-cv-5484(LTS)(SDA), *20.

damages contemplate the loss of something having economic or pecuniary value." *Liberman v. Gelstein*, 80 N.Y.2d 429, 434–35 (1992). An example of this would be a documented loss of profits.[55] Black's Law Dictionary defines special damages as: "Damages that are alleged to have been sustained in the circumstances of a particular wrong. To be awardable, special damages must be specifically claimed and proved." *Id.* "Special damages, which are an essential element of…prima facie tort, must be pleaded with sufficient specificity." *DiSanto v. Forsyth*, 258 A.D.2d 497, 498 (2d Dept. 1999). While it is a Federal Rule, consistent with the New York Rule set forth above, Fed. R. Civ. P. 9(g) entitled "Special Damages" requires claimed "item[s] of special damage" to "be specifically stated."

[G]eneral allegations of lost sales from unidentified lost customers are insufficient." *DiSanto*, 258 A.D.2d at 498. Moreover, "The allegation that plaintiff was required to expend large sums of money does not allege special damages for it is of insufficient particularity." *Garland v. Vermilyea*, 88 A.D.2d 1044, 1045, 452 N.Y.S.2d 265, 266 (3d Dept. 1982). "[P]hysical, psychological, or financial demands of defending a lawsuit" are similarly insufficient.[56]

The defendant failed to allege any special damages with any specificity beyond a conclusory claim of "[Plaintiff] has suffered special damages. ECF 62 at ¶ 86-88. *See Goldin v. Engineers Country Club*, 54 A.D.3d 658, 659 (2d Dept. 2008). Generalized amorphous damages are insufficient. *Id.* In *DiSanto*, 258 A.D.2d at 498, a claim of lost sales was still not specific enough. Accordingly, this claim must be dismissed.

## IX. <u>POINT IX: THE SAC SHOULD BE DISMISSED WITH PREJUDICE</u>

Where an SAC fails to address the fundamental defects in an original complaint and the FAC and remains facially deficient, further amendments should be deemed futile and the case should be dismissed with prejudice.[57] Furthermore, where the Court provides a warning of consequence

---

[55] *Wolf St. Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 32 (4th Dept. 1985).
[56] *Del Vecchio v. Nelson*, 300 A.D.2d 277, 278 (2d Dept. 2002).
[57] *See Black v. Ganieva*, 2023 U.S. App. LEXIS 5087, *5 (2d. Cir. 2023).

regarding the opportunity to replead, and Plaintiffs disregard it, dismissal with prejudice is warranted. *Id.* Finally, in light of the very narrow permission to replead on January 9, 2024, which Plaintiff violated by adding a party, no further chances should be given by this Court.

In this case, the Court did advise Plaintiff that there would be consequences should the FAC also be facially deficient at the January 6, 2023 conference. Moreover, instead of heeding the Court's words, Plaintiffs' doubled down on their claims regarding conduct that is not actionable, and instead of focusing, broadened their allegations. The result was continued facial insufficiency. ECF 20. Still, the Court gave Plaintiffs an additional chance to replead by removing allegations, and they took advantage of it by attempting to add a party without a summons. ECF 62. Therefore, the SAC should be dismissed with prejudice as futile. *Id.* at *7.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests this Court enter an order dismissing this action in its entirety with prejudice and an award of all reasonable fees and costs, including attorneys' fees, to Defendants.

Dated: New York, New York
        January 23, 2024

By:

Daniel J. Schneider
Robert B. Lower
EDNY Bar: DS7366
Farber Schneider Ferrari LLP
*Attorneys for Defendants*
261 Madison Ave, 26th Floor
New York, New York 10016
(212) 972-7040
rlower@fsfllp.com/dschneider@fsfllp.com

30