# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN LANASA, TSR, LLC and | : |
| DUNGEON HOBBY SHOP MUSEUM, LLC, | : Case No.: 1:22-cv-05686(KAM)(VMS) |
| | : |
| Plaintiffs, | : |
| | : |
| -versus- | : |
| | : ORAL ARGUMENT REQUESTED |
| ERIK STIENE, and LOIS STIENE, aka RACHEL | : |
| STIENE, | : |
| Jointly and Severally, | : |
| | : |
| Defendants. | : |
| | : |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND IN
## RESPONSE TO PLAINTIFFS' OPPOSITION

Farber Schneider Ferrari LLP
By: Daniel J. Schneider
EDNY Bar: DS7366
Attorneys for Defendant(s)
261 Madison Ave, 26th Floor
New York, New York 10016
(212) 972-7040
dschneider@fsfllp.com

Of Counsel:
        Daniel J. Schneider

# Table of Contents

I. PRELIMINARY STATEMENT ................................................................... 1

II. PLAINTIFFS HAVE NOT SATISFIED THE 28 U.S.C. § 1332 JURISDICTIONAL LIMIT ........................................................................................................ 1

III. THE SAC DOES NOT COMPLY WITH THE COURT'S ORDER ......................... 4

IV. RACHEL STIENE IS NOT A PROPERLY NAMED DEFENDANT ...................... 5

V. ANTI-SLAPP REQUIRES DISMISSAL AND ATTORNEYS' FEES TO DEFENDANTS .......................................................................................... 6

VI. PLAINTIFF'S OPPOSITION DOES NOT SHOW ANY ACTIONABLE STATEMENTS ........................................................................................... 9

    A. *Plaintiffs Have Abandoned their Defense Claiming that Several of the Alleged Statements are Defamatory* .............................................................. 9

    B. *Speakers other Than Erik* ...................................................................... 11

    C. *There are No Statements about Either LLC Plaintiff* ............................. 12

    D. *"Inadvertently Honest" is a Claim of Honesty and not Actionable* ......... 12

    E. *Allegations of "Racism" and "Homophobia are not Actionable and The "Manuscript" Is Conclusive of Truth or at Least, the Absence of Malice and thus Precludes Defamation* ....................................................................... 12

    F. *Any reference to Naziism by Defendant(s) Alleged in the SAC is not Actionable* ......... 14

    G. *Doxing Does Not Constitute Defamation* ............................................. 15

VII. IIED AND PRIMA FACIE TORT MUST BE DISMISSED ......................... 15

VIII. CONCLUSION ...................................................................................... 16

## CASES

*Allen v. Meyers*, 2011 WL 721648 (S.D.N.Y. Feb. 24, 2011) ....................................................... 15, 16

*Baker v. Health Mgmt. Sys.,* 264 F.3d 144, 152 (2d Cir. 2001)……………………….……........……1

*Biro v. Condé Nast,* 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015)…………………………………..……..……………7

*Borzellieri v Daily News, LP,* 975 N.Y.S.2d 365, 2013 NY Slip Op 50624[U] [Sup Ct, Queens County 2013] ...................................................................................................................................... 14

*Brian v. Richardson,* 87 N.Y.2d 46, 50-51 (1995)……………………………………...……………8

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712 (1983) .............. 15

*Calloway v. Marvel Entertainment Group,* 854 F.2d 1452 (2d Cir. 1988)............................................... 16

*Carrol v. Trump,* 22-cv-10016(LAK) (S.D.N.Y.)……………………..……………………………3, 7

*Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021)………………………………………9

*Collins v. Waters,* 2021 Cal. Super. LEXIS 35732.............................................................................. 11

*Cummings v. City of N.Y.*, No. 19-cv-7723, 2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. Feb. 24, 2020) . 13

*Doe v. Syracuse Univ.*, 468 F. Supp. 3d 489 (N.D.N.Y. 2020)............................................................. 13

*Dunn v. Gannett N.Y. Newspapers, Inc.*, 833 F.2d 446 (3d Cir. 1987) .................................................. 14

*E.L.A. v. Abbott House*, 2018 U.S. Dist. LEXIS 52313, *11 (S.D.N.Y. 2018)………………………..5

*Feitosa v. Keem*, 22-cv-3775, 2023 U.S. Dist. Lexis 33291 (Feb. 28, 2023)……………………………3

*Freeman v. Great Lakes Energy Partners,* 144 F. Supp. 2d 201, 208 (W.D.N.Y. 2001)……..………....2

*Giraldo v. Kessler*, 694 F.3d 161 (2d Cir. 2012) ............................................................................ 7, 12

*Goetz v. Kunstler*, 625 N.Y.S.2d 447 (Sup. Ct. N.Y. Cty. 1995)......................................................... 13

*Harris v. Am. Accounting Ass'n*, No. 22-811, 2023 U.S. App. LEXIS 8204 (2d Cir. Apr. 6, 2023) ........ 9

*Harris v. Am. Accounting Ass'n*, No. 5:20-cv-01057 (N.D.N.Y. 2021)................................................... 9

*Holy Spirit Assn. for Unification of World Christianity v Harper & Roe, Publs.*, 101 Misc 2d 30, 420 N.Y.S.2d 56 [Sup Ct, NY County 1979]) ............................................................... 14

*Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989)…..…………………..……1

*Hunt v. Sharp,* 85 N.Y.2d 883, 885 (1995)……………………………………………..………………..1

*James v. Gannett Co.,* 40 N.Y.2d 415, 419-420 (1976)…………………………….……………...8

*Jordan v. Playtex Family Prods.*, No. 96-7431, 1997 U.S. App. LEXIS 13821 (2d Cir. June 12, 1997) .. 11

*Kesner v. Jones*, 2023 U.S. App. LEXIS 15255, *5 (2d Cir. 2023)…………………..…………….7, 8

*Kimm v. KCC Trading, Inc.*, 449 F. App'x 85 (2d Cir. 2012) .......................................................... 1,2

*Klein v. Metropolitan Child Servs., Inc.*, 100 A.D.3d 708 (2d Dept. 2012)........................................ 15, 16

*Koch v. Goldway*, 817 F.2d 507 (9th Cir. 1987) ................................................................... 14

*Kuehne & Nagel, Inc. v. Baiden,* 36 N.Y.2d 539, 544 (1975)…………………………….……………10

*Lester v. Powers*, 596 A.2d 65 (Me. 1991) ..................................................................... 14

*Maitland v. Lunn*, No. 14-cv-5938, 2017 U.S. Dist. LEXIS 40467 (E.D.N.Y. Mar. 21, 2017) ............ 4

