United States District Court
Eastern District of New York

-----------------------------------X

Justin LaNasa; TSR, LLC; and
Dungeon Hobby Shop Museum, LLC,

         Plaintiffs,               **Memorandum and Order**

  - against -                   No. 22-cv-5686 (KAM) (VMS)

Erik Stiene and Rachel Stiene,

         Defendants.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

    Justin LaNasa, on behalf of himself and two of his companies (all plaintiffs referred to herein collectively as "LaNasa"), brought this diversity action against Erik and Rachel Stiene for defamation, intentional infliction of emotional distress, and "prima facie tortious conduct." (ECF No. 62, 2d Am. Verified Compl. ("2d Am. Compl."), ¶¶ 1–4.) The Stienes move the Court to dismiss the action under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), arguing that (1) the Court lacks subject-matter jurisdiction to adjudicate the action, (2) LaNasa failed to serve process on Rachel Stiene, and (3) LaNasa failed to state a claim upon which relief can be granted. (ECF No. 64, Notice Mot. Dismiss.)

    For the reasons below, the Court concludes (1) it has subject-matter jurisdiction over LaNasa's claims based on

diversity of citizenship, (2) LaNasa's claims against Rachel must be dismissed because he failed to timely serve process on her, and (3) LaNasa's claims against Erik must be dismissed for failure to state a claim.  The Court also denies LaNasa leave to amend.

## Background

The Court assumes that the following allegations from the Second Amended Complaint are true for the purpose of resolving the present motion to dismiss.  *See United States v. Swartz Family Tr.*, 67 F.4th 505, 514 (2d Cir. 2023).

Erik and Rachel Stiene, a married couple domiciled in New York, operate a website called Tenkar's Tavern and maintain its YouTube channel.  (2d Am. Compl. ¶¶ 5-7, 16, 20; ECF Nos. 69, 71.)  LaNasa, who is domiciled in North Carolina, is the principal officer and sole member of TSR, LLC (a "creator, manufacturer, and distributor of tabletop role playing games" and "other products and services"), and Dungeon Hobby Shop Museum, LLC.  (2d Am. Compl. ¶¶ 1-4, 8; ECF No. 74.)  LaNasa alleges that the Stienes used the Tenkar's Tavern website and YouTube channel to publish various defamatory statements about him and his companies in 2022.

Although LaNasa's Second Amended Complaint references various hyperlinked videos, it identifies specific allegedly defamatory statements in them.  For example, in January 2022,

2

Erik said in various YouTube videos that LaNasa was "inadvertently honest," that LaNasa was not paying his employees, and that one of his companies was a for-profit company rather than a non-profit company. (*Id.* ¶ 22.) In February 2022, Erik in other YouTube videos said that LaNasa "thinks he's some kind of warrior for the old ways; you know racism, gay bashing, women in the kitchen." (*Id.*) In another video, Erik said that he would have plenty of "lead" to offer LaNasa if LaNasa ever showed up at his home. (*Id.*) In March 2022, Erik posted a video titled "Justin is Trying to dox My Wife Rachel – Go F' Yourself LaNasa!"[1] (*Id.*) In this video, Erik called LaNasa an "ignorant c**t," accused LaNasa of doxxing him, and told LaNasa, "[M]y wife just told you that she would grow a c**k so you could eat that c**k." (*Id.*) In another video posted that month, Erik said to LaNasa, "I already know your address; I already know your fucking phone number; I know your wife's phone number." (*Id.* ¶ 23.)

In May 2022, Erik said in other videos that LaNasa's company TSR, LLC, was "scraping the bottom of the privy" (apparently referring to LaNasa's customer base), that LaNasa "fucked over [his] prior business partners" to get a trademark, and that LaNasa "included a Nazi" in his company. (*Id.* ¶ 22.)

---

[1] "Doxxing" means publishing identifying or private information about a person as a form of punishment or revenge. *Dox*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/dox [https://perma.cc/YZ5B-P4MH].

He also said that LaNasa was "kicked out of the military for lack of leadership potential." (*Id.*)  In June 2022, after Erik posted another video to Tenkar's Tavern's YouTube channel, LaNasa alleges that a company called Geek Nation "canceled a tour with the Plaintiffs, causing financial damages in payments to the hobby shop and attacking [anyone] that supports TSR." (*Id.* ¶ 24.)  In another June 2022 video, Erik discussed LaNasa's wife while showing screenshots of her YouTube comments.  (*Id.* ¶¶ 25–26.)  The comments feature LaNasa's wife's YouTube profile picture, which is a photograph of her with LaNasa's and her young daughter.  (*See id.* ¶ 26.)

In July 2022, LaNasa's attorney sent the Stienes a cease-and-desist letter.  (*Id.* ¶ 33.)  The Stienes responded to the letter on August 30, 2022, by posting a YouTube video mocking it, titled "Was My C&D Letter From LaNasa TSR an Attempt to ID & Intimidate Witnesses in the WotC Legal Action?"  (*Id.* ¶ 34.)