*Martin v. Dobson*, No. 3:09–cv–208, 2010 U.S. Dist. LEXIS 16607 (S.D.Ohio Feb. 5, 2010)............ 11

*McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145 (D.D.C. 2014)........................................... 13

*Morgan v. NYP Holdings, Inc.*, 2017 NY Slip Op 51907(U), 93 N.Y.S.3d 627 (Sup. Ct.) ................... 14

*Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)……………....……8

*Nolan v. Cuomo*, 2013 U.S. Dist. LEXIS 6680, *37-38 (E.D.N.Y. 2013)……………………....…...…5

*Obos v. Scripps Psychological Assocs.*, 59 Cal. App. 4th 103, 69 Cal. Rptr. 2d 30 (1997) ...................... 11

*Palin v. NY. Times Co.*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) ........................................... 1, 9

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ..................................................... 7

*Parker v. Riggio*, No. 10-cv-9504, 2012 U.S. Dist. LEXIS 110653 (S.D.N.Y. Aug. 6, 2012)................ 4

*Pendergrass-Walker v. Guy M. Turner, Inc.*, 16-cv-5630, 2017 U.S. Dist. LEXIS 95444, at 13 (E.D. Pa. June 21, 2017)…………....………………………………..…………………………….....…2

*Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 494 F.Supp 505 (S.D.N.Y. 1980)………………………8

*Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986) ........................................................ 11

*Ramgoolie v. Ramgoolie,* 16-cv-3345(VEC)(SN), 2018 U.S. Dist. LEXIS 152156...........................10

*Reilly v. WNEP*, 251 A.3d 1241 (Pa. Super. Ct. 2021)........................................................ 14

*Russell v. Davies*, 97 A.D.3d 649 (2d Dep't 2012) .......................................................... 13

*Sandals Resorts Intl. Ltd., v. Google, Inc.,* 86 A.D.3d 32 (1st Dept 2011)............................................ 13

*Scherer v. Equitable Life Assur. Soc'y of the United States,* 347 F.3d 394, 397 (2d Cir. 2003)..............1, 2

*Schumacher v. Argosy Educ. Grp., Inc.*, No. 05-531, 2006 U.S. Dist. LEXIS 88608 (D. Minn. Dec. 6, 2006)........................................................................................................... 14

*Schwartz v Nordstrom, Inc.*, 553 N.Y.S.2d 684 [1st Dept 1990], *appeal dismissed,* 76 N.Y.2d 845, 559 N.E.2d 1288, 560 N.Y.S.2d 129 [1990], *appeal denied,* 76 N.Y.2d 711, 564 N.E.2d 672, 563 N.Y.S.2d 62 [1990] ................................................................................................. 14

*Stein v. Northern Assur. Co.,* 09-cv-1029 (TCP)(AKT), 2011 U.S. Dist. LEXIS 50551, *19 (E.D.N.Y. 2011)......................................................................................................................1, 2

*Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)...............................2

*Trapanotto v. Aetna Life Ins. Co.-Aetna Health Plans,* 1996 U.S. Dist. LEXIS 10458, *34  (S.D.N.Y. 1996)...............................................................................................................2

*TSR, LLC v. Wizards of the Coast*, 21-cv-1705 (W.D. Wash)...................................7, 11

*Vail v. Plain Dealer Publishing Co.*, 649 N.E.2d 182 (Ohio 1995) ...................................... 14

*Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850 (E.D. Mich. 2019) ........................................... 15

*Wanamaker v VHA, Inc.*, 797 N.Y.S.2d 672 (4th Dept 2005).......................................... 14

*Waterson v. Cleveland State Univ.*, 639 N.E.2d 1236 (Ohio Ct. App. 1994) ......................................... 14

*Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532 (2d Cir. 2020) ...................................... 7

*Wojtczak v. Safeco Prop. Cas. Ins. Co.,* 669 F.Supp. 2d 305 (W.D.N.Y 2009)...................................4

*Woods v. Town of Tonawanda*, 2020 U.S. Dist. LEXIS 61948, *48 (W.D.N.Y. 2020).........................5

## STATUTES

28 U.S.C. § 1332 ................................................................................................................1,2

Fed. R. Civ. P. 11 ..............................................................................................................16

Fed. R. Civ. P. 12(b) ...........................................................................................................1

Fed. R. Civ. P. 12(b)(1) ......................................................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................................................7

N.Y. Civ. Rights L. § 70-a ...............................................................................................1, 9

N.Y. Civ. Rights L. § 76-a ...............................................................................................1, 9

N.Y. Civ. Rights L. § 76-a(d) ...........................................................................................6

## OTHER AUTHORITIES

Merriam Webster's Dictionary ............................................................................................7

## CONSTITUTIONAL PROVISIONS

First Amendment ............................................................................................................9, 11

## I.     PRELIMINARY STATEMENT

Defendant Erik Stiene ("Erik") and to the extent she is a party, Rachel Stiene ("Rachel") (collectively, "Defendants"), respectfully submit this memorandum of law in further support of their motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), ECF 62, with prejudice pursuant to Fed. R. Civ. P. 12(b) and New York's anti-SLAPP statutes.[1]  Plaintiffs' Opposition actually bolsters Defendants' Motion. Since the substantive aspects of anti-SLAPP apply in Federal Court[2] (N.Y. Civ. Rights L. ("CRL") §§ 70-a and 76-a), even under the non-heightened procedural standard under Fed. R. Civ. P. 12(b), the Court must rule in Defendants' favor, including the award of attorneys' fees.

## II.     PLAINTIFFS HAVE NOT SATISFIED THE 28 U.S.C. § 1332 JURISDICTIONAL LIMIT

Plaintiff's own declaration (the "Lanasa Dec."), dated January 30, 2024, annexed to Plaintiffs' opposition, is conclusive that he does not have damages sufficient to exceed the jurisdictional limit as required by 28 U.S.C. § 1332. Lanasa's own admissions establish "a legal certainty that the amount recoverable does not meet the jurisdictional threshold." Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003). Lanasa Dec. at ¶¶ 6 and 8.

In his declaration annexed to this opposition (the page after the end of his memorandum of law), he estimates his total damages to be $160,000, but his attorneys fees related to this action to be $135,000. Id.; see also SAC ¶ 36. This leaves only $25,000 of damages related to non-attorney's fees. However, New York Courts adhere to the American Rule on attorney's fees. See Hunt v. Sharp, 85 N.Y.2d 883, 885 (1995); Baker v. Health Mgmt. Sys., 264 F.3d 144, 152 (2d Cir. 2001). "Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989); see also Kimm v. KCC Trading, Inc., 449 F. App'x 85, 85-86 (2d Cir. 2012); Stein v. Northern Assur. Co., 09-cv-1029

---

[1] Notably, Plaintiffs appear to have abandoned their challenge to the application of anti-SLAPP. ECF 33 at pp. 7-9.
[2] See, e.g., Palin v. NY. Times Co., 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (a "federal court sitting in diversity must apply § 76-a because it is a substantive").