In September 2022, "[i]n further attempts to harass, intimidate, and threaten" LaNasa, Erik said in a YouTube video that he used to be an "investigator in internal affairs."  (*Id.* ¶ 35.)  In November 2022, the Stienes "[made] clear" in another video that LaNasa "has used . . . anonymous emails" and accused LaNasa of sending "anonymous emails on the weekend, because that is the 'time to get into a bottle of Jack.'"  (*Id.* ¶ 22.) Finally, in December 2022, Rachel referred to LaNasa "as an on-

line entity," which the Second Amended Complaint clarifies "he is not." (*Id.*)

LaNasa attempts to assert claims against the Stienes for defamation, intentional infliction of emotional distress, and "prima facie tortious conduct." (*Id.* ¶¶ 37–94.) He alleges injuries in the form of "severe humiliation, loss of standing in the community, loss of self-esteem, public disgrace, loss of standing and respect within his own family, and severe and extreme emotional distress." (*Id.* ¶¶ 50, 62.) He further alleges that he and his family "have been forced to seek therapy and other professional health care assistance." (*Id.* ¶ 54.) Finally, LaNasa alleges that he "has had creators, publishers, artists, and customers turn away from [him], . . . stating that they [were] scared and angry, vowing not to work with [LaNasa] due to the false, fabricated statements made by [Erik Stiene] and his followers." (*Id.* ¶ 75.) LaNasa seeks $1,000,000 in damages, an injunction forbidding the Stienes from making any further statements about him and requiring them to retract their prior statements about him, punitive damages, interest, attorney fees, and costs. (*Id.* ¶ 94, pp. 32–33.)

LaNasa commenced this action in September 2022 against only Erik. (ECF No. 1, Verified Compl.) After a pre-motion conference where the Court raised several concerns with LaNasa's original complaint, (Minute Order, Jan. 6, 2023), LaNasa filed

an amended complaint against Erik and "Lois Stiene, aka Rachel
Stiene," (ECF No. 20, Verified Am. Compl.).  As it turns out,
however, Lois and Rachel are different people.  Lois is Erik's
mother, who the parties now agree has nothing to do with the
allegations in this case.  (*See* ECF No. 55, Nov. 26, 2023, Ltr.
from B. Kleinman.)  After some correspondence between the
parties regarding Lois and LaNasa's criminal record, LaNasa
requested leave to amend his complaint again to "remov[e]
[Lois's] name as a Defendant" and "[s]trik[e] the assertion that
Mr. LaNasa has no criminal convictions."  (*Id.*)  Accordingly,
the Court granted leave to amend "solely for the purposes of
allowing [LaNasa] to remove the allegations discussed in [his]
. . . letter" and any other allegations that he no longer
believed he could make in good faith.  (Order, Jan. 9, 2024
(emphasis removed).)  LaNasa then filed the operative Second
Amended Complaint, which removed any mention of Lois and his
criminal record.  (*See generally* 2d Am. Compl.)  Contrary to the
Court's order, however, the Second Amended Complaint not only
*removed* LaNasa's allegations against Lois but also *added*
allegations against Rachel and named her as a new defendant.
(*See id.*)

## Legal Standards

The Stienes move to dismiss this action under Federal Rules
of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* ECF No. 64-1,

Br. Supp. Defs.' Mot. Dismiss. ("Mot."), 6–29.)  They also move to dismiss LaNasa's claims against Rachel on the ground that LaNasa failed to serve process on her, (*see id.* 8–9), which the Court construes as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(5).  Finally, the Stienes request that the dismissal be with prejudice.  (*Id.* 29–30.)

## I.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction to adjudicate the action.  *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023).  The plaintiff has the burden to establish subject-matter jurisdiction by a preponderance of the evidence.  *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021).  In resolving a motion under Rule 12(b)(1), the court may consider affidavits or other materials beyond the pleadings.  *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

## II.  Motion to Dismiss for Insufficient Service of Process

A motion under Rule 12(b)(5) challenges the propriety of service of process on the defendant.  *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022).  A court cannot lawfully exercise personal jurisdiction over a defendant who the plaintiff has not properly served.  *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023).  The plaintiff has the burden to prove that he or she properly served the defendant.  *Dickerson v.*

*Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). In resolving a motion under Rule 12(b)(5), the court may consider materials beyond the pleadings. *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021).