(TCP)(AKT), 2011 U.S. Dist. LEXIS 50551, *19 (E.D.N.Y. 2011). Therefore, they cannot count toward the jurisdictional threshold under 28 U.S.C. §1332. With that gone, all that remains is $25,000, well below the jurisdictional limit. Therefore, the case must be dismissed under Fed. R. Civ. P. 12(b)(1).

Even if fees were potentially recoverable, nothing changes at this stage. "[Plaintiffs] cannot rely on a potential award of attorneys' fees[3] to show a reasonable probability that the jurisdictional minimum has been met." Freeman v. Great Lakes Energy Partners, 144 F. Supp. 2d 201, 208 (W.D.N.Y. 2001); see also Trapanotto v. Aetna Life Ins. Co.-Aetna Health Plans, 1996 U.S. Dist. LEXIS 10458, *34 (S.D.N.Y. 1996). Finally, "[t]he amount in controversy is determined at the time the action is commenced." Tongkook Am. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). Plaintiffs cannot rely on attorneys fees over years of litigation, when the case was commenced on September 23, 2022. ECF 1. Nor can he rely on meetings and conventions in 2023 and 2024 for this purpose. Lanasa Dec. at ¶ 5. Thus, for any of those reasons, Plaintiffs have admitted to having less than $25,000 worth of damages. Id. at ¶¶ 5, 6 and 8. This, for a certainty, is below the legal threshold.

Ignoring this admission, even the $25,000 for meetings and conventions is, at best, speculative. He assigns no value to any "lost business." Id. at ¶ 5. Family counseling cost is quantifiable, but he omits that. Id. at ¶ 7. Accordingly, this self-serving declaration does not specify any actual losses.

Nor does the SAC. Boilerplate allegations added in the First Amended Complaint ("FAC"), ECF 20, and continued in the SAC of "no less than $1,000,000" do not fulfill "plaintiff's burden to prove to a 'reasonable probability' that the amount in controversy exceeds the jurisdictional amount." Scherer, 347 F.3d at 397. "[G]eneral averments in an unverified complaint or response to a motion to dismiss without the support of sworn affidavits or other competent evidence are insufficient to establish jurisdictional facts." Pendergrass-Walker v. Guy M. Turner, Inc., 16-cv-5630, 2017 U.S. Dist. LEXIS 95444, at 13 (E.D. Pa. June 21, 2017). Such general averments do not fulfill their initial burden.

---

[3] "Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract." Kimm v. KCC Trading, Inc., 449 F. App'x at 85-86. There is no basis to argue that they are even potential for Plaintiff. They are certainly not recoverable as of right.

2

Briefly addressing Plaintiffs' arguments in his Point V, Feitosa v. Keem, 22-cv-3775, 2023 U.S. Dist. Lexis 33291 (Feb. 28, 2023) does not apply. Plaintiffs compare their "damage" to that of a YouTuber falsely alleged to have "groomed girls from ages 12-15" in a tweet disseminated to 2.5 million Twitter users that named the plaintiff, enclosed a picture of him, and falsely claimed his "[v]ictims are scared of him & wish to stay anonymous." That tweet prompted widespread reporting characterizing plaintiff as a "pedophile" engaged with "underage girls for sex," prompting "hundreds of harassing and threatening messages" and "death threats." Id. Here, Plaintiffs have alleged no damages of that caliber *or* plausible causal relationship between Plaintiffs' reputation and Defendant(s).

Carrol v. Trump, 22-cv-10016(LAK) (S.D.N.Y.) is also inapplicable. In that case, Defendant moved to dismiss, but did not raise the jurisdictional threshold. Id. at ECF 20 and 21. This issue was not put into controversy. Moreover, like Feitosa, Plaintiffs do not come even close to alleging reputational damage of the same kind. Id. at ECF 1 at ¶¶ 116-135.

The SAC only makes conclusory allegations, *e.g.*, claiming "Plaintiff has had creators, publishers, artists, and customers turn away," SAC ¶¶ 75, without citing a single name, example, or cognizable basis for attributing the foregoing *to Defendants* P's Br. Opp. at pp. 9-10. Plaintiffs claim of "specific instances of losses" in SAC ¶¶ 24 and 75, "which clearly satisfy" Plaintiffs' pleading requirements, P's Br. Opp. at p. 10, is incorrect. SAC ¶ 24 includes *zero*: indication why or when "Geek Nation canceled a tour," allegation that Geek Nation ever agreed to pay Plaintiffs anything, or how much or, an allegation that Geek Nation was even aware "Defendant posted … on YouTube" or "cancelled" as a result of said posting. SAC ¶ 75 claims unidentified "creators, publishers, artists, and customers" vowed "not to work with Plaintiff due to the false statements made by Defendant E. STIENE, *and his followers*." That his followers are invoked eviscerates Erik's responsibility as he is not vicariously liable. Plaintiffs also fail to identify any such statement(s) or identifying any opportunity lost or damage attributable to Erik. They have failed to fulfill their initial burden.

This District has found plaintiffs who have done much more to fulfill this basic requirement nevertheless "failed to allege to a 'reasonable probability' that they suffered damages in excess of $75,000," despite more compelling allegations of damages "in excess of $75,000," specifying, *e.g.*, "$18,050 in property damage and $19,056 in unpaid rent."[4] Here, Plaintiffs have specified *$0* in damages and provided nothing more than a "boilerplate statement that [their] claims satisfy the amount in controversy," which "shed[] no light on the actual amount of damages" or Plaintiffs' capacity to satisfy the requirement.[5] Moreover, the Lanasa Dec. provides legal certainty that the threshold has not been reached. See P's Br. Opp. at p. 11, citing Wojtczak v. Safeco Prop. Cas. Ins. Co., 669 F.Supp. 2d 305 (W.D.N.Y 2009). For these reasons, SAC must fail on this ground alone.

## III. THE SAC DOES NOT COMPLY WITH THE COURT'S ORDER

Plaintiffs are forced to extrapolate and twist the Court's unambiguous order for it to support their claim that they are in compliance with it. The Court granted leave to file the SAC "solely for the purpose of allowing Plaintiffs to remove [] allegations." Docket Order, January 9, 2024. The Court repeated, "the leave to amend is so narrow and only allows Plaintiffs to remove allegations." Id. None of that unmistakable language can be characterized "In other words…[that] the Complaint should be corrected." P's Br. Opp. at p. 5. There was no permission to clarify, only remove. There was no permission to start identifying a person who has not yet been served with a summons. ECF 8 and 23. Plaintiffs have had ample opportunity to sue the correct parties, to do due diligence, and has shown its futility in this continued effort.