## III. **Motion to Dismiss for Failure to State a Claim**

A motion under Rule 12(b)(6) challenges the complaint's legal sufficiency. *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 417 (2d Cir. 2023). To survive a Rule 12(b)(6) motion, the complaint must state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint alleges enough factual matter to support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court must assume the truth of the complaint's well-pleaded factual allegations but disregard any legal conclusions couched as factual allegations. *Id.* In resolving a motion under Rule 12(b)(6), the court must limit its consideration to the complaint, documents incorporated by reference into the complaint, documents not incorporated but nonetheless integral to the complaint, and matters properly subject to judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

**Discussion**

## I. **Subject-Matter Jurisdiction**

The Court addresses subject-matter jurisdiction first

because the Court cannot proceed further with an action it has no power to adjudicate. *See Coniglio v. Garland*, 556 F. Supp. 3d 187, 194 (E.D.N.Y. 2021). LaNasa invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. (2d Am. Compl. ¶ 14.)

The Court concludes that it has diversity jurisdiction over LaNasa's claims. The federal diversity statute gives federal district courts original subject-matter jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000 excluding interest and costs. 28 U.S.C. § 1332(a)(1). The parties must be "completely diverse," meaning that no plaintiff may be a citizen of the same state as any defendant. *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016). For diversity purposes, an individual person is a citizen of the state where he or she is "domiciled." *Van Buskirk v. United Group of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). A limited liability company takes the citizenship of each of its members. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016).

The Court concludes, and the Stienes do not dispute, that the parties are completely diverse. The plaintiffs are citizens of North Carolina because LaNasa is domiciled there, (*see* ECF No. 74), and the two LLC plaintiffs' sole member is LaNasa, (*see* 2d Am. Compl. ¶¶ 2–3). The defendants are citizens of New York

because they are domiciled there. (*See* ECF Nos. 69, 71.) Thus, because all the plaintiffs are citizens of North Carolina and all the defendants are citizens of New York, no plaintiff is a citizen of the same state as any defendant and the complete diversity requirement is met.

The Court disagrees with the Stienes that LaNasa's Second Amended Complaint fails the federal diversity statute's $75,000 amount-in-controversy requirement. A plaintiff has only a minimal burden to satisfy that requirement. Courts presume that a plaintiff's good faith allegations about the amount in controversy control unless it appears to a legal certainty that the plaintiff cannot recover that amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *accord Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017). Here, though the Court does not, and need not, credit LaNasa's bald assertion that he has been "damaged in a sum exceeding the jurisdictional limits," (*see* 2d Am. Compl. ¶ 56), the Court credits LaNasa's underlying *factual allegations* that because of the Stienes' actions, the LaNasa family had to seek therapy, Geek Nation "canceled a tour" with him, and "creators, publishers, artists, and customers" spurned him, (2d Am. Compl. ¶¶ 24, 54, 75).[2] Given those allegations of lost business

---

[2] The Stienes note that the Court previously cautioned LaNasa that his original complaint failed to provide any detail to support its amount-in-controversy allegations. (Mot. 7.) The Court's admonition predated LaNasa's

opportunity, and assuming the Stienes' alleged defamation caused those losses, it does not appear to a legal certainty that LaNasa could not recover $75,000 in this action. LaNasa need not itemize his losses to meet the amount-in-controversy requirement at this stage. *See, e.g.*, *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 281 n.1 (S.D.N.Y. 2006) (jurisdictional amount met where plaintiff alleged defendants' defamation rendered her unable to obtain employment as a medical doctor and thus caused damages of at least $10,000,000 despite "difficulty and inherent uncertainty in calculating the value of a professional career, which may span decades").

The Court properly considers the declaration LaNasa attached to his opposition to the Stienes' Rule 12(b)(1) motion and does not find that it forecloses him from meeting the jurisdictional threshold. His declaration states his "estimate of lost revenues and expenses incurred as a direct and proximate result of the actions of the [Stienes] in defaming [him], and [his] businesses, and causing emotional trauma to [his] family." (*See* ECF No. 65 pp. 38–39 ("Decl."), ¶ 4.) He estimates that his "[t]otal losses . . . exceed $160,000" and that his "[a]ttorney fees and costs expended due to actions of the [Stienes]" exceed $135,000. (*Id.* ¶¶ 6, 8.) With some

---

allegations regarding Geek Nation and lost customers that appear in his Second Amended Complaint.

exceptions not relevant here, attorney fees do not count toward the amount in controversy for diversity purposes. *Pyskaty*, 856 F.3d at 224 n.14. The Stienes thus argue that the statements in LaNasa's declaration amount to an admission that there is only $25,000 in controversy. (ECF No. 66, Reply Br. Further Supp. Defs.' Mot. Dismiss & Resp. to Pls.' Opp'n ("Reply"), 1.) LaNasa's declaration only provides estimates of his losses and legal expenses, however. Further, he estimates his total losses *exceed* $160,000, not they *amount to* $160,000. His statements do not establish to a legal certainty that he could not recover $75,000 in this action.