Regardless of any Rule 11 violations Plaintiffs now admit to, P's Br. Opp. at p. 6, Plaintiffs were only authorized to remove, not replace. Replace and add is what they did. As discussed in the underlying motion, the redline and the clean version do not match. They camouflaged the existence "Rachel Stiene" or "R. Stiene" in the clean version. ECF 62 at ¶¶ 6 and 7. They do not add "R." or

[4] Maitland v. Lunn, 14-cv-5938(JS)(AKT), 2017 U.S. Dist. LEXIS 40467, at 1 (E.D.N.Y. Mar. 21, 2017).
[5] Parker v. Riggio, 10-cv-9504, 2012 U.S. Dist. LEXIS 110653 at 8 (S.D.N.Y. Aug. 6, 2012).

"Rachel" in the Redline version. ECF 62-1 at ¶¶ 6 and 7. When the word "Lois" was removed, it was simply crossed out. Id. Nothing took its place. Id. It took careful review of the unmarked version to discern the differences and apparently, Plaintiffs are requesting that the Court make the same careful examination. P's Br. Opp. at p. 6. The purpose of the redline is to avoid requiring such scrutiny. Since the substantive changes, the adding of a different name, were not redlined, Defendants stand by their previous characterization that the Court should tolerate. D's Br. Sup. at p. 2.

## IV. RACHEL STIENE IS NOT A PROPERLY NAMED DEFENDANT

Plaintiffs appear to argue that Rachel being represented by counsel equates to her submitting to the personal jurisdiction of this court. Such an argument is without basis. If Plaintiffs' argument were accepted then no litigant could assert a personal jurisdiction defense if counsel is hired as it would be waived by operation of law.

The office of the undersigned represents Rachel, but has not been asked to nor has it been given authority to accept process on her behalf. Indeed, this office was authorized to and did accept service on behalf of Lois Stiene. ECF 24. However, nowhere on that document does it refer to Rachel. Nowhere in this or the prior motion to dismiss, is Rachel admitted to be a party. Moreover, nowhere is there any evidence that just because Lois[6] provided authority to accept service, that Rachel did too.

Fed. R. Civ. P. 4(e)(2)(C) permits service by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Nothing in that rule or in decisional authority necessitates a client to make her attorney an authorized agent. See E.L.A. v. Abbott House, 2018 U.S. Dist. LEXIS 52313, *11 (S.D.N.Y. 2018) (evidence required that an attorney was authorized to accept service to show attempted service of process was sufficient.); Woods v. Town of Tonawanda, 2020 U.S. Dist. LEXIS 61948, *48 (W.D.N.Y. 2020)(attorneys are not necessarily agents for the purpose of service of process); Nolan v. Cuomo, 2013 U.S.

---

[6] The record reflects that Defendants have consistently objected to Lois being dragged into this litigation because she was Erik's mother and irrelevant to this. E.g. ECF 32 at pp. 1, 2, 4, n. 1, 19; ECF 34 at pp. 1, 4, 10, n. 34. Defendants have not asserted that Rachel was a party, though it is clear that none of the statements claimed herein can be attributed to her.

Dist. LEXIS 6680, *37-38 (E.D.N.Y. 2013) (same). It requires authorization be given, it does not just attach by operation of law. Representation by counsel does not equate to the acceptance of service.

Plaintiffs' argument that time for service starts running from the SAC confirms that they are attempting to add a party. Had Rachel been a party previously, then the FAC would have been dismissible as against her 90 days after the January 3, 2023 filing of the FAC for failure to serve a summons. Fed. R. Civ. P. 4(m). The claim of a new deadline must apply to a new party and is conclusive that allegations were added in violation of the Court's order.

Plaintiffs citations in his Point IV relate to *pro se* parties, P's Br. Opp. at pp. 7-8, not non-parties that have never been summoned and have been added when only deletions were permitted. They are nothing short of irrelevant. Nothing in Plaintiffs' actions and/or papers reflect that Rachel is remotely a proper party.

## V.    ANTI-SLAPP REQUIRES DISMISSAL AND ATTORNEYS' FEES TO DEFENDANTS

Plaintiffs' new challenge to anti-SLAPP is on the basis of public interest only. They do not challenge the substantive application any longer. However, Plaintiff's public interest argument, basing it upon the totality of the circumstances, is incorrect. P's Br. Opp. at pp.13-15.  In this context, "Public Interest" is statutory. CRL § 76-a(d) specifically states, "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter."

Plaintiffs do not even argue that the allegations in the SAC are a purely private matter.  It would be impossible to do so, since the allegations related to public statements, made in online shows that reach out to a certain online community for which this is of public interest, SAC at ¶ 16, available even to this Court, as evidenced by all the links referred to in Exhibits "A" and "B" to Plaintiffs opposition, on various public platforms including YouTube and Discord. SAC at ¶¶ 19-22.

Plaintiffs do not even allege that they were purely private. Instead, they cite to cases where "Public Interest" is not statutory to claim that the issues here are too mundane to qualify. P's Br. Opp. at pp.13-15. However, the statute is unambiguous. Public interest is the entire universe that is not

purely private. That this not purely private is admitted in the Complaint, SAC at ¶ 86 (discussing standing in the gaming community, the consumers of Erik's online presence),[7] and evidenced in this case by the existence Plaintiffs' disputes with others in this realm, specifically <u>TSR, LLC v. Wizards of the Coast</u>, 21-cv-1705 (W.D. Wash) (the "Wizards Case"), and the allegations contained therein. On a motion to dismiss here, the Court may and should take judicial notice of the Wizards Case and the documents contained therein.[8] Also, Plaintiffs invoke the Wizards case in its opposition. P's Br. Opp. at n. 11. As relevant here, by alleging that TSR sells merchandise to the online dungeons and dragons community, reflects that this community is one that interacts online and is not intended to be "purely private." 21-cv-1705 ECF 11 at e.g. ¶¶ 34-37. Public interest is to be construed broadly and accordingly, there can be no argument that these shows and these statements were anything other than of the "Public Interest" as the statute defines it.