Because the parties are completely diverse and the amount in controversy exceeds $75,000, the Court has subject-matter jurisdiction over the claims in this action under the federal diversity statute and may proceed to the merits. Accordingly, the Court need not address LaNasa's invocation of supplemental or "pendent" jurisdiction.

## II. Service on Rachel

The Stienes next argue that the Court must dismiss LaNasa's claims against Rachel because LaNasa never served process on her. (Mot. 8–9.) LaNasa first named Rachel as a defendant in the Second Amended Complaint, which he filed on January 16, 2024. (*See* 2d Am. Compl.) A plaintiff has ninety days after filing the complaint to serve the defendant with a summons and a

copy of the complaint.  Fed. R. Civ. P. 4(m).  LaNasa thus had
until April 15, 2024, to serve Rachel, and his failure to serve
her by that date requires the Court to dismiss LaNasa's claims
against her without prejudice.  *See id.*

The Court declines to excuse LaNasa's failure to timely
serve Rachel for the following reasons.  LaNasa's attorney
apparently mistakenly believed that the service deadline was
April 25, 2024, which would have been one hundred – not ninety –
days after the date LaNasa filed his Second Amended Complaint.
(*See* ECF No. 65, Pls.' Mem. Law Opp'n Defs.' Rule 12(b) Mot.
Dismiss ("Opp'n"), 8.)  Though a court must excuse a plaintiff's
failure to timely serve a defendant for good cause, Fed. R. Civ.
P. 4(m), a mistake by an attorney is not good cause, *Tolchin v.
Nassau County*, 322 F. Supp. 3d 307, 312 (E.D.N.Y. 2018).

The Court also will not grant LaNasa a discretionary
extension of the service deadline.  *See Buon*, 65 F.4th at 75
(2d Cir. 2023) (noting that a district court may grant such an
extension even where the plaintiff lacks good cause).  In
determining whether to grant such an extension, courts consider
whether (1) the applicable statute of limitations would bar the
plaintiff's re-filed claim, (2) the defendant had actual notice
of the claim, (3) the defendant attempted to conceal the defect
in service, and (4) the defendant would suffer prejudice as the
result of an extension.  *Fantozzi*, 343 F.R.D. at 26.  These

factors are not dispositive, however, and courts may consider other relevant equitable considerations. *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 404 (S.D.N.Y. 2020).

Considering the factors listed above and all other relevant equitable circumstances in this case, a discretionary extension to perfect service on Rachel is unwarranted. The Court acknowledges that a dismissal without prejudice in combination with New York's one-year statute of limitations for defamation claims might functionally result in a dismissal with prejudice of LaNasa's claims against Rachel, but even if it would, that alone would not entitle LaNasa to leniency. *See Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). The Stienes explicitly argued in their motion to dismiss that LaNasa had not served Rachel, and LaNasa responded to and acknowledged that portion of their motion in his opposition, albeit while miscalculating his deadline to serve her. (*See* Mot. 8–9; Opp'n 8.) Thus, although the Stienes clearly had actual notice that LaNasa sought to press claims against Rachel, they by no means "attempt[ed] to conceal the defect in service," which cuts against granting a discretionary extension. *See Fantozzi*, 343 F.R.D. at 30. Additionally, Rachel would suffer at least some prejudice if forced to spend time, money, and resources on another round of dismissal litigation. *See id.* at 31.

Additionally, a factor unique to this case that favors

denying a discretionary extension is that LaNasa did not name Rachel as a defendant in his original complaint and never requested leave to amend his complaint do so. After the parties agreed that Lois Stiene has no connection to this case, LaNasa filed a letter noting his intent to amend his complaint to "remov[e] her name as a Defendant" and "[s]trik[e] the assertion that Mr. LaNasa has no criminal convictions." (ECF No. 55, Nov. 26, 2023, Ltr. from B. Kleinman.) Because LaNasa already amended his complaint once, he could amend it again only with the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). Based on LaNasa's request to amend his complaint a second time, the Court granted LaNasa leave, but as LaNasa requested, "solely for the purposes of allowing [him] to remove the allegations discussed in [his letter] and any other allegations (if any) that [he] may no longer believe [he could] make consistently with [his] obligations under Rule 11(b)." (Order, Jan. 9, 2024 (emphasis removed).) The Court's order emphasized that its grant of leave was "narrow" and "only allow[ed] LaNasa to *remove* allegations." (*Id.* (emphasis added).)

Contrary to that order, LaNasa *added* allegations regarding Rachel and named her as a new defendant. His letter did not ask for leave to amend to name Rachel, only to *remove* allegations regarding LaNasa's criminal record and allegations regarding Lois. (*See* ECF No. 55, Nov. 6, 2023, Ltr. from B. Kleinman.)