Application of this standard does not "mean that the tort of libel will, for all practical purposes, disappear." P's Br. Opp. at p.15. It simply acts as a means to prevent cases such as this since it is now black letter law that actual malice must be plausibly plead at this stage.[9] <u>See</u> <u>Kesner v. Jones</u>, 2023 U.S. App. LEXIS 15255, *5 (2d Cir. 2023).[10] As Plaintiffs observe, many libel and slander cases pass muster. <u>See</u> e.g. <u>Carrol v. Trump</u>, 22-cv-10016(LAK) (S.D.N.Y.). This simply is not one of them.

With respect to Plaintiffs' claim that actual malice has been plausibly plead, Defendants rely on Point IV in their underlying brief. Plaintiffs use only buzzwords and conclusory statements to claim reckless disregard for the truth. *Cf.* <u>Biro v. Condé Nast</u>, 963 F. Supp. 2d 255, 279 (S.D.N.Y.

---

[7] This is also admitted in Plaintiffs' opposition. P's Br. Opp. at p. 22 ("all of the published statements were made on Defendants' dedicated internet channel **to the Dungeons and Dragons community**." Not purely private.

[8] <u>See</u> <u>Williams v. N.Y.C. Hous. Auth.</u>, 816 F. App'x 532, 534 (2d Cir 2020) ("The district court did not err in considering [plaintiff's] Article 78 petition and state court decision because they were public records … appropriate for judicial notice" in "motions made pursuant to Rule 12(b)(6)"), quoting <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss"), <u>Giraldo v. Kessler</u>, 694 F.3d 161, 164 (2d Cir. 2012) ("'relevant matters of public record' are susceptible to judicial notice").

[9] As discussed in the underlying motion, a showing of actual malice is required both because Lanasa is a public figure and because this is an anti-SLAPP suit.

[10] This binding precedent conclusively belies Plaintiffs' claim that the actual malice standard is an "absurdity [that] is clearly not what the legislature intended." P's Br. Opp. at p. 15.

2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015). As Plaintiffs state, "the devil is in details," P's Br. Opp. at p. 16, and reading the challenged publication as a whole and taking into account the context in which the statements were made. See Brian v. Richardson, 87 N.Y.2d 46, 50-51 (1995); James v. Gannett Co., 40 N.Y.2d 415, 419-420 (1976). When the links, which are included in and incorporated into the SAC, see Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996), are examined, it exposes the claimed statements as cherry-picked and taken out of context in an attempt to render unactionable statements defamatory. SAC, ECF 62, passim; see also Plaintiff's Exhibit "A" to their opposition. Review of these links show that no Defendant made any representation that was false or with any degree of awareness of probable falsity.

Plaintiffs' evidence of actual malice is the fact that Erik focuses on Lanasa repeatedly in his shows and makes posts to multiple platforms. This misapprehends the law of actual malice. For example, in Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 494 F.Supp 505 (S.D.N.Y. 1980), actual malice arose out of the repetition of the same defamatory statements over and over again. That is not the case here. Plaintiffs attempt to equate the fact that Lanasa is mentioned several times as repetition of the type Perfect Fit discussed. That is factually simply not the case.

Plaintiffs' claim regarding posting pictures of Lanasa's wife and child also cannot constitute actual malice for the purpose of a defamation claim, even if true. P's Br. Opp. at p. 17. They are not statements, false or otherwise, and Lanasa's wife and child are not parties. Id. at p. 18.[11] Claims regarding neo-Nazis and gay-bashing cannot constitute actual malice simply because of Plaintiffs' conclusory say-so. Id. There is no allegation of reckless disregard for any truth. In fact, justification for belief in the truth of these allegations are provided in the underlying motion via Lanasa's public manuscript. D's Br. to dismiss at p. 24. Thus, there's been no plausible pleading of actual malice.

Finally, any argument about Lanasa not being a public figure is irrelevant since the actual malice requirement attaches as a result of this being an anti-SLAPP suit. See Kesner, supra. Still, as

---

[11] In re White, 551 B.R. 814 (S.D. Ohio) deals with malicious conduct, not actual malice where it comes to defamation.

discussed at length in Point IV(A) of D's Br. to dismiss at pp. 13-16, Lanasa is undoubtedly a public figure. Despite Plaintiffs' claim otherwise, Defendants do identify bases including running for office, opinion pieces—specifically cited—and bikini wrestling, etc. D's Br. to dismiss at p. 15, n. 14 and 17.

A "federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision."[12] "[U]pon a demonstration that the action was commenced without a substantial basis in fact and law ... costs and attorney's fees '*shall* be recovered.'"[13] Accordingly, an award of fees and costs to Defendants is appropriate here.

## VI. PLAINTIFF'S OPPOSITION DOES NOT SHOW ANY ACTIONABLE STATEMENTS

Instead of identifying an actionable statement, Plaintiffs continue asking this Court to review more than 90 hyperlinks and hours of YouTube videos for a statement upon which relief could be granted. Reviewing the cherry-picked statements in context would show that these are not actionable and that Plaintiffs have simply provided interpretation of meaning in the SAC that does not match the content. SAC at ¶ 22 (e.g., Plaintiffs incorrectly opine, and seek the Court's acceptance though it has access to the full context, "wasn't a not for profit, was for profit" means that Erik somehow misrepresented the purposes of donations, when the plain meaning does not match that interpretation). It seems that Plaintiffs are banking on the fact that the Court will not do that. Because Plaintiffs failed to identify any actionable statements, for the reasons set forth in the underlying motion, Plaintiffs' claims are ripe for dismissal. D's Br. to dismiss at Points V and VI, pp. 18-26.

### A. Plaintiffs Have Abandoned their Defense Claiming that Several of the Alleged Statements are Defamatory

A comparison of Plaintiffs' current opposition with the opposition filed in connection with the motion to dismiss the FAC, shows that Plaintiffs have abandoned their defense of certain claims in that, where they claimed such statements were defamatory in their prior opposition, they do not do

---

[12] Palin., 510 F. Supp. 3d at 26; Coleman v. Grand, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (same);.
[13] N.Y. Civ. Rights L. § 70-a; Harris v. Am. Accounting Ass'n, No. 5:20-cv-01057 at 13-14 (N.D.N.Y. 2021) (awarding attorneys' fees under § 70-a), Harris v. Am. Accounting Ass'n, No. 22-811, 2023 U.S. App. LEXIS 8204, at 7-8 (2d Cir. Apr. 6, 2023) ("reversing on attorney's fees because statute not in effect when case was brought.").

so now. See P's Br. Opp. at Point VIII, pp. 21-26; ECF 33 at Point VI, pp. 19-25. In the first opposition, Plaintiffs attacks certain claimed statements of Erik as defamatory, that deal with homophobia,[14] racism,[15] criminal history,[16] doxing[17] and military service, which do not appear herein.