Accordingly, the Court's grant of leave was limited to "remov[ing]" those allegations. (*See* Order, Jan. 9, 2024.) If LaNasa wished to add a new defendant, he could have – and *should* have – requested leave to do so. LaNasa's erroneous reading of the Court's order allowing him to "remove" Lois as a defendant as allowing him to "replac[e]" her with a new party, (*see* Opp'n 7), was objectively unreasonable, *compare Remove*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/remove [https://perma.cc/5U9X-VZFH] (defining "remove" as "to get rid of") *with Replace*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/replace [https://perma.cc/RX5R-3JE5] (defining "replace" as "to put something new in the place of").

There is a "strong policy need for courts to enforce sanctions against parties who, having had proper notice and opportunity to comply with the rules and with the court's orders, nonetheless fail to do so." *Seabrook v. City of New York*, 236 F.R.D. 123, 128 (E.D.N.Y. 2006) (dismissing action with prejudice for failure to prosecute after plaintiff's failure to timely serve defendant). Allowing an attorney's error to justify leniency "undermine[s] the effectiveness of those sanctions." *Id.* Thus, under the circumstances of this case, LaNasa would not have been entitled to a discretionary extension of the service deadline even if he had requested one, and his claims against Rachel are dismissed for failure to

timely serve process on her.

### III. Sufficiency of the Allegations

The Court next concludes that LaNasa fails to state a claim for defamation, intentional infliction of emotional distress, or prima facie tortious conduct against either defendant under New York law.

Before the Court addresses the deficiencies in LaNasa's allegations, however, it must address the Stienes' request for a dismissal with an award of costs and attorney fees on the ground that this case is a strategic lawsuit against public participation or "SLAPP." (Mot. 9–13.) New York's anti-SLAPP law permits a "defendant in an action involving public petition and participation" to "maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced . . . such action." N.Y. Civ. Rights Law § 70-a(1). It also provides that a motion to dismiss "an action involving public petition and participation . . . shall be granted" unless the party who brought the action shows that it has a "substantial basis" for bringing the action. N.Y. C.P.L.R. § 3211(g). The Stienes argue that this is an action involving public petition and participation because LaNasa commenced it "as a form of retaliation" with no "substantial basis in fact or law" and "to intimidate or punish [the Stienes] by attempting to inhibit their free speech."

(Mot. 9.)

The Court declines to apply New York's anti-SLAPP law to dismiss this action or to award costs or attorney fees. First, the Stienes have not "maintain[ed] an action, claim, [crossclaim,] or counterclaim" against LaNasa, which is necessary to obtain a costs or fee award under the statute. *See* N.Y. Civ. Rights Law § 70-a(1). Second, even if the Court were to construe the Stienes' motion to dismiss as a "claim" under the anti-SLAPP law, the Court agrees with the emerging consensus in this circuit that a federal court may not dismiss an action under New York's anti-SLAPP law because the "substantial basis" standard in its dismissal provision conflicts with Federal Rules of Civil Procedure 12 and 56. *See, e.g.*, *Coritsidis v. Khal Bnei Torah of Mt. Ivy*, No. 22-cv-10502 (CS), 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024) (collecting cases); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022); *Nat'l Acad. of Television Arts & Sciences, Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021); *see also La Liberte v. Reid*, 966 F.3d 79, 87–89 (2d Cir. 2020) (concluding for similar reasons that California's anti-SLAPP law cannot apply in federal court).

Further, because the anti-SLAPP statute makes costs and fees available only when the court dismisses an action based on *the statute's* dismissal provision and does not purport to make

18

them available to parties who obtain a dismissal under Federal Rule of Civil Procedure 12(b)(6), a federal court also cannot grant costs or fees under New York's anti-SLAPP law. *See La Liberte*, 966 F.3d at 88–89 (applying same logic to California's law). Accordingly, the Court will not apply New York's anti-SLAPP law and will proceed to consider whether LaNasa has stated a claim under Federal Rule of Civil Procedure 8(a)(2).

### A. Defamation

LaNasa's first two claims are for "defamation and libel *per se*" and "slander *per se*." (2d Am. Compl. ¶¶ 37–67.) Defamation is an injury to reputation that occurs either by written expression (libel) or by oral expression (slander). *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 306 (S.D.N.Y. 2022). Because libel and slander otherwise share the same elements, *id.*, the Court analyzes LaNasa's first two claims together. To state a claim for defamation under New York law, the plaintiff must allege that (1) the defendant made a defamatory statement concerning the plaintiff, (2) the statement was published to a third party, (3) the defendant's conduct met the applicable fault standard, (4) the statement was false, and (5) the statement caused the plaintiff damages or was *per se* actionable. *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). When the plaintiff is a "public figure," the applicable fault standard is "actual malice," meaning that the

plaintiff must allege sufficient facts to support a reasonable inference that the defendant made the statement with reckless disregard for the truth. *See id.* A private figure need only allege that the defendant acted with negligence. *Coleman v. Grand*, 523 F. Supp. 3d 244, 254 (E.D.N.Y. 2021).