With regard to military service, the only allegation that was not stricken from the SAC, but was completely omitted from Plaintiffs' opposition, it appears that Plaintiffs accept Defendant(s) argument that such a statement is not defamatory. In connection with the prior motion, Plaintiffs argued that Erik's uttering the words that Lanasa "was kicked out of the military for lack of leadership potential," ECF 33 at p. 24, was defamatory. On reply in the last motion to dismiss, Erik provided the relevant context that he was reading from a transcript, the words of another, Jack McNaughton. ECF 34 at p.10.

This cherry-picked soundbite exemplifies the need to review the context of every hyperlink provided by Plaintiffs (which the Court may do since they were made a part of the SAC). Here, Plaintiffs lifted one statement and omitted the critical next statement, in which Erik unambiguously states, "*I'm just quoting, I do not know that for sure, I would certainly see how that could be a possibility but I do not know -- again, I am -- I am quoting…*"[18] In apparent acknowledgement of this the fact that this utterance was a citation to another and not an affirmative factual statement of Erik, Plaintiffs appear to concede this statement is not defamatory.[19]

In any event, though it appears to be moot, even had Erik made this statement as if it was his own, it would still not be actionable because it is opinion, or opinion based on fully disclosed facts.

---

[14] As discussed below, homophobia is mentioned in P's Br. Opp. at n.11, but Plaintiffs' specific opposition and reference to specific statements has been removed. See below at Point VI(E) for further discussion.

[15] Same as note 14.

[16] Other than a couple of mentions of criminality, this claim has been removed from the SAC.

[17] Rather than a citation to a particular quote, doxing is addressed briefly in narrative form. P's Br. Opp. at p. 24. See below at Point VI(G) for further discussion.

[18] https://www.youtube.com/watch?v=qkpDy7DJhKw at 15:03–15:25 (last accessed May 4, 2023).

[19] In this circuit, fact not controverted on summary judgment are deemed admitted. See e.g., Ramgoolie v. Ramgoolie, 16-cv-3345(VEC)(SN), 2018 U.S. Dist. LEXIS 152156, *17; Local Civ. R. 56.1(c). In New York, "Facts appearing in the movant's papers which the opposing party does not controvert, may be deemed to be admitted." Kuehne & Nagel, Inc. v. Baiden, 36 N.Y.2d 539, 544 (1975). Accordingly, the Court should deem this lack of opposition as an admission.

See, e.g., <u>Collins v. Waters</u>, 2021 Cal. Super. LEXIS 35732, 10 (falsely, *directly*, and *repeatedly* claiming plaintiff "was dishonorably discharged" was not actionable and dismissed with prejudice).[20] In this Circuit there is precedent that has deemed more offensive statements not actionable.[21] To hold otherwise and allow claims to proceed for off the cuff live reads of this type would chill free speech.

### B. Speakers other Than Erik

The only actual statement in the entire SAC attributable to someone other than Erik now states, with the added amended material, "R. Stiene referring to Plaintiff as an on-line entity which he is not." SAC at ¶ 22, p. 9 (re: December 17, 2022). There are no others. Even if the Court goes through the exercise of reviewing all the hyperlinks incorporated into the Complaint, there are still no others by any others that are arguably false statements of fact. This remaining one, under any definition of defamation does not pass muster. First, Plaintiffs include an individual and two LLC's both of which have online presences, <u>see</u> the Wizards Case, e.g. 21-cv-1705 ECF 11 at e.g. ¶¶ 34-37— are to some extent online entities, and therefore, these claims are objectively true. In addition, there is no allegations as to how such a statement is malicious or otherwise defamatory. SAC, *passim*. CPLR 3016(a) requires the precise words that are defamatory to be plead to maintain a claim. As there are none as to any speaker other than Erik, to the extent that they are in the case, they must be dismissed.

The most direct statement is regarding the TSR trademark. SAC at e.g. ¶ 45. However, that is exactly what the Wizards Case is about. <u>See</u> 21-cv-1705 ECF 1 and 11. Accordingly, that good faith basis removes any potential for reckless disregard for the truth.

---

[20] <u>See</u> <u>also</u> <u>Obos v. Scripps Psychological Assocs.</u>, 59 Cal. App. 4th 103, 105, 69 Cal. Rptr. 2d 30, 31 (1997) (same, with costs); <u>Martin v. Dobson</u>, 09–cv–208, 2010 U.S. Dist. LEXIS 16607, at 3-9, 2010 WL 723680, at 2-3 (S.D. Ohio Feb. 5, 2010) (false online "dishonorably discharged" post about plaintiff did not establish specific personal jurisdiction).

[21] The Second Circuit has endorsed another district court's "holding that [an] allegedly defamatory statement that person was fired for fraud and lying [was] insufficient" to proceed. <u>Jordan v. Playtex Family Prods.</u>, 96-cv-7431, 1997 U.S. App. LEXIS 13821, at 4-5 (2d Cir. June 12, 1997), citing <u>Petyan v. Ellis</u>, 200 Conn. 243, 254 & n.5, 510 A.2d 1337 (1986).

### C. There are No Statements about Either LLC Plaintiff

The invocation regarding the LLC Plaintiffs is so sparse that they must be excised from the case regardless of the outcome as against Lanasa. Lanasa makes a halfhearted attempt to impugn unactionable insults made by Erik to him as against the LLC's. However, a review makes clear that these statements are about Lanasa and not the LLC's. Thus, the LLC Plaintiffs must be dismissed.

### D. "Inadvertently Honest" is a Claim of Honesty and not Actionable

Plaintiffs boldly claim Erik is liable for "accusing Plaintiff LANASA of dishonesty." P's Br. Opp. at p. 24. First, the actual statement accuses Lanasa of honesty not dishonesty. SAC at ¶ 22, p. 6. There is no precise word accusing as a factual matter, any dishonesty alleged. CPLR 3016(a). Second, by virtue of the year campaign to hold onto a claim of defamation for an accusation of a criminal record that did exist, and had to be withdrawn, by this and other examples Lanasa's dishonesty has been established or at bare minimum, he cannot claim a reckless disregard for the truth. Finally, as discussed in the underlying motion, such a claim is simply not actionable, opinion or otherwise.