LaNasa fails to state a claim with respect to most of his alleged instances of defamation because he failed to allege that the statements at issue were defamatory. Under New York law, whether a statement is defamatory is a legal question the Court resolves and may address at the pleadings stage. *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014). The Court need not review each linked YouTube video to discern whether the statements were defamatory in context. As the Court warned LaNasa in pointing out the defects in his original complaint, (*see* ECF No. 54, Jan. 6, 2023, Pre-Mot. Conf. Tr., 4:1-8), a plaintiff cannot avoid Rule 8's requirement to provide a short, plain statement of his claims simply by overwhelming the court with lengthy exhibits without context and assigning the court the task of reviewing them and searching for a plausible claim, *see United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007). If LaNasa intended to rely on any statements made in those videos as the basis for his defamation claims, he was obligated to identify and describe the relevant portions of those videos in his written allegations. Thus, the Court

considers the allegedly defamatory statements in the context LaNasa provides with his written allegations.

First, many of the statements described in LaNasa's Second Amended Complaint are non-actionable opinions. When distinguishing factual statements from opinions, courts consider whether (1) the statement has a precise meaning that is readily understood, (2) the statement is capable of being proven true or false, and (3) context signals to the reader that what is being said is likely to be opinion rather than fact. *Landa v. Capital One Bank (USA), N.A.*, 101 N.Y.S.3d 90, 92 (2d Dep't 2019). Here, Erik's alleged statements that LaNasa was "inadvertently honest," that LaNasa was a "warrior for the old ways," that LaNasa's company was "scraping the bottom of the privy," that LaNasa "fucked over" his business partners, that LaNasa "included a Nazi in [his] company," and that LaNasa's wife was the "new face" of his company, (2d Am. Compl. ¶¶ 22, 26), are all too subjective to be proven true or false. Absent more context, which LaNasa has not alleged, any reasonable reader would interpret the statements as opinions, not as facts. *See North Shore Towers Apartments Incorp. v. Kozminsky*, 193 N.Y.S.3d 310, 313 (2d Dep't 2023). Assuming, as alleged, that the title of Erik's August 30, 2022, YouTube video, "Was My C&D Letter From LaNasa TSR an Attempt to ID & Intimidate Witnesses in the WotC Legal Action?" (2d Am. Compl. ¶ 34), implied that LaNasa's

cease-and-desist letter *was* an attempt to identify and
intimidate witnesses in another case, that implication is
similarly too subjective to be actionable.  Though more context
theoretically could render some of these statements defamatory,
LaNasa has not even come close to alleging facts supporting a
reasonable inference that such context exists here.

Further, some of the alleged statements are insults.
Statements amounting to "no more than name-calling" or "general
insult[s]" are not defamation.  *Klepetko v. Reisman*,
839 N.Y.S.2d 101, 102 (2d Dep't 2007) (quoting *DePuy v. St. John
Fisher College*, 514 N.Y.S.2d 286, 287 (4th Dep't 1987)).  Even
highly vulgar and inflammatory insults without more are not
defamation.  *See Rivas v. Restaurant Assocs., Inc.*, 203 N.Y.S.3d
593, 594 (1st Dep't 2024) (affirming dismissal where defendant
allegedly called plaintiff a "child molester," "pervert," and
"pedophile" because such statements were mere rhetorical
hyperbole).  Here, though Erik's alleged statements that LaNasa
was an "ignorant c**t" and that Rachel "just told [LaNasa] that
she would grow a c**k so [he] could eat that c**k," (2d Am.
Compl. ¶ 22), are unquestionably vulgar, they lack objective
truth value and thus cannot be defamation.

Moreover, even some of the alleged statements that *do* have
objective truth value simply are not defamatory in nature.  A
statement is "defamatory" only if it "exposes a person to public

22

contempt, ridicule, aversion[,] or disgrace." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 171 (N.Y. 2002). The Stienes' statements that LaNasa used "anonymous emails" and was "an on-line entity" and that his company Dungeon Hobby "was for profit," (2d Am. Compl. ¶ 22), are not actionable because the statements did not expose LaNasa to public contempt, ridicule, aversion, or disgrace. It is unclear from LaNasa's allegations what those statements were even supposed to imply, if anything. The same goes for Erik's allegedly threatening statements toward LaNasa, which imply nothing *about* LaNasa. (*See* 2d Am. Compl. ¶¶ 22-23, 35.) Other courts have found that statements with more direct implications about the plaintiff's character were "not reasonably susceptible of defamatory content." *See, e.g.*, *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 269, 275 (E.D.N.Y. 2009) (finding statements in email from principal to teachers thanking them for "remind[ing]" supposedly underperforming plaintiff teacher of her "expectations for next year" not defamatory). The statements at issue here fell far below any defamatory context.