### E. Allegations of "Racism" and "Homophobia are not Actionable and The "Manuscript" Is Conclusive of Truth or at Least, the Absence of Malice and thus Precludes Defamation

While Plaintiffs claim "it is a question of fact as to whether the manuscript is racist [and/or homophobic]," P's Br. Opp. at p. 19, n.11, it is submitted that the manuscript Lanasa authored, filed, authenticated, and concedes this Court is permitted to take judicial notice of,[22] refutes any claim of defamation as a result of such allegations. Plaintiffs' manuscript states all "races have different abilities and weaknesses," and includes a "description of each race's culture."[23] The only "race" with a "dark" "skin color" is described as "Barbarian," having low intelligence, and assimilated to an animal.[24] On

---

[22] P's Br. Opp. at p. 19, n.11. For clarity, Lanasa concedes authentication and authorship under penalty of perjury in the Wizards Case. 21-cv-1705 ECF 39 at ¶ 24 and 305-549 of 572 (Exhibit K to a Lanasa declaration filed Oct. 10, 2022). The Court should take judicial notice of this fact. See e.g. Giraldo, 694 F.3d at 164.

[23] Quotes herein are from the manuscript cited in note 14, 21-cv-1705 ECF No. 39 at 344, 368, and 379-381 of 572.

[24] Id. at 379-381 of 572. We respectfully refrain from further discussion of racial undertones appearing on these pages.

the other hand, Lanasa's manuscript describes the "Nordic" race as "pale" with "blond hair," "blue eyes," and high intelligence (noting "ALL mental attributes are in the 13+ range").[25]

The manuscript is *the definition* of "racist."[26] Thus, the defense of truth is completed by the manuscript and no reasonable jury could deem a reference to "racism" on the part of Lanasa as being false (as required to state a claim). At the very least, the manuscript belies a claim of malice since the good faith belief it provides vitiates any claim of reckless disregard for the truth.

Furthermore, Plaintiffs' claim fails in this regard even in the absence of the manuscript. "Courts in New York have consistently held that terms like 'racist' constitute nonactionable opinion." Cummings v. City of N.Y., No. 19-cv-7723 (CM)(OTW) at 56-57 (S.D.N.Y. Feb. 24, 2020), citing Russell v. Davies, 97 A.D.3d 649 (2d Dept. 2012) (statements interpreting an essay by an electoral candidate as racist and anti-Semitic were inactionable opinions based on disclosed facts); Goetz v. Kunstler, 164 Misc. 2d 557 (Sup. Ct. N.Y. Cty. 1995) (statement that plaintiff had "venomous feelings against black people" and "developed hatred toward all blacks" was protected opinion).

A case relied upon by Plaintiffs confirms this. See P's Br. Opp. at 23, citing Sandals Resorts Intl. Ltd., v. Google, Inc., 86 A.D.3d 32 (1st Dept 2011) ("deeming online posting accusing Jamaican resort owners of racism *inactionable opinion*"). Indeed, as Sandals Resorts holds, defamation must be premised on published assertions of fact, not opinion. Id. at 38. Based upon the foregoing, the claims of racism cannot be actionable as defamatory and must be dismissed.

The same is true with homophobia. Courts have consistently deemed contentions of homophobia unactionable opinion.[27] There exists no cognizable basis for deviating from established precedent here, Plaintiffs have failed to state a claim upon which relief could be granted.

---

[25] *Id.* at 403 of 572.

[26] "[F]ostering the belief … that racial differences produce an inherent superiority" Merriam Webster's Dictionary, https://www.merriam-webster.com/dictionary/racist?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

[27] See, *e.g.,* McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 160 (D.D.C. 2014) ("to the Court's knowledge no decision has found statements claiming that a person is anti-gay or homophobic to be actionable"); Doe v. Syracuse Univ., 468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020) ("[a] reasonable reader could not conclude that [defendant's] statements that the videos were racist, anti-Semitic, homophobic, sexist, and ableist conveyed facts about Plaintiffs, rather than his opinion about

While Plaintiffs claim another court's denial of a preliminary injunction proves they refuted claims of racism and homophobia by a defendant in that matter, P's Br. Opp. at p. 19, n.11, neither the decision nor materials Plaintiffs cite support that argument and should be ignored.

## F. Any reference to Naziism by Defendant(s) Alleged in the SAC is not Actionable

Plaintiffs attempt to claim that Erik calling a non-party a Nazi defamatory, P's Br. Opp. at pp. 18, 25-26, must be rejected. In this case, Erik simply characterized a non-party associate of Lanasa, not Lanasa himself, as a Nazi.[28] There is no dispute that the non-party about whom the statement was made has posted, *swastikas* and other extremely vile pro-Nazi, anti-Semitic material online.[29] Because all case law interpreting currently-applicable standards in defamation cases confirms "accusing a person of being a Nazi is an expression of opinion" and "not actionable as a matter of law."[30] Accordingly, Plaintiffs have failed to state a claim upon which relief could be granted.

---

what the videos depicted"); Schumacher v. Argosy Educ. Grp., Inc., No. 05-531 (DWF/AJB), 2006 U.S. Dist. LEXIS 88608, at 45 (D. Minn. Dec. 6, 2006) ("referring to [plaintiff] as 'homophobic' does not constitute defamation as a matter of law"); Lester v. Powers, 596 A.2d 65, 71 (Me. 1991) (letter to editor asserting that professor was homophobic was protected opinion); Vail v. Plain Dealer Publishing Co., 72 Ohio St. 3d 279, 1995 Ohio 187, 649 N.E.2d 182, 186 (Ohio 1995) (article stating that candidate had "engag[ed] in an 'anti-homosexual diatribe' and foster[ed] 'homophobia'" was protected opinion); Waterson v. Cleveland State Univ., 93 Ohio App. 3d 792, 639 N.E.2d 1236, 1237-40 (Ohio Ct. App. 1994) (letter to editor alleging police officer was homophobic not defamatory as matter of law).

[28] https://www.youtube.com/watch?v=djYL3joFZqQ

[29] *See, e.g.,* Defs' Br. 24-25 n.45; https://web.archive.org/web/20230403154208/https://www.nohateingaming.com/ (*No Hate in Gaming: Home,* collecting vile material posted by Johnson, including swastikas and racist language we are not comfortable quoting or even summarizing); *see also* https://techraptor.net/tabletop/news/tsrs-star-frontiers-new-genesis-playtest-contains-racist-content (*TSR's Star Frontiers New Genesis Playtest Contains Racist Content,* Jul. 21, 2022 TechRaptor report attributing game's "blatantly racist" language and "neo-Nazi ideology" to authors Lanasa and Johnson); https://www.polygon.com/tabletop-games/23349686/dnd-wizards-of-the-coast-vs-nutsr-tsr-justin-lanasa-racist-transphobic-star-frontiers (*D&D publisher requests injunction against competitor, citing 'blatantly racist and transphobic' content*); https://www.geeknative.com/142136/drivethrurpg-suspends-game-designer-linked-to-the-nazi-filth/ (*DriveThruRPG suspends game designer linked to the Nazi filth*).