Finally, though the remaining factual statements have objective truth value and implicate LaNasa's character at least to some degree, (*see* 2d Am. Compl. ¶ 22 (alleging Stienes accused LaNasa of "not paying his employees" and trying to dox

them and that the Stienes claimed LaNasa was kicked out of the military)), LaNasa still has not stated a claim with respect to those statements because he failed to plead that any of them is false. Under New York law, falsity is an *element* of defamation, not an affirmative defense to it. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 246–47 (2d Cir. 2017). Thus, at the pleadings stage, the plaintiff has the burden to allege facts supporting a reasonable inference that an allegedly defamatory statement was false. *Id.* at 247. A bare assertion that a statement was "false" does not suffice without some factual explanation as to *how* the statement was false. *Id.* at 245; *see Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 147 (S.D.N.Y. 2022) (dismissing defamation claim for failure to allege falsity where plaintiff failed to allege facts supporting reasonable inference that defendant's internal investigation that led to his firing was a "sham"). Here, paragraph 22 of LaNasa's Second Amended Complaint, the only paragraph arguably containing any falsifiable defamatory matter, simply begins with a boilerplate conclusory statement that the Stienes made "knowingly, malicious, and intentional and false defamatory statements" and then proceeds to list a litany of examples without any detail explaining *how* those statements are false. (*See* 2d Am. Compl. ¶ 22.) LaNasa's pleading strategy evidently was to prioritize quantity over quality, throwing as many

allegedly defamatory statements as he could at the wall to see what would stick. That strategy failed. He simply described some very nasty opinions and commentary by the Stienes that may or may not have been true.

Because LaNasa has not alleged the existence of any defamatory statement along with factual allegations supporting a reasonable inference that the statement was false, LaNasa has – for the third time – failed to state a defamation claim against the Stienes and his claim must be dismissed regardless of whether a malice or negligence fault standard applies. Thus, the Court need not address the parties' arguments as to whether LaNasa is a public figure. (*See* Mot. 13–16; Opp'n 19–21.)

### B.    Intentional Infliction of Emotional Distress

LaNasa's third claim is that the Stienes intentionally inflicted him with emotional distress. (2d Am. Compl. ¶¶ 68–82.) Intentional infliction of emotional distress occurs when the defendant engages in "extreme and outrageous" conduct with the intent to cause the plaintiff severe emotional distress and does in fact cause the plaintiff severe emotional distress. *Chanko v. ABC Inc.*, 49 N.E.3d 1171, 1178 (N.Y. 2016). This claim is "highly disfavored" and only to be used "as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (first quoting *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345–46 (S.D.N.Y. 2000) and then quoting

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Because the tort is so vaguely defined, New York courts guard against its overuse by interpreting the "extreme and outrageous" standard strictly. *Howell v. New York Post Co., Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993); *see Chanko*, 49 N.E.3d at 1179 (noting that the New York State Court of Appeals found that standard unmet in every case in which that court had considered it).

LaNasa failed to state an intentional infliction of emotional distress claim because his allegations against the Stienes do not describe extreme and outrageous conduct. Defamatory statements generally cannot form the basis of an emotional distress claim. *Coleman v. Grand*, 523 F. Supp. 3d 244, 267 (E.D.N.Y. 2021). The Stienes' alleged statements about LaNasa, though crass, fall below the "exceedingly high bar" for what constitutes "extreme and outrageous" under New York law. *See id.* As to Erik's alleged physical threats against LaNasa, (*see* 2d Am. Compl. ¶ 73), given the limited context the Second Amended Complaint provides, the Court finds those statements reasonably understood as empty bluster and not true threats of physical violence, *see Davydov v. Youssefi*, 169 N.Y.S.3d 322, 325 (2d Dep't 2022) (concluding plaintiff's allegations that defendant "shouted verbal threats and hostile and demeaning insults" failed to state an emotional distress claim).

Finally, the Court does not consider Erik's alleged unauthorized use of LaNasa's wife's YouTube profile picture in one of his videos, (*see* 2d Am. Compl. ¶¶ 70–74, 79–80), without more, to be extreme and outrageous. Though LaNasa suggests that someone might crop his daughter's face from the profile picture and then use the cropped image in conjunction with artificial intelligence software to generate child pornography of her, (*see* 2d Am. Compl. ¶ 90, Opp'n 27), he made no allegations suggesting Erik intended that result or even that it was remotely likely. Accordingly, LaNasa has failed to state a claim for intentional infliction of emotional distress.