[30] Morgan v. NYP Holdings, Inc., 2017 NY Slip Op 51907(U), ¶ 6, 58 Misc. 3d 1203(A), 93 N.Y.S.3d 627 (Sup. Ct.); Wanamaker v VHA, Inc., 19 AD3d 1011, 1012, 797 N.Y.S.2d 672 [4th Dept 2005], *appeal denied,* 21 A.D.3d 1442, 801 N.Y.S.2d 556 [4th Dept 2005]; Schwartz v Nordstrom, Inc., 160 AD2d 240, 241, 553 N.Y.S.2d 684 [1st Dept 1990], *appeal dismissed,* 76 N.Y.2d 845, 559 N.E.2d 1288, 560 N.Y.S.2d 129 [1990], *appeal denied,* 76 N.Y.2d 711, 564 N.E.2d 672, 563 N.Y.S.2d 62 [1990]; Borzellieri v Daily News, LP, 39 Misc 3d 1215[A], 975 N.Y.S.2d 365, 2013 NY Slip Op 50624[U], at 4 [Sup Ct, Queens County 2013]; Holy Spirit Assn. for Unification of World Christianity v Harper & Roe, Publs., 101 Misc 2d 30, 33-34, 420 N.Y.S.2d 56 [Sup Ct, NY County 1979]); Reilly v. WNEP, 251 A.3d 1241 (Pa. Super. Ct. 2021) ("accusation regarding [defendant] employing a Nazi is not defamatory, as a matter of law, because whether Mr. Reilly is a Nazi constitutes the political opinion of Mr. Wheeler"); Koch v. Goldway, 817 F.2d 507 (9th Cir. 1987) (mayor's comments associating plaintiff with Nazi war criminal were political slurs in nature of opinion); Dunn v. Gannett N.Y. Newspapers, Inc., 833 F.2d 446, 454 (3d Cir. 1987) (citing Koch).

### G. Doxing Does Not Constitute Defamation

Plaintiffs cite Eastern District of Michigan precedent, <u>Vangheluwe v. Got News, LLC</u>, 365 F. Supp. 3d 850 (E.D. Mich. 2019), for the proposition that a "false publication accusing a party of 'doxing' is actionable defamation." P's Br. Opp. at p. 24. That is a misrepresentation of the holding. However, a cursory review of that opinion confirms that court actually found "doxing is not necessarily defamation." <u>Id.</u> at 861. Furthermore, the Court's entire defamation analysis actually turned upon defendant's inclusion of the statement "*Killer confirmed*" in her tweet, finding the defendant "could have doxed without making any defamatory statement." <u>Id.</u> Because Plaintiffs have provided no authority supporting doxing alone as defamation, dismissal is warranted.[31] As discussed in <u>Vangheluwe</u>, and argued by Plaintiffs, P's Br. Opp. at p. 23, context is everything as it relates to a defamation claim. In reviewing the full context of all statements made in the SAC, the Court can come to no other conclusion than they are not actionable. Accordingly, the case must be dismissed.

## VII. IIED AND PRIMA FACIE TORT CLAIMS MUST BE DISMISSED

As discussed in the underlying motion, because the same conduct is alleged as the basis for Plaintiffs' IIED and prima facie tort claims,[32] these claims should be dismissed with prejudice as duplicative. <u>See</u> D's Br. to dismiss at p. 26. The absence of any special damages allegation requires dismissal of the prima facie tort claim. Similarly, the absence of any pattern of "outrageous" conduct requires dismissal of Plaintiffs' IIED claim.

As discussed previously, outrageousness is a very high bar. "The subject conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Klein v. Metropolitan Child Servs., Inc.</u>, 100 A.D.3d 708, 710 (2d Dept. 2012). Plaintiffs cite <u>Allen v. Meyers</u>, 2011 WL 721648 at 6 (S.D.N.Y.

---

[31] Nonexistent quotes appear throughout P's Br. Opp., *e.g.*, at p. 29, citing <u>Burns Jackson Miller Summit & Spitzer v. Lindner</u>, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712 (1983) for a quote that exists nowhere in the opinion.

[32] Defendant(s) largely rest on their prior submission re: the prima facie tort claim. But it should be noted that Plaintiffs never address the absence of special damages, and their arguments made bely their conclusory claim that Erik was solely motivated by malevolence. Accordingly, the opposition does not save this claim. P's Br. Opp. at pp. 29-30.

Feb. 24, 2011), P's Br. Opp. at p. 29, for the proposition that they have stated "a valid claim of intentional infliction of emotional distress." However, those fact illustrate what outrageousness needs to be versus the facts at bar. While most of the <u>Allen</u> claims were dismissed as duplicative, the one that survived involved extensive physical and sexual domestic abuse." *Id.* at 28. Here, Plaintiffs claim that out of context claims: (a) of being a former police officer; (b) that Erik purportedly knows Plaintiffs' address, phone number; and (c) and "*may ... own a firearm*." <u>Id.</u> Neither *Allen* nor any other authority render those allegations remotely outrageous so as to be actionable.[33]

Finally, that the only picture posted was Lanasa's wife's own public profile picture, that she made public, which Plaintiffs do not controvert, falls far short of the threshold requirement for pleading outrageous conduct.[34] Contrary to Plaintiffs' conclusory statements, as discussed in the underlying motion, the elements of these claims have not been accurately or adequately pled.

## VIII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request an order dismissing this action in its entirety, with prejudice, and an award of all reasonable fees, costs, and other relief the Court deems necessary to deter Plaintiffs from abusing judicial process to harass Defendants or others.[35]

Dated:  New York, New York  BY:

February 6, 2024  Daniel J. Schneider

Farber Schneider Ferrari LLP

261 Madison Ave, 26th Floor

New York, New York 10016

(212) 972-7040

dschneider@fsfllp.com

*Counsel for Defendant(s)*

---

[33] Lanasa's failure to claim he is the "jackass" to whom Erik refers, SAC ¶ 22, or known generally as a "jackass," also render this claim inactionable. P's Br. Opp. at p. 30. Further, there is no cognizable nexus between Plaintiffs' claims and non sequiturs regarding "Red Flag" laws and "DSM IV" <u>Id.</u> at pp. 1 and 28. Thus, no response is warranted.

[34] <u>Klein.</u>, 100 A.D.3d at 710. .

[35] Fed. R. Civ. P. 11 contains a duty to investigate, and "sanctions are appropriate" when an "attorney either failed to make an objectively reasonable inquiry or pursued a claim for which no basis was disclosed by such inquiry." <u>Calloway v. Marvel Entertainment Group</u>, 854 F.2d 1452, 1470 (2d Cir. 1988). Pasting numerous hyperlinks without providing context invokes this provision.