### C. Prima Facie Tortious Conduct

LaNasa's last claim is for "prima facie tortious conduct." (*Id.* ¶¶ 83–94.) To state a prima facie tort claim, the plaintiff must allege that (1) the defendant intentionally inflicted harm on the plaintiff (2) that resulted in special damages (3) without excuse or justification (4) by an act or series of acts that otherwise would have been lawful and (5) the defendant's sole motive was to harm the plaintiff. *Posner v. Lewis*, 965 N.E.2d 949, 951 n.1 (N.Y. 2012). "Special damages" means the "loss of something having economic or pecuniary value." *Berland v. Chi*, 38 N.Y.S.3d 57, 59 (2d Dep't 2016) (quoting *Rufeh v. Schwartz*, 858 N.Y.S.2d 194, 196 (2d Dep't 2008)). As with intentional infliction of emotional distress

27

claims, prima facie tort claims are "highly disfavored." *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017). A court may not allow a plaintiff to proceed on a prima facie tort claim as a "'catch-all' alternative" for another claim that "cannot stand on its legs." *Belsky v. Lowenthal*, 405 N.Y.S.2d 62, 65 (1st Dep't 1978).

LaNasa has not stated a prima facie tort claim. As a threshold matter, LaNasa's claim "must fail" insofar as it relies on allegations about "the dissemination of allegedly defamatory materials." *Butler v. Delaware Ostego Corp.*, 610 N.Y.S.2d 664, 665 (3d Dep't 1994); *accord McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 536 (2d Cir. 2009). The remainder of LaNasa's allegations in support of his prima facie tort claim, which concern Erik's alleged nasty and threatening comments toward him and use of LaNasa's wife's YouTube profile picture in Erik's YouTube video, "generally amount[] to a claim of emotional distress," which is "insufficient to allege special damages." *See Berland*, 38 N.Y.S.3d at 59. Accordingly, LaNasa has failed to state a prima facie tort claim.

## IV.  Leave to Amend

Having concluded that LaNasa failed to state any claim against either defendant, the Court further concludes that LaNasa should not be granted leave to amend his complaint again. On one hand, a court should "freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2); *see Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013). On the other, leave to amend is a matter of discretion, and a court cannot err in exercising that discretion by "failing to grant a request that was not made." *Cruz*, 720 F.3d at 126 (affirming dismissal with prejudice where plaintiff "never made a formal motion to amend" and opposition to defendant's motion to dismiss "failed to request that the amended complaint be dismissed without prejudice"). Here, the Stienes' motion to dismiss explicitly requested that the Court deny leave to amend, (Mot. 29–30), and LaNasa declined to respond to that argument, (*see generally* Opp'n; *see also* Reply 16 (Stienes' reiterating request for dismissal with prejudice). The Court sees no reason to protract this tortured litigation even further when LaNasa had a clear opportunity to justify another amendment and simply refused to do so.

Further, justice does not require granting leave to amend under these circumstances. A court may deny leave to amend when it "appears that granting leave . . . is unlikely to be productive." *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (affirming denial of leave to file second amended complaint and provide more allegations where plaintiff failed to add such allegations to first amended complaint). Amendment is unlikely to be productive after the plaintiff "twice fail[s] to present a

valid cause for relief." *Trump v. Vance*, 480 F. Supp. 3d 460, 505 (2d Cir. 2020). If the plaintiff was aware of the "deficiencies in his [or her] complaint when he [or she] first amended it" and "on the plainest notice of what was required" to survive a motion to dismiss, there is little value in permitting a third opportunity for the plaintiff to add more allegations. *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 91 (2d Cir. 2023) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)).

Here, after LaNasa filed his original complaint, the Court explained to LaNasa in detail at a conference the pleading deficiencies he had to remedy in order to state a claim. (*See* ECF No. 54, Jan. 6, 2023, Pre-Mot. Conf. Tr. 3:23–5:12, 11:11–12:8, 15:18–16:6.) His counsel, a licensed attorney, is presumed to know what facts he would have to allege to survive a motion to dismiss. Further, as explained above, (*supra* 14–16), LaNasa's Second Amended Complaint exceeded the Court's grant of leave to amend by adding claims against Rachel when LaNasa only requested – and the Court only granted – leave to amend to *remove* allegations regarding Erik's mother, Lois, and LaNasa's criminal record, (*see* ECF No. 55, Nov. 26, 2023, Ltr. from B. Kleinman; Order, January 9, 2024). LaNasa has neither requested leave to amend nor given the Court any reason to believe he could state a claim if allowed a fourth opportunity

to do so.  Accordingly, this case is dismissed finally, with prejudice and without leave to re-plead.

## Conclusion

For the reasons above, the Court grants the Stienes' motion to dismiss for failure to state a claim with respect to Erik Stiene and dismisses LaNasa's claims against him with prejudice. The Court grants the Stienes' motion to dismiss for insufficient service with respect to Rachel Stiene and dismisses LaNasa's claims against her without prejudice.  LaNasa is denied leave to amend his complaint again.  The Stienes' request for oral argument is denied as moot.

The Clerk of Court is respectfully requested to enter judgment in favor of Defendants and close this case.


**So ordered.**

Dated:     April 17, 2024
           Brooklyn, New York

_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